Nos. 3:21-cv-167-DJN (Lead Case), 3:21-cv-166 & 3:21-CV-00205 (Consolidated)

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

---

In re RETAIL GROUP INC., *et al.*, Debtors.

---

JOEL PATTERSON, *et al.* & JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4, Appellants,
v.
MAHWAH BERGEN RETAIL GROUP, INC., Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

---

### BRIEF OF APPELLEE JOHN P. FITZGERALD, III,
### ACTING UNITED STATES TRUSTEE FOR REGION 4

---

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
SUMI SAKATA
Trial Attorney

Department of Justice
Executive Office for
 United States Trustees
441 G Street, NW,
Suite 6150
Washington, DC 20530
Tel: (202) 307-1399
E-mail: sumi.sakata@usdoj.gov

JOHN P. FITZGERALD, III
Acting United States Trustee for Region 4
KATHRYN R. MONTGOMERY
Assistant United States Trustee
HUGH M. BERNSTEIN
Trial Attorney

Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Tel: (804) 771-2310
Fax: (804) 771-2330
kathryn.montgomery@usdoj.gov
hugh.m.bernstein@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF APPELLATE JURISDICTION ...................................... 1

STATEMENT OF THE ISSUE ........................................................................ 2

STANDARD OF REVIEW ............................................................................... 2

STATEMENT OF THE CASE ......................................................................... 3

   I.   Statutory & Legal Framework ................................................................... 3

     A.   The United States Trustee.......................................................... 3

     B.   Bankruptcy relief under Chapter 11....................................... 3

     C.   Non-debtor releases in chapter 11 plans ............................. 4

     D.   Fourth Circuit law on non-debtor releases .......................... 7

   II.   Statement of the Facts ............................................................................ 10

     A.   The underlying chapter 11 bankruptcy case ....................... 10

     B.   Mahwah's plan contains provisions to release non-debtors' claims against non-debtors ............................................................................ 11

     C.   The United States Trustee and others object to Mahwah's disclosure statement based on the non-debtor release provisions ........................... 14

     D.   The United States Trustee and others object to confirmation of Mahwah's plan based on the non-debtor release provisions ................. 19

     C.   The bankruptcy court issues its opinion ................................... 24

SUMMARY OF THE ARGUMENT ............................................................. 26

ARGUMENT ..................................................................................................... 28

   I.   The Bankruptcy Court Reversibly Erred in Approving the Third-Party Release and Exculpation Clause ...................................................................... 28

     A.   The bankruptcy court erred as a matter of law in holding that presumed consent is a stand-alone basis to approve the Third-Party Release ........ 28

     B.   The bankruptcy court reversibly erred in deeming the Third-Party Release to be consensual .......................................................................... 30

       1.   No one sent notice of the Third-Party Release to all parties whose litigation rights against non-debtors were terminated under Mahwah's plan ........................................................................................................ 31

       2.   Failure to opt out of a provision releasing non-debtors' claims against other non-debtors is not consent ................................................. 34

C.    The bankruptcy court clearly erred in finding the Third-Party Release satisfied the *Behrmann* factors. ...................................................................... 37

1.    Whether a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate ............................................. 38

2.    Whether there was a substantial contribution of assets by the Released Party .......................................................................................................... 38

3.    Whether non-debtor release is "essential" to the reorganization ............. 40

4.    Whether the affected class consented .......................................... 41

5.    Whether there was full payment to the affected class ............................... 41

6.    Whether there was opportunity for those who chose not to settle to recover in full ...................................................................................... 42

7.    Whether the bankruptcy court made a record of specific factual findings that support its conclusions ................................................................... 42

D.    The bankruptcy court reversibly erred in approving the Exculpation Clause .................................................................................................... 42

1.    The bankruptcy court erred as a matter of law in failing to apply the *Behrmann* factors to the Exculpation Clause ................................................ 43

2.    The Exculpation Clause is impermissibly broad and fails to permit claims to proceed with court approval ............................................................... 44

II.   The Bankruptcy Court Abused Its Discretion in How It Conducted the Disclosure Statement and Confirmation Approval Process ............................... 47

A.    The bankruptcy court abused its discretion by not exercising discretion 48

B.    The bankruptcy court abused its discretion in failing to resolve the objections at the disclosure statement stage ............................................... 49

CONCLUSION .............................................................................................. 51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A-1 Trash Pickup, Inc.,*
  802 F.2d 774 (4th Cir. 1986) ........................................................................ 3

*In re Aegean Marine Petroleum Network Inc.,*
  599 B.R. 717 (Bankr. S.D.N.Y. 2019) ......................................................... 39

*In re Airadigm Commc'ns, Inc.,*
  519 F.3d 640 (7th Cir. 2008) ........................................................................ 7

*Anderson v. City of Bessemer City,*
  470 U.S. 564 (1985) ....................................................................................... 2

*Barton v. Barbour,*
  104 U.S. 126 (1881) ..................................................................................... 47

*Behrmann v. Nat'l Heritage Found.,*
  663 F.3d 704 (4th Cir. 2011) .................................................................*passim*

*In re Berwick Black Cattle Co.,*
  394 B.R. 448 (Bankr. C.D. Ill. 2008) .......................................................... 40

*Blixseth v. Credit Suisse,*
  961 F.3d 1074 (9th Cir. 2020) ...................................................5, 44, 45, 46

*Bronner v. Park Place Entm't Corp.,*
  137 F.Supp.2d 306 (S.D.N.Y. 2001) ........................................................... 35

*Bullard v. Blue Hills Bank,*
  575 U.S. 496 (2015) ....................................................................................... 1

*Calderon v. GEICO Gen. Ins. Co.,*
  809 F.3d 111 (4th Cir. 2015) ........................................................................ 1

*Celotex Corp. v. Edwards,*
  514 U.S. 300 (1995) ..................................................................................... 31

*In re Chassix Holdings, Inc.,*
  533 B.R. 64 (Bankr. S.D.N.Y. 2015) ..................................................... 36, 37

*In re City Homes III, LLC,*
564 B.R. 827 (Bankr. D. Md. 2017) .......................................................... 40

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),*
280 F.3d 648 (6th Cir. 2002) ............................................................... 6, 7

*In re Continental Airlines,*
203 F.3d 203 (3d Cir.2000) ................................................................... 6

*Czyzewski v. Jevic Holding Corp.,*
137 S. Ct. 973 (2017) ........................................................................ 49

*In re DeCelis,*
349 B.R. 465 (Bankr. E.D. Va. 2006) .................................................... 34

*In re Emerge Energy Services LP,*
2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019)................................... 36

*General Electric Capital Corp. v. Dial Business Forms, Inc. (In re Dial Business Forms, Inc.),*
341 F.3d 738 (8th Cir. 2003) ............................................................... 29

*In re Glob. Indus. Techs., Inc.,*
645 F.3d 201 (3d Cir. 2011) .................................................................. 6

*Golden v. Mentor Cap., Inc.,*
No. 2:15-CV-00176-JNP, 2017 WL 4251685 (D. Utah Sept. 25, 2017), *order vacated on denial of reconsideration,* No. 2:15-CV-00176-JNP, 2018 WL 566441 (D. Utah Jan. 25, 2018) ................................... 30

*Gordon v. Nick,*
No. 96-1858, 1998 WL 559734 (4th Cir. Sept. 2, 1998) .......................... 47

*In re: Health Diagnostic Lab'y, Inc.,*
551 B.R. 218 (Bankr. E.D. Va. 2016) .................................................... 44

*Ivey v. First Citizens Bank & Trust (In re Whitley),*
848 F.3d 205 (4th Cir. 2017) ................................................................. 2

*James v. Jacobson,*
6 F.3d 233 (4th Cir. 1993).................................................................. 2, 49

*Karlin v. Avis,*
457 F.2d 57 (2d Cir. 1972) .................................................................. 35

iv

*Lawski v. Frontier Ins. Grp., LLC.* (*In re Frontier Ins. Grp., Inc.*),
585 B.R. 685 (Bankr. S.D.N.Y. 2018), *aff'd*, 598 B.R. 87 (S.D.N.Y. 2019) .................................................................................................... 30

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*,
115 F.3d 650 (9th Cir. 1997) ......................................................... 38

*In re Lowenschuss*,
67 F.3d 1394 (9th Cir. 1995) ........................................................... 5

*In re Marshall*,
721 F.3d 1032 (9th Cir. 2013) ........................................................ 2

*McDaniel v. Blust*,
668 F.3d 153 (4th Cir. 2012) ........................................................ 47

*Menard–Sanford v. Mabey (In re A.H. Robbins Co.)*,
880 F.2d 694 (4th Cir. 1989) ...................................................... 6, 7

*In re Midway Gold US., Inc.*,
575 B.R. 475 (Bankr. D. Colo. 2017) ........................................... 40

*In re Millennium Lab Holdings II, LLC.*,
945 F.3d 126 (3d Cir. 2019) ......................................................... 49

*In re Mohammad*,
596 B.R. 34 (Bankr. E.D. Va. 2019) ............................................ 38

*Monarch Life Ins. v. Ropes & Gray*,
65 F.3d 973 (1st Cir. 1995) .......................................................... 33

*In re Nat'l Heritage Foundation, Inc.*,
478 B.R. 216 (Bankr. E.D. Va. 2012) ...................................*passim*

*Nat'l Heritage Foundation, Inc. v. Highbourne Foundation*,
760 F.3d 344 (4th Cir. 2014) ................................................*passim*

*Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*,
258 F.3d 180 (3d Cir. 2001) ........................................................ 50

*In re Pac. Lumber Co.*,
584 F.3d 229 (5th Cir. 2009) ................................................*passim*

*Perez v. Everett (In re Perez)*,
    30 F.3d 1209 (9th Cir. 1994) ......................................................... 1

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000) ...................................................... 5, 44, 45

*In re Seaside Eng'g & Surveying, Inc.*,
    780 F.3d 1070 (11th Cir. 2015) ..................................................... 7

*SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*,
    960 F.2d 285 (2d Cir. 1992) ...................................................... 6, 7

*In re SL Liquidating, Inc.*,
    428 B.R. 799 (Bankr. S.D. Ohio 2010) ......................................... 39

*In re Specialty Equip. Cos., Inc.*,
    3 F.3d 1043 (7th Cir. 1993) ......................................................... 28

*Stern v. Marshall*,
    564 U.S. 462 (2011) ..................................................................... 30

*In re SunEdison, Inc.*,
    576 B.R. 453 (Bankr. S.D.N.Y 2017) ................................. 34, 35, 36, 37

*In re Takeout Taxi Holdings, Inc.*,
    307 B.R. 525 (Bankr. E.D. Va. 2004) ...................................... 34, 35

*Matter of Texas Extrusion Corp.*,
    844 F.2d 1142 (5th Cir. 1988) ...................................................... 1

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009) ............................................................. 4, 8, 31

*United States Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010) ............................................................. 4, 29, 49

*United States v. Hanover Ins. Co.*,
    No. 2:15-cv-127, 2015 WL 9665679 (E.D. Va. Dec. 8, 2015) ................. 35

*In re Washington Mutual, Inc.*,
    442 B.R. 314 (Bankr. D. Del. 2011) .......................................... 36, 45

*In re Western Real Estate Fund Inc.,*
      922 F.2d 592 (10th Cir. 1990) ................................................................................. 5, 35

*In re Zale Corp.,*
      62 F.3d 746 (5th Cir. 1995) ....................................................................................... 5

**Statutes**

11 U.S.C. § 105(a) .......................................................................................................... 6

11 U.S.C. § 307 .............................................................................................................. 3

11 U.S.C. § 363(f)(2) ...................................................................................................... 34

11 U.S.C. § 524 ............................................................................................................. 4, 5

11 U.S.C. § 524(e) .......................................................................................................... 5

11 U.S.C. § 524(g) ......................................................................................................... 4, 7

11 U.S.C. §1101 ............................................................................................................. 3

11 U.S.C. § 1103(c) ........................................................................................................ 5

11 U.S.C. § 1109(a) ........................................................................................................ 26

11 U.S.C. § 1121 ............................................................................................................ 3

11 U.S.C. § 1123(b)(6) .................................................................................................... 6

11 U.S.C. § 1124 ............................................................................................................ 15

11 U.S.C. § 1125 ............................................................................................................ 4

11 U.S.C. § 1126(c) ........................................................................................................ 30

11 U.S.C. § 1126(f) ......................................................................................................... 18

11 U.S.C. § 1126(g) ........................................................................................................ 15, 17

11 U.S.C. § 1129 ............................................................................................................ 1, 4, 29

11 U.S.C. § 1129(a)(9) .................................................................................................... 41

11 U.S.C. § 1141(a) ........................................................................................................ 4, 29, 30

11 U.S.C. § 1141(d)(1)(A) ..................................................................... 4

28 U.S.C. .......................................................................................... 3

28 U.S.C. § 157 .................................................................................. 1

28 U.S.C. § 157(a) ............................................................................ 31

28 U.S.C. § 157(c)(1) ........................................................................ 31

28 U.S.C. § 158(a)(1) .......................................................................... 1

28 U.S.C § 158(a)(3) ........................................................................ 50

28 U.S.C. § 158(c)(2) .......................................................................... 2

28 U.S.C. § 158(d)(2) ...................................................................... 50

28 U.S.C. § 581 ................................................................................ 3

28 U.S.C. § 586 ................................................................................ 3

28 U.S.C. § 586(a)(3)(B) ...................................................................... 3

28 U.S.C. § 1334(a) ............................................................................ 1

28 U.S.C. § 1334(b) .......................................................................... 31

## Other Authorities

7 COLLIER ON BANKRUPTCY ¶ 1100.01 (Alan N. Resnick & Henry
J. Sommer eds., 16th ed.) ....................................................................... 3

Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks
and Balances,* Texas Law Review, Vol. 100, 2021 ...................................... 50

Fed. R Bankr. P. 2002 ........................................................................ 19

Fed. R. Bankr. P. 8002(a) ..................................................................... 2

George Kuney, *Unethical Protection? Model Rule 1.8(H) and Plan Releases of
Professional Liability*, 83 Am. Bankr. L.J. 481 (Summer 2009) ...................... 46

John D. Calamari & Joseph M. Perillo, THE LAW OF CONTRACTS § 2–
18, at 83 (3d ed. 1987) ....................................................................... 35

Kurt F. Gwynne, *Indemnification and Exculpation of Professional Persons in Bankruptcy Cases*, 10 Am. Bankr. Inst. L. Rev. 711, 711 (2002)................................. 46

Rosa Sierra, *Warning: Artificial Consent to Third-Party Releases Will Not Result in Plan Confirmation*, Am. Bankr. Inst. J., July 2018...................................................... 36

U.S. Const. art. III ........................................................................................ 31, 48

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.

The bankruptcy court had jurisdiction over the debtors' chapter 11 bankruptcy cases under 28 U.S.C. §§ 157(a) and (b), and 1334(a).  The bankruptcy court's final order confirming the debtors' chapter 11 plan under 11 U.S.C. § 1129 was entered on February 25, 2021.  *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015) (holding that plan confirmation "alters the status quo and fixes the rights and obligations of the parties" for purposes of finality analysis).

The bankruptcy court's order approving the debtors' disclosure statement for the confirmed plan was entered on September 11, 2020; that interlocutory order merged into the final confirmation order for purposes of appeal.  *Perez v. Everett (In re Perez)*, 30 F.3d 1209, 1217 (9th Cir. 1994) ("[T]he confirmation order—not the disclosure order—triggers the deadline for notices of appeal on [disclosure statement issues]."); *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 115 (5th Cir. 1988) (holding "approval of a disclosure statement is only one step in the process" of plan confirmation); *see also Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 120 (4th Cir. 2015) (holding that non-appealable interlocutory orders are merged into the final order and can be reviewed upon appeal of the final order).

Co-Appellants Joel Patterson and Michaella Corporation timely filed a notice of appeal under 28 U.S.C. § 158(c)(2) and Fed. R. Bankr. P. 8002(a)(1) on March 11, 2021.  The government timely filed a notice of appeal under 28 U.S.C. § 158 (c)(2) and Fed. R. Bankr. P. 8002(a)(3) on March 25, 2021.

## STATEMENT OF THE ISSUE

Did the bankruptcy court reversibly err in approving the third-party release and exculpation provisions included in the debtors' chapter 11 plan and disclosure statement?

## STANDARD OF REVIEW

This Court reviews findings of fact for clear error and conclusions of law de novo.  *Ivey v. First Citizens Bank & Trust (In re Whitley)*, 848 F.3d 205, 207 (4th Cir. 2017).  "A finding is 'clearly erroneous' when although there is evidence to support it the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

A bankruptcy court's decision to confirm a debtor's chapter 11 plan is reviewed for abuse of discretion.  *In re Marshall*, 721 F.3d 1032, 1045 (9th Cir. 2013).  A court abuses its discretion when it fails or refuses "actually to exercise its discretion," when it fails "adequately to take into account judicially recognized factors constraining its exercise," or when its exercise of discretion is "flawed by erroneous factual or legal premises." *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993).

2

## STATEMENT OF THE CASE

### I.    Statutory & Legal Framework

#### A.    The United States Trustee

The United States Trustee is a Department of Justice official appointed by the

Attorney General to supervise the administration of bankruptcy cases.  28 U.S.C.

§§ 581, 586.  United States Trustees "serve as bankruptcy watch-dogs to prevent

fraud, dishonesty, and overreaching in the bankruptcy arena."  H.R. Rep. No. 95-595

at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049; *In re A-1 Trash Pickup, Inc.*, 802

F.2d 774, 775 (4th Cir. 1986).  The United States Trustee has statutory standing under

11 U.S.C. § 307 to appear and be heard on any issue in any bankruptcy case, subject to

a limited exception not applicable here.  Section 586(a)(3)(B) of title 28 directs that

United States Trustees "shall" monitor and comment upon chapter 11 plans and

disclosure statements.

#### B.    Bankruptcy relief under Chapter 11

Chapter 11 of the Bankruptcy Code allows "a debtor to reorganize its business

or financial affairs or to engage in an orderly liquidation of its property either as a

going concern or otherwise."  7 COLLIER ON BANKRUPTCY ¶ 1100.01 (Alan N.

Resnick & Henry J. Sommer eds., 16th ed.); 11 U.S.C. §§1101 *et seq.*  Chapter 11

debtors may propose a plan of reorganization or liquidation to parties with claims

against, or equity interest in, the debtor; unless the Bankruptcy Code provides

otherwise, those parties then vote to accept or reject it.  11 U.S.C. §§ 1121, 1125-29.

To provide affected parties with the information necessary to vote on it, the plan's proponent must give them a "disclosure statement" with "adequate information" for them to cast an informed vote.  11 U.S.C. § 1125.

After the vote, the bankruptcy court must determine whether the plan can be "confirmed" by considering if the statutory requirements are met.  11 U.S.C. § 1129; *see United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) (holding bankruptcy judges have an independent duty to inspect and disapprove improper plans).  Upon confirmation, the plan sets forth the debtor's new obligations to the affected parties going forward.  11 U.S.C. § 1141(a).  Except as otherwise provided by statute, a corporate debtor's pre-confirmation debts are discharged.   11 U.S.C. § 1141(d)(1)(A).

### C.    Non-debtor releases in chapter 11 plans

With one exception, the Bankruptcy Code discharges only the debtor's liabilities upon plan confirmation.  11 U.S.C. §§ 524(a), 1141(d)(1)(A).  The exception applies exclusively to asbestos-related cases in which the bankruptcy court is authorized to enjoin claims against a specified set of non-debtors.  11 U.S.C. § 524(g).[1]

---

[1]  The statute authorizes bankruptcy courts to enjoin actions against a subset of third parties where the debtor established trusts for asbestos claimants to which their claims can be channeled, and only to the extent the third party "is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor."  11 U.S.C. § 524(g)(2)(B)(i)&(4)(A)(ii); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 155 (2009).

Rather than authorizing a release of claims against non-debtors, the Bankruptcy Code specifies that "[a] discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Fifth, Ninth, and Tenth Circuits have adopted rules holding that section 524 "prohibits the discharge of debts of nondebtors." *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995); *In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995) (holding "§ 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors");[2] *In re Western Real Estate Fund Inc.*, 922 F.2d 592, 600 (10th Cir. 1990) ("Obviously, it is the debtor, who has invoked and submitted to the bankruptcy process, that is entitled to its protections; Congress did not intend to extend such benefits to third-party bystanders.").

This issue has resulted in a circuit split. Notwithstanding the lack of express statutory authority to do so, other courts, including the Fourth Circuit, permit

---

[2] *But see Blixseth v. Credit Suisse*, 961 F.3d 1074, 1084-85 (9th Cir. 2020) (holding 11 U.S.C. § 524(e) did not preclude approval of "exculpation clause" extending to non-debtor third parties).

Some courts have permitted exculpation provisions releasing claims against certain non-debtor parties related to their actions in the bankruptcy case, other than for willful misconduct or gross negligence. *See In re Pac. Lumber Co.*, 584 F.3d 229, 253 (5th Cir. 2009) (permitting provision as to statutory creditors' committee for actions within scope of its duties under theory of "qualified immunity" but striking provision for others); *In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (permitting exculpation for statutory creditors' committee as consistent with 11 U.S.C. § 1103(c)).

No provision of the Bankruptcy Code expressly authorizes this extension of immunity against negligence claims for non-debtor parties in chapter 11 cases.

bankruptcy courts to permanently enjoin third-party actions against non-debtors under certain circumstances—a release of liability generally known as "third-party releases." *See, e.g., In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 206 (3d Cir. 2011); *SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285 (2d Cir. 1992); *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648 (6th Cir. 2002); *Menard–Sanford v. Mabey (In re A.H. Robbins Co.)*, 880 F.2d 694 (4th Cir. 1989).

Generally, "these cases all concerned global settlements of mass claims against the debtors and co-liable parties." *Pac. Lumber*, 584 F.3d at 252 (rejecting release under circuit precedent but citing survey of circuit law in *In re Continental Airlines*, 203 F.3d 203, 212–13 (3d Cir.2000)). Such cases often involved a "channeling injunction" by which the bankruptcy court enjoined litigation against a debtor and certain third parties, like the debtor's insurers, and channeled the claims to proceed against a trust. *See, e.g., Glob. Indus. Techs.*, 645 F.3d at 205-06 & n.9.

Those courts concluded that "trusts and channeling injunctions may be authorized under § 105(a) and § 1123(b)(6) of the Bankruptcy Code to address other mass tort liabilities where a trust and channeling injunction would play 'an important part in the debtor's reorganization plan.'" *Id.* at 206, n. 10 (quoting *Drexel Burnham Lambert Group*, 960 F.2d at 293) (authorizing channeling injunction for silica-related personal injury claims); *see also Dow Corning*, 280 F.3d at 658 (recognizing authority to issue channeling injunction for silicone breast implant claims but remanding where

bankruptcy court's findings were insufficient to establish such injunction was appropriate); *Drexel Burnham Lambert Group*, 960 F.2d at 293 (authorizing channeling injunction for securities class action claims); *A.H. Robbins*, 880 F.2d at 700-02 (authorizing channeling injunction for Dalkon Shield birth control device claims); *but see In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 657 (7th Cir. 2008) (approving third-party release outside mass claims context); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1077-81 (11th Cir. 2015) (holding same).  Enactment of 11 U.S.C. § 524(g) "suggests non-debtor releases are most appropriate as a method to channel mass claims toward a specific pool of assets."  *In re Pac. Lumber Co.*, 584 F.3d at 252.

## D.     Fourth Circuit law on non-debtor releases

The Fourth Circuit in *Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 711-12 (4th Cir. 2011), specified that courts must evaluate an enumerated set of criteria when weighing whether to provide such extraordinary equitable relief:  These criteria, taken from *Dow Corning*, 280 F.3d at 658, are:

(1)     There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;

(2)     The non-debtor has contributed substantial assets to the reorganization;

(3)     The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor;

(4)     The impacted class, or classes, has overwhelmingly voted to accept the plan;

(5)     The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction;

(6)     The plan provides an opportunity for those claimants who choose not to settle to recover in full, and;

(7)     The bankruptcy court made a record of specific factual findings that support its conclusions.

*Behrmann*, 663 F.3d at 711-12.[3]

The Fourth Circuit requires that third-party releases "be granted cautiously and infrequently." *Id.* at 712.

In *Behrmann*, which did not involve a mass tort scenario, the Fourth Circuit vacated a bankruptcy court ruling approving a third-party release and exculpation clause in the chapter 11 plan of the debtor and remanded the case for further consideration using the specified factors. *Id.* at 714. Upon remand, the bankruptcy

---

[3] *See also Travelers*, 557 U.S. at 155 (declining to "resolve whether a bankruptcy court . . . could properly enjoin claims against nondebtor insurers that are not derivative of the debtor's wrongdoing.").

8

court applied the *Behrmann* factors and denied the third-party release, which would have enjoined any claims against the debtor's officers, directors, and employees, as well as the chapter 11 statutory creditors' committee and its members, as to any claim related to the operation of the debtor's business. *In re Nat'l Heritage Foundation, Inc.*, 478 B.R. 216, 223 & 225-32 (Bankr. E.D. Va. 2012).

On appeal once more, the Fourth Circuit affirmed the bankruptcy court's denial of the third-party releases. *Nat'l Heritage Foundation, Inc. v. Highbourne Foundation*, 760 F.3d 344, 346 (4th Cir. 2014). The Fourth Circuit agreed with the bankruptcy court that only one of the *Behrmann* factors—the possibility that the debtor would have to indemnify its officers and directors for litigation expense—weighed in favor of the release. *Id.* at 351. It held that an indemnity obligation by itself was insufficient to justify a non-debtor release; otherwise, such releases "would be the norm, not the exception, in Chapter 11 cases." *Id.* (quoting *Nat'l Heritage*, 478 B.R. at 232).

Noting the "extraordinary breadth of" that particular release, the Fourth Circuit expressly stated it was "troubled" by the debtor's "failure to provide a mechanism outside of the bankruptcy process to satisfy" the claims of affected parties. *Id.*

Separately on remand, the bankruptcy court approved the exculpatory clause in the plan, which limited the liability of the debtor, the statutory creditors' committee and its members, and their respective directors, officers, and employees—but not their professionals—regarding any acts they took in connection with the bankruptcy case. *Nat'l Heritage*, 478 B.R at 232-34. No party appealed that decision, and the

Fourth Circuit did not address its propriety on appeal.  *Nat'l Heritage*, 760 F.3d at 346 n.2.

## II.     Statement of the Facts

### A.     The underlying chapter 11 bankruptcy case

On July 23, 2020, Appellee Mahwah Bergen Retail Group, f/k/a Ascena Retail Group, and its affiliated companies (collectively, "Mahwah") commenced voluntary cases under chapter 11 of the Bankruptcy Code, which the bankruptcy court consolidated for joint administration.  Appx. 0001, 0293-311.  Mahwah owned and operated several women's clothing chain stores, including Ann Taylor, LOFT, and Lane Bryant.  Appx. 0020-21, ¶ 5.

Mahwah had approximately $1.6 billion in secured debt and $7 to 8 hundred million in unsecured debt.  Appx. 1592, 1599.  Prior to filing for bankruptcy relief, Mahwah negotiated a restructuring support agreement with many of its secured term lenders, which was used as a basis for its chapter 11 plan.  Appx. 1591.

Rather than reorganize its business, Mahwah decided to liquidate.  It sold substantially all of its assets for a total sales price of $651.8 million.  Appx. 2259-61, 2262-64, 2265-67, 2320 at ¶ 5.  It then filed a proposed amended chapter 11 plan. Appx. 2410-2529.  Under its proposed plan, some secured lenders would be paid in full, general unsecured creditors would receive pro rata payments from a trust funded by $7.25 million in cash plus a portion of the proceeds from certain litigation, and the remaining class of secured claims would receive the rest of Mahwah's cash.  Appx.

10

2621 at ¶¶ 82-85, 2632-34, 2636.  Its shareholders would receive nothing, and their equity interests would be extinguished.  Appx. 2634.

    **B.**    **Mahwah's plan contains provisions to release non-debtors' claims against non-debtors**

Mahwah's proposed plan had provisions that together served as a release and injunction against non-debtors suing other non-debtors.  Appx. 2461-62.  That includes pursuing all their state-law claims.

A provision titled "Release by holders of Claims or Interests" ("Third-Party Release") provides, inter alia, that "each Releasing Party . . . is deemed to have released and discharged . . . each other Released Party from any and all Causes of Action, whether known or unknown," related to: Mahwah; its securities; any claim treated in the plan; any business or contract between Mahwah and any Released Party; Mahwah's restructuring efforts; its intercompany transactions; its credit agreements; its chapter 11 cases; its restructuring support agreement and related prepetition and other transactions or documents; its post-petition financing; its corporate governance documents; various bankruptcy pleadings including the chapter 11 plan ("including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction. . . contemplated by the Plan. . ."); the pursuit of confirmation, consummation, administration and implementation of the plan; "or any other related agreement, or upon any other act, omission, transaction, agreement,

event, or other occurrence (in each case, related to any of the foregoing) taking place on or before the Effective Date."  Appx. 2461.

With an exception further discussed below, the plan defines "Released Party to extend to a broad array of 17 different groups or types of entities including, among others, "Consenting Stakeholders,"[4] various lenders and administrative agents for certain credit and financing facilities, "each current and former Affiliate" of those entities, and each "Related Party" of those entities.  Appx. 2427.

Also with an exception discussed below, "Releasing Party" is defined even more broadly, extending to 21 different groups of entities, including the "Consenting Stakeholders;" various lenders and agents for credit and financing facilities; all holders of impaired and unimpaired claims who "did not timely opt out of or object to the applicable release;" each entity's current and former affiliates, and—again—each "Related Party" of each entity.  Appx. 2427.

"Related Party" is separately defined under the plan as:

> current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members,

---

[4]  "Consenting Stakeholders" is defined as "having the meaning set forth in" the separately-filed restructuring support agreement.  Appx. 2420.  That agreement in turn defines "Consenting Stakeholders" as certain signatories to the agreement.  Appx. 0049, 0051.  The filed version of the agreement then omits the signature page reflecting which parties constitute the "Consenting Stakeholders."  Appx. 0079.  Thus, it is not possible to discern the identity of these entities from the filed pleadings.

management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors of such person or Entity, and any such Person's or Entity's respective heirs, executors, estates, and nominees.

Appx. 2426.

Mahwah's plan proposed that the definition of "Releasing Party" exclude an entity that elected to "opt out" of the releases in the plan or timely objected to the releases in the plan.  Appx. 2427.  It further provided that the definition of "Released Party" would also exclude "any holder of a Claim or Interest that opts out of the releases."  *Id.*

And Mahwah's proposed plan had a separate provision titled "Exculpation." Appx. 2461-62 ("Exculpation Clause").  That clause provides that "each Exculpated Party is hereby released and exculpated from any Cause of Action or any claim arising from the Petition Date through the Effective Date related to any act or omission" regarding, among other things: the chapter 11 cases; the restructuring support agreement and "related pre-petition transactions;" certain financing arrangements; and any document created in relation to the case, unless that act or omission constitutes "actual fraud, willful misconduct or gross negligence."  *Id.*  The same clause also releases the Exculpated Parties from liability for the "violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan

13

or such distributions made pursuant to the Plan," with no exception for willful misconduct or gross negligence noted in that part of the provision. *Id.*

The plan defines "Exculpated Parties" as including, among others, Mahwah, its Consenting Stakeholders, the unsecured creditors' committee, a loan agent, each current and former affiliate of each entity, and—again—each entity's "Related Party." Appx. 2422. Nothing in the provision permitted a party to "opt out" of the release of the claims addressed in the Exculpation Clause.

Finally, Mahwah's proposed plan embedded an "Injunction" provision. Appx. 2462. It decrees that all entities with claims that were "released, discharged, or exculpated" under the plan were "permanently enjoined" from pursuing "any action or other proceeding" for such claims against the Released Parties. *Id.*

## C. The United States Trustee and others object to Mahwah's disclosure statement based on the non-debtor release provisions

The United States Trustee, the Securities & Exchange Commission ("SEC"), and the plaintiffs in a state securities class-action against Mahwah (the "Securities Plaintiffs") objected to the disclosure statement on the grounds that the Third-Party Release was impermissible under Fourth Circuit law.[5] Appx. 0693-718, 0719-28,

---

[5] The disclosure statement to which the parties objected was for Mahwah's original chapter 11 plan, which contemplated reorganization. Appx. 0312-58, 0359-692. But the Third-Party Release was identical, and the related definitions substantially similar, between the original and later amended plan. *Compare* Appx. 0323, 0324 & 0349 *with* Appx. 2426-27 & 2461-62. The Exculpation Clause was also substantially the same; the only exception was that the amended plan inserted a time limitation, releasing claims that arose between the petition date and the effective date of the plan. *Compare*

0729-912.  The United States Trustee further objected to the Exculpation Clause.
Appx. 0711-12.

In his objection, the United States Trustee maintained that, among other
things, to the extent the bankruptcy court approved the impermissible releases as
consensual over the parties' objections:

- The disclosure statement and plan should provide that any creditor or
  interest holder who abstains from voting or fails to return a ballot should
  not be deemed to have consented to the third-party releases;

- The disclosure statement, plan, and ballots should be amended to
  provide that creditors whose claims were unimpaired (i.e., whose rights
  were not altered under the plan, *see* 11 U.S.C. § 1124) should not be
  deemed to have consented to the third-party releases, but instead be
  given an option to "opt in" to release their claims against the Released
  Parties; and

- The disclosure statement and plan should be amended to provide that
  creditors deemed to have rejected the plan under 11 U.S.C. § 1126(g),

---

Appx. 0349 *with* 2461-62.  Yet, the inserted time limitation appears at odds with the
Exculpation Clause's citation of claims arising from "pre-petition transactions" related
to the restructuring support agreement as among the claims released.  Appx. 2461-62.

15

because they received nothing under the plan, should be deemed to have rejected the third-party releases without having to object to the plan.

Appx. 0711.

At the hearing on the disclosure statement, the bankruptcy court at various points instructed the objecting parties to focus only on the actual notice provided in the disclosure statement to solicit votes from creditors and shareholders on the plan, and that substantive objections to the non-debtor releases in the plan were issues to be addressed at the confirmation stage:[6]

- "I would like to focus on the actual notice, and rights to object to opt-out such can be taken up at confirmation," Appx. 0928;

- "I think many of the points that are being argued here today are obviously confirmation issues, and I don't intend to get into those. . . .," *id.* at 0938;

- "I am preserving any other arguments you have with regard to the opt-out versus opt-in and such.  That would be a confirmation issue that we would take up at the confirmation hearing," *id.* at 0939;

---

[6]  Aware from prior rulings that this was the bankruptcy court's practice, *see* Argument II.B, the United States Trustee did not present argument at the hearing but reserved his rights to continue his objection to the Third-Party Release and Exculpation Clause at the confirmation stage.  Appx. 0920.

- "I think that many of the arguments that you've been making today are also confirmation issues with regard to the opt-out/opt-in legal precedent, those kinds of things, for confirmation. . . .," *id.* at 0940.

- "The Court is going to approve that disclosure statement. . . and all confirmation objections are preserved and will be taken up at the confirmation hearing," *id.* at 0942.

The court then approved the disclosure statement for dissemination to creditors and shareholders, having orally ruled that the parties' objections were preserved as an issue to be resolved at confirmation.  Appx. 0942, 0980-82.

The bankruptcy court ordered that notice and forms to opt out of the third-party releases also be sent to holders of claims entitled to vote on the plan.  Appx. 0983-84, 1531.  The court also ordered that notice and opt-out forms be sent to all of Mahwah's current shareholders and some of its former shareholders, who would otherwise not be entitled to vote as they would be deemed to have rejected the plan under 11 U.S.C. § 1126(g).  Appx. 0929-31, 0937-40, 0986, 1541; *see also* Appx. 2539-40.

Notices with opt-out forms set forth the unexpurgated text of the lengthy third-party release provision and equally lengthy definitions of "Released" and "Releasing Parties" in block capital letters.  Appx. 1529-31 & 1545-47.  Although both definitions included defined terms, the definitions of those defined terms were neither

17

provided nor summarized.  And the notice, like the prior bankruptcy pleadings, failed to reveal the identity of the Consenting Stakeholders among the Released Parties.  *See* n.4 *supra.*

The court ordered that the notice to the equity holders include language suggested by the SEC.  Appx. 0726 n.3, 0938, 0942.  That language clarified that the plan would release the interest holder's claims against "many other people and entities (including company officers and directors)" unless the party opted out.  Appx. 1541.  This clarifying language was included only in the notice to the equity holders, and not in the notice to any other plan participants.  *Compare* Appx. 1541 *with* 1529-31 *and* 1538.

Holders of unimpaired claims or interests—who were not entitled to vote as they were deemed to accept the plan under 11 U.S.C. § 1126(f)—were provided a notice informing them that they were deemed to have accepted the third-party release.  Appx. 0986, 1538.

Critically, the bankruptcy court did not order that any notice or opt-out form be sent to the vast scope of Related Parties who were "Releasing Parties," such as the current or former employees,[7] consultants, accountants, or attorneys of Mahwah, its affiliates, its lenders, its creditors, or its interest holders.  These parties would thus not

---

[7] Mahwah represented that as of its filing, it and its affiliates had 40,000 current employees and that it has been in business since 1962.  Appx. 0020-21.  No evidence was presented as to the number or identity of its former employees.

have received notice of the plan unless they were already claimants, interest holders, or were on the Bankruptcy Rule 2002 list of parties to receive notice. Appx. 0983-86.

Additionally, the court ordered that a general notice of the confirmation hearing be published on one day in *USA Today* (national edition) and the *New York Times.* Appx. 0985-86. That notice included, among other things, the day and time of the scheduled hearing, the deadline by which to object to Mahwah's plan, and that the plan contained a third-party release, with a warning for readers to review and consider the plan because their rights might be affected thereunder. Appx. 1559.

### D. The United States Trustee and others object to confirmation of Mahwah's plan based on the non-debtor release provisions

The United States Trustee, the SEC, and Securities Plaintiffs maintained their objection to confirmation of the plan on the same grounds as they objected to the disclosure statement—that the Third-Party Release was impermissible under Fourth Circuit law. Appx. 2201-14, 2215-23, 2224-58, 2268-2313, 2314-17. The United States Trustee also continued to object to the Exculpation Clause. Appx. 2315.

In response, Mahwah claimed that, despite a lack of Fourth Circuit precedent to this effect, the *Behrmann* factors did not need to be satisfied when the release was "consensual," which it argued was the case when parties were notified of the release provisions and failed to opt out or object to the release. Appx. 2386-87. In the alternative, Mahwah argued the *Behrmann* factors were satisfied as follows:

19

1.      Mahwah felt there was an "identity" of interests between it and the Released Parties because they all "share a common goal . . . in seeing these chapter 11 cases succeed." Appx. 2392-93. Mahwah also claimed, without further detail, that Mahwah was "required to indemnify *certain of* the Released Parties under, among other agreements, their pre- and postpetition credit facilities and existing organizational documents." Appx. 2393 (emphasis added).

2.      Mahwah said the Released Parties made a "substantial contribution" to the reorganization, treating the parties' "significant time and resources" as assets. *Id.*

3.      Mahwah said the third-party releases were "necessary to the resolution" of its bankruptcy because the "Released Parties would not have agreed to make the substantial contributions" of time and resources without the promise of the release— even though the Releasing Parties could opt out of the release. Appx. 2395.

4.      Mahwah argued that the plan was supported by its creditors, as those who could vote on the plan "overwhelmingly" voted to accept it, "substantially all" of its secured lenders and the statutory creditors' committee supported the plan, and no individual equity holders, other than the Securities Plaintiffs, objected to the plan. *Id.*

5.      Mahwah claimed that the plan provided "a meaningful recovery to most of" its creditors. It did not address whether "meaningful" was "all, or substantially all" of the affected parties' claims, as the fifth factor required, nor did it address the equity holders, who received nothing from the plan. *Id.*

20

6.    Mahwah failed to address the sixth factor, which asks whether the plan provides an opportunity to those who choose not to settle to recover in full.  Appx. 2395-96.  Instead, Mahwah claimed, in response to arguments made by the United States Trustee and SEC, that there was no need to exclude claims for "fraud, willful misconduct, gross negligence, or other similar acts" from the Third-Party Release, as it contended the bankruptcy court could permit the release of such claims.  *Id.*

At the confirmation hearing, the court received into evidence a declaration by Mahwah representative Carrie Teffner in support of the Third-Party Release and Exculpation Clause.  Appx. 2318-35, 2684.

. In it, Ms. Teffner declared that Mahwah had agreed to indemnify "certain of the Released Parties," such that "[f]ailure to approve the Plan's third-party releases could *potentially* significantly increase the time and expense of [Mahwah's] wind down process. . . ."  Appx. 2332 (emphasis added).  She also claimed (without explaining why) that "the *quid pro quo* for the contributions, concessions, and support offered by the Released Parties are the third-party releases."  *Id.*

On cross-examination, regarding her statement that the Third-Party Release was the product of extensive negotiations and were "material inducements" for the parties to enter into the plan, Ms. Teffner conceded that the referenced "parties" were only Mahwah's lenders and no others whose claims were being taken away.  Appx. 2694.  She conceded that no one representing the equity holders, who received nothing from the plan, were part of those negotiations.  Appx. 2690-91, 2695.  She

further conceded that two former Mahwah officers and directors, who were defendants in the Securities Plaintiffs' lawsuit, were not part of those negotiations, were not "critical participants" in the bankruptcy cases, and had not been involved, directly or indirectly, in the bankruptcy case.  2226, 2695, 2698.

Ms. Teffner admitted that what "we've asked for and what we've negotiated is for a comprehensive release for all current and former directors and officers, and that's what's been requested." Appx. 2708.[8]  When asked if Mahwah would still move forward with confirmation were the two former officers and directors excluded from the release, Ms. Teffner declined to comment, deeming the possibility a "hypothetical." *Id.*

Ms. Teffner was then asked about the scope of the Released Parties.  Appx. 2711-2716.  After confirming that she had read the definition of "Released Parties" before or when she made her sworn declaration, she expressed her view that all Released Parties had the same entitlement to the release for largely the same reasons. Appx. 2712.  But she admitted she had not known that the Released Parties included all "former managers," "former employees," and "former consultants." Appx. 2712-13.  Despite claiming she would stand by her declaration even if they were Released Parties, she conceded that her statements that all Released Parties "worked efficiently and constructively to push the plan to completion," "played an integral role in the

---

[8]  Ms. Teffner was herself an officer and director of Mahwah.  Appx. 2318-19.

formulation and negotiation of. . . the plan," or "expend[ed] significant time and resources," were not consistent as to anyone whose work fell outside of the time frame of Mahwah's bankruptcy case.  Appx. 2712-15.

Ms. Teffner also conceded that her statement that the Released Parties "made a number of concessions" referred to a much smaller number of the Released Parties. Appx. 2716.  She further admitted the work done by the employees, officers, and directors who were Released Parties was "ultimately part of their [job] responsibility." *Id.*

The objecting parties, including the United States Trustee, presented arguments at the hearing.  Appx. 2736-68.  The United States Trustee argued that implied consent to third-party release provisions was neither realistic nor fair, and countered Mahwah's arguments that the *Behrmann* factors were satisfied.  Appx. 2738-40.  The United States Trustee also argued that it was "counterintuitive" that a court of equity would permit the release of claims of fraud, breach of fiduciary duty, willful misconduct, gross negligence, and violations of various laws and regulations.  Appx. 2740.  The United States Trustee asked that the Third-Party Release and Exculpation Clause be stricken or narrowly applied.  Appx. 2742.

In response, the court questioned its ability to narrow or limit the third-party release provisions.  Appx. 2742.  The court framed its choice as "to either confirm the plan or not confirm the plan," claiming that it could not "rewrite" or "redline" the

23

plan, as that was the plan that had been voted on.[9]  *Id.*  The court asked, "Don't I have to take it as a whole or leave it as a whole?"  *Id.*  The United States Trustee disagreed and emphasized the court's ability to narrow the construction of plan provisions in a confirmation order.  *Id.*  And the Securities Plaintiffs pointed to the severability clause in the plan that expressly allowed the plan to proceed to confirmation even if the bankruptcy court altered its provisions.  Appx. 2528, 2762.

### C.     The bankruptcy court issues its opinion

The bankruptcy court confirmed the plan, including the Third-Party Release and Exculpation Clause, over the government's objections.  Appx. 2530-2672.  It subsequently issued a memorandum opinion regarding its confirmation order.  Appx. 2837-76.

The court opined that it "is only where the releases included in a plan are non-consensual must the Court turn to the heightened standard of scrutiny imposed by the Fourth Circuit in *Behrmann.* . . ."  Appx. 2866.  The bankruptcy court stated that where parties "have consented to the terms of the plan, the Court will enforce such terms using general principles of contract law," despite also acknowledging that its ability to bind parties to a confirmed plan, even if the party did not vote to accept it, was "[u]nique to bankruptcy law."  *Id.* at 2866 & n. 21.  And the bankruptcy court stated

---

[9]  Yet, it was the court's decision to let the plan proceed to a vote with the objectionable release provisions intact, claiming that the issues could be resolved at the confirmation stage.  Appx. 0928, 0938-40, 0942.

that third-party releases are "consensual where the releasing parties had notice and an opportunity to object or opt out." *Id.* at 2867.

The bankruptcy court declared that it "is not going to second guess the decision that these constituents have made nor will [it] rewrite the terms of the contract that the Plan embodies." *Id.* at 2871. The bankruptcy court repeated this when addressing the objecting parties' argument that the Third-Party Release should include a carve-out for "actual fraud, willful misconduct, or gross negligence," announcing that it "will not arbitrarily rewrite the terms of the constituencies' deal." *Id.* at 2871-72.[10]

Finally, in a footnote, the bankruptcy court concluded, without making specific factual findings on the criteria as required under *Behrmann*, 663 F.3d at 711-12, that if they were applicable, the *Behrmann* factors would be satisfied for the reasons stated by Mahwah. *Id.* at 2874 n. 28.

As to the Exculpation Clause, the bankruptcy court again noted it had in prior cases "approved numerous exculpation provisions that encompass non-estate fiduciaries," and declined "to upset its *stare decisis*" on what it deemed was "the bare legal argument of the United States Trustee." *Id.* at 2875.

---

[10] This is contradicted by the bankruptcy court's later order denying the United States Trustee's motion for a limited stay pending appeal, in which the court claimed that the Third-Party Release "did not relieve any party of any liability arising out of an act or omission constituting gross negligence or willful misconduct." Appx. 2894.

The bankruptcy court issued the final order confirming Mahwah's plan on February 25, 2021.  Appx. 2530-2672.  The Securities Plaintiffs timely filed their notice of appeal on March 11, 2021.  The United States Trustee timely filed his notice of appeal on March 25, 2021.  The SEC was statutorily prohibited from appealing.  11 U.S.C. § 1109(a) (providing "the Securities and Exchange Commission may not appeal from any judgment, order, or decree entered in [a] case").

## SUMMARY OF THE ARGUMENT

The sweeping Third-Party Release and Exculpation Clause —provisions broader than the Fourth Circuit has ever endorsed—do not conform to the Fourth Circuit's standard.  The bankruptcy court erred as a matter of law in failing to apply that standard before decreeing the release of non-debtor claims against other non-debtors, a release strikingly broad in the scope of both the claims released and the parties deemed to be releasing and released from those claims.

The bankruptcy court's ruling that it did not need to apply that standard because the Third-Party Release is consensual is both legally and factually incorrect. In *Nat'l Heritage*, the Fourth Circuit made clear that consent to the release is simply one factor for the bankruptcy court to consider—and not a critical one at that. Moreover, this Third-Party Release is not consensual.  No provision was made to give notice or opportunity to object or opt-out to the wide universe of Releasing Parties as defined by Mahwah's plan.  Furthermore, the limited group of the parties to whom

26

notice was given were deemed by the court below to have consented by their silence—an unsupportable legal fiction.

The bankruptcy court's alternative holding, that the *Behrmann* factors were met, is clearly erroneous.  As an initial matter, the bankruptcy court failed to set forth specific facts demonstrating how the factors were met—itself the last required factor. As to the remaining factors, under the analysis conducted in *Nat'l Heritage*, Mahwah failed to meet its burden in establishing that this extraordinary relief was warranted. 760 F.3d at 346.

And no provision to "opt-out" of the release was permitted in the Exculpation Clause, rendering the release of those claims inherently non-consensual.  In *Behrmann*, the Fourth Circuit treated the exculpation clause as part of the third-party release provisions in the plan.  It too must meet the Fourth Circuit standard.  The Fourth Circuit has not condoned the separate release of negligence claims against non-debtor parties related to their actions within a bankruptcy case.  And, even if it did, past jurisprudence suggests the Fourth Circuit would not approve of the breadth of the Exculpation Clause here.

The bankruptcy court abused its discretion in permitting the plan to proceed to vote, and in confirming the plan, with the Third-Party Release and Exculpation Clause.  This Court should deem those provisions unenforceable, a remedy affirmed by the Fourth Circuit.  *Nat'l Heritage*, 760 F.3d at 347, 351.  In the alternative, this Court should deem all Releasing Parties to have opted out of the release provisions.

27

# ARGUMENT

## I. The Bankruptcy Court Reversibly Erred in Approving the Third-Party Release and Exculpation Clause

### A. The bankruptcy court erred as a matter of law in holding that presumed consent is a stand-alone basis to approve the Third-Party Release

The bankruptcy court committed legal error in holding it could ignore the *Behrmann* factors mandated by the Fourth Circuit simply because the court presumed the Third-Party Release was consensual—even though many of the affected parties neither had notice of the release and certainly never expressly consented to it. This violated their rights and violated Fourth Circuit precedent.

The Fourth Circuit has never held that a bankruptcy court may authorize a third-party release with the affected party's consent, presumed or otherwise. In *Nat'l Heritage*, the Fourth Circuit never described the third-party releases as non-consensual and made no distinction between consensual and non-consensual releases. To the contrary, the Fourth Circuit adopted a multi-factor test to assess the appropriateness of a non-debtor release, only one of which looks to whether "the class . . . affected by the Release Provision overwhelmingly voted in favor of the Plan"—or, in other words, that the class affected by the release consented to it. *Nat'l Heritage*, 760 F.3d at 350; *see In re Specialty Equip. Cos., Inc.*, 3 F.3d 1043, 1047 (7th Cir. 1993) (holding that those who voted for plan with a third-party release consented to the release).

28

To the contrary, the Fourth Circuit held that the single factor of support for the plan "does not make up for the fact that most of the other . . . factors weigh against enforcing the Release Provisions." *Nat'l Heritage*, 760 F.3d at 350.  Thus, the Fourth Circuit made clear that consent is not a stand-alone basis for permitting third-party releases.  As consent is one of seven considerations specified by *Behrmann*, no amount of bargaining or consent by the parties alleviates the bankruptcy court's duty to consider the other factors when deciding whether to grant such extraordinary equitable relief.  *Cf. Espinosa*, 559 U.S. at 277 (holding that bankruptcy judges have an independent obligation to review debtors' plans and must strike improper provisions, even if no party objects).

The bankruptcy court's ruling that consent alone is sufficient to approve the Third-Party Releases is not sanctioned by Fourth Circuit precedent and is based on its erroneous assumption that a chapter 11 plan is a contract.   Appx. 2866.  This is incorrect.  A chapter 11 plan is not a contract.  The source of a chapter 11 plan's binding effect is not the parties' mutual assent, but federal statutory provisions that govern what a plan must contain and what it may do.  11 U.S.C. § 1141(a).  A chapter 11 plan, even if agreed to by every interested party, is not binding or effective without court approval.  11 U.S.C. §§ 1129, 1141(a).  Most importantly, a confirmed chapter 11 plan is binding upon and effective even against parties who affirmatively reject the offers made in the plan. *General Electric Capital Corp. v. Dial Business Forms, Inc. (In re*

29

*Dial Business Forms, Inc.)*, 341 F.3d 738, 743 (8th Cir. 2003); 11 U.S.C. §§ 1126(c), 1141(a).

To be sure, cases can be found referring to chapter 11 plans as contracts, but that is only because courts sometimes analogize their statutory requirements to contractual principles. *See Lawski v. Frontier Ins. Grp., LLC. (In re Frontier Ins. Grp., Inc.)*, 585 B.R. 685, 693 (Bankr. S.D.N.Y. 2018), *aff'd*, 598 B.R. 87 (S.D.N.Y. 2019). "References to chapter 11 plans as contracts or agreements—while useful for purposes of interpreting plans—are only by analogy." *Id.*; *see also Golden v. Mentor Cap., Inc.*, No. 2:15-CV-00176-JNP, 2017 WL 4251685, at *11 (D. Utah Sept. 25, 2017), *order vacated on denial of reconsideration*, No. 2:15-CV-00176-JNP, 2018 WL 566441 (D. Utah Jan. 25, 2018) ("Courts that liken confirmed Chapter 11 bankruptcy plans to contracts often do so only for purposes of interpreting them.") And, even while asserting that chapter 11 plans are contracts, the bankruptcy court conceded that a chapter 11 plan lacks the most fundamental contractual principle—the requirement that a party to the contract has agreed to the contract's terms. Appx. 2866 n.21.

## B.   The bankruptcy court reversibly erred in deeming the Third-Party Release to be consensual

Many of the non-debtors never gave their assent to the obliteration of their state and federal law claims against other non-debtors.[11]  So, even if consent alone

---

[11] There is reason to think bankruptcy courts lack constitutional authority to impose the Third-Party Release against parties to take away their state law claims. *See Stern v. Marshall*, 564 U.S. 462 (2011) (holding authority to adjudicate private state-law

were a sufficient basis for the bankruptcy court to order a release of non-debtor

claims against other non-debtors—which it is not—the bankruptcy court abused its

discretion in approving the Third-Party Release as consensual.

As explained in section B of the Statement of the Facts, *supra*, and further

explained in Argument section B.1, despite the breadth of parties deemed to release

and be released, as well as the range of claims released in the plan, notice was not

provided to all affected parties.  Thus, the Third Party Release was not consensual.

And, as explained further in Argument section B.2, *infra*, the bankruptcy court

committed legal error in implying silence as consent to releasing claims against non-

debtors.

### 1. No one sent notice of the Third-Party Release to all parties whose litigation rights against non-debtors were terminated under Mahwah's plan

Despite the plan's extinguishment of many otherwise lawful claims, no notice

of the proposed Third-Party Release was ordered to be sent to all affected parties.

The bankruptcy court required only that Mahwah's creditors and equity holders be

---

disputes must generally be vested in Article III judges); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (while recognizing bankruptcy court's jurisdiction over proceedings "related to" bankruptcy case under 28 U.S.C. §§ 157(a) & 1334(b), holding that such jurisdiction "cannot be limitless"); *id.* at 323 (questioning authority of bankruptcy court to "grant injunctions over cases that [it] may not decide" as "inconsistent" with limited jurisdiction over related proceedings under 28 U.S.C. § 157(c)(1)) (Stevens, J.) (dissenting).  Yet, regardless of the court's constitutional authority as a non-Article III judge, once final and unappealable, its confirmation order would have *res judicata* affect.  *Travelers*, 557 U.S. at 152.

provided with notice.  Appx. 0983-86.  And although a general notice of Mahwah's bankruptcy and the scheduled confirmation hearing was published on one day in two daily national newspapers, that notice included not a hint of how vastly the Third-Party Release extended or the claims being extinguished by it.  Appx. 0985-87, 1558-62.

That release purports to release claims of over 21 groups of entities, one of which is itself a conglomeration of "Related Parties" that—depending upon how it is counted—includes another 68 other groups of people or entities in their current and former roles.  Appx. 2426-28.  These include current and former employees, attorneys, accountants, financial advisors, managers, and consultants of, not just Mahwah, but also of its creditors, equity holders, lenders, and loan agents.  Further, the plan terminated those claims against a similarly broad array of 17 groups of entities, one of which was the "Related Parties" that again extend to another 68 groups of people.  *Id.*

And the universe of claims deemed released is also extensive.  They include claims—known and unknown—related to Mahwah, including, among other things, its operations and management, its securities, various transactions with lenders and creditors, and its chapter 11 case.  Appx. 2461.  As written, the Third-Party Release extinguishes third-party claims in any number of circumstances.  For example, it would terminate the claims of any equity holders' claims against former Mahwah officers or directors for securities fraud.  This is the basis for the Securities Plaintiffs'

objection.  Appx. 2224-46.  Yet, the release is also broad enough to encompass claims for, as just some of many examples:

- a hostile work environment by a former Mahwah employee against another Mahwah employee;

- negligence by a Mahwah employee against a consultant hired by Mahwah to counsel employees on retirement plans;

- slander by a former employee of Mahwah's term lenders against a current employee of the lender, for remarks that the former employee mishandled the lender's deal with Mahwah;

- breach of contract by an accountant of one of Mahwah's loan agents against the agent for failure to pay for work the accountant did on the agent's transaction with Mahwah; or

- malpractice by an affiliate of Mahwah against its law firm for the firm's simultaneous representation of both it and Mahwah when their interests diverged.[12]

---

[12]  The last scenario occurred in *Monarch Life Ins. v. Ropes & Gray*, 65 F.3d 973 (1st Cir. 1995), where the First Circuit held a chapter 11 plan's third-party release barred a claim by the debtor's affiliate against a law firm related to its conflict of interest in representing both the affiliate and the debtor.  While declining to express a view on the propriety of the release, the court held that federal preclusion principles protected it from collateral attack.  *Id.* at 983-984.

33

The Third-Party Release injures many parties who were provided no notice and thus could not consent.  Thus, even under the bankruptcy court's faulty notion that parties had consented by failing to object after notice, the Third-Party Release was not consensual.

### 2. Failure to opt out of a provision releasing non-debtors' claims against other non-debtors is not consent

The bankruptcy court further reversibly erred in deeming the mere failure to return a ballot or "opt out" as consent.  Appx. 2866-67.  It based its authority to issue the Third-Party Release on the incorrect notion that the release was a contract.  Appx. 2866.  Yet, it premised its authority to issue negative notice to determine consent to the Third-Party Release on its authority to issue notices that would require affirmative action under the Bankruptcy Code and Bankruptcy Rules.[13]  Appx. 2891-93.  These positions are inherently inconsistent.

Even under basic contractual principles, "[a]bsent a duty to speak, silence does not constitute consent." *In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y 2017).  "An offeror has no power to transform an offeree's silence into acceptance

---

[13]  Contrary to the bankruptcy court's implication, affirmative action is not required to preserve a party's rights in all bankruptcy contexts.  For example, under 11 U.S.C. § 363(f)(2), estate property may be sold free and clear of interests in the property *if* the interest-holder consents.  Bankruptcy courts in this district have held that the interest-holder's failure to object does not constitute consent to such a sale because consent and failure to object "are not synonymous." *See In re DeCelis*, 349 B.R. 465, 467 (Bankr. E.D. Va. 2006); *In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 534-35 (Bankr. E.D. Va. 2004).

when the offeree does not intend to accept the offer[.]" *Id.* (quoting *Karlin v. Avis*, 457 F.2d 57, 62 (2d Cir. 1972)).  For example, an "offeror cannot ordinarily force the other party into a contract by saying, 'If I do not hear from you by next Tuesday, I shall assume you accept.'" *Id.* at 458-59 (*quoting* John D. Calamari & Joseph M. Perillo, THE LAW OF CONTRACTS § 2–18, at 83 (3d ed. 1987)); *see also Bronner v. Park Place Entm't Corp.*, 137 F.Supp.2d 306, 312 (S.D.N.Y. 2001) ("[A]bsent a duty to speak, a party's silence cannot be translated into an acceptance of an offer to contract."); *see also United States v. Hanover Ins. Co.*, No. 2:15-cv-127, 2015 WL 9665679 at *4 (E.D. Va. Dec. 8, 2015) (refusing to find a party agreed to the terms of a settlement agreement by merely remaining silent), *see also Takeout Taxi*, 307 B.R. at 534 ("In contract law, acceptance of an offer is normally not inferred from silence because there is normally no obligation to accept or even respond to an offer.")

As the bankruptcy court observed, "[a] chapter 11 bankruptcy case is predicated upon a debtor's ability to corral many affected parties with disparate claims and interests into a single forum to complete a universal settlement of claims and interests." Appx. 2893.  But the claims and interests that the bankruptcy process is designed to resolve are those against the debtor, who chose to seek bankruptcy relief and abided by the strictures thereunder.  *See In re Western Real Estate Fund Inc.*, 922 F.2d at 600.  Outside the limited arena of asbestos cases, the bankruptcy process was not designed to resolve claims against non-debtors, nor does the Bankruptcy Code authorize the discharge of such claims.  If bankruptcy courts choose to discharge

35

claims against non-debtors on an allegedly contractual basis, then they must abide by the actual principles of contract law, requiring affirmative mutual assent, before they issue that release.

For this reason, while bankruptcy courts have admittedly split on this issue, of the courts that permit the release of non-debtor claims against other non-debtors on an allegedly consensual basis, the correct legal approach has been to require affirmative assent to the release. *In re Emerge Energy Services LP*, 2019 WL 7634308, at *23 (Bankr. D. Del. Dec. 5, 2019); *SunEdison*, 576 B.R. at 460-61; *In re Chassix Holdings, Inc.*, 533 B.R. 64, 80-81 (Bankr. S.D.N.Y. 2015); *In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011); Rosa Sierra, *Warning: Artificial Consent to Third-Party Releases Will Not Result in Plan Confirmation*, Am. Bankr. Inst. J., July 2018, at 28 (discussing recent caselaw rejecting attempts to manufacture acceptance to non-debtor release).

There are myriad reasons why an affected party might not object to a third-party release. It is possible they simply did not receive or understand the notice (buried in boilerplate); even a quick scan of the plan and disclosure statement at issue here demonstrates how difficult it is to uncover and understand the provisions. Further, creditors with small claims in a bankruptcy case have little incentive to expend the time and resources to participate.[14] Proposed recoveries that are

---

[14] Mahwah's original plan proposed that unsecured creditors, whose claims totaled $7-8 hundred million, would share in a pot of only $500,000. Appx. 0332, art. III.B.5;

"relatively small" could easily prompt a "higher-than-usual degree of inattentiveness or inaction among affected creditors." *Chassix*, 533 B.R. at 80.

A creditor who fails to review, or hire an attorney to review, complex bankruptcy pleadings may be acting under the wholly reasonable belief that it risks only the amount of its claim against the debtor. Such a creditor has no reason to expect that by choosing not to participate in the case he or she risks waiving rights against non-debtors. *Chassix*, 533 B.R. at 80-81. "Charging all inactive creditors with full knowledge of the scope and implications of the proposed third party releases, and implying a 'consent' to the third party releases based on the creditors' inaction, is simply not realistic or fair, and would stretch the meaning of 'consent' beyond the breaking point." *SunEdison*, 576 B.R. at 461 (quoting *Chassix*, 533 B.R. at 81). The bankruptcy court committed legal error in holding otherwise.

### C. The bankruptcy court clearly erred in finding the Third-Party Release satisfied the *Behrmann* factors.

As an alternative ground in confirming Mahwah's plan, the bankruptcy court summarily found in a footnote that the Third-Party Release satisfied the *Behrmann* factors for the reasons stated by Mahwah. Appx. 2874 n. 28. This finding was clearly erroneous.

---

Appx. 1756. That is less than a 0.071-0.081% recovery. A creditor with a $1,000 claim against Mahwah would have recovered 71-81 cents.

The proponent of a chapter 11 plan has the burden of proving its entitlement to confirmation. *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 653 (9th Cir. 1997) (plan proponent carries evidentiary burden to show statutory prerequisites for plan confirmation are met); *see also In re Mohammad*, 596 B.R. 34, 39 (Bankr. E.D. Va. 2019); 7 Richard Levin, Henry J. Sommer, Collier on Bankruptcy, ¶ 1129.02 (16th ed. 2021). Mahwah had the burden of proof to show that the *Behrmann* factors were met. It did not meet that burden.

1. **Whether a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate**

Mahwah's representative believed that Mahwah retained indemnity obligation to only "certain" of the Released Parties—*i.e*, not nearly the wide universe of Released Parties. Appx. 2332. She further testified, as to Mahwah's indemnification obligations to officers and directors, that it had over $50 million in insurance coverage for any such indemnification claims. Appx. 2701-04, 2719. And, as the Fourth Circuit noted, indemnification obligations alone cannot suffice to warrant a third-party release; otherwise, such releases "would be the norm, not the exception, in Chapter 11 cases." *Nat'l Heritage*, 760 F.3d at 351. This factor does not weigh heavily in Mahwah's favor.

2. **Whether there was a substantial contribution of assets by the Released Party**

The Fourth Circuit has previously affirmed a bankruptcy court's holding that this factor requires that the released party makes a "financial contribution" to the

reorganization; "sweat equity" is not sufficient.  *Nat'l Heritage*, 478 B.R. at 229; *Nat'l Heritage*, 760 F.3d at 348.  This is particularly true of officers and directors who simply performed their duties because they were paid to do so or had a fiduciary obligation to do so.  *Nat'l Heritage*, 760 F.3d at 348.

Mahwah provided no evidence that any of the Released Parties made any financial contribution to the case.  Instead, it made similar arguments to those rejected in *Nat'l Heritage*, that the Released Parties "expended significant time and resources." Appx. 2332.  Further, Mahwah's representative conceded that the "contribution" of its employees, officers, and directors was all within the scope of their duties and responsibilities.  Appx. 2716.  As the Fourth Circuit previously held, this is insufficient.  "[T]hird-party releases are not a merit badge that somebody gets in return for making a positive contribution to a restructuring.  They are not a participation trophy, and they are not a gold star for doing a good job." *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 726 (Bankr. S.D.N.Y. 2019).

Further, the financial contribution required to fulfill this factor is one to a "reorganization." *Nat'l Heritage*, 760 F.3d at 348.  Mahwah is not reorganizing; it is liquidating.  Thus, even if the Released Parties had made the type of large financial contribution *Nat'l Heritage* contemplated, this factor would still not be fulfilled.  *In re SL Liquidating, Inc.*, 428 B.R. 799, 803 (Bankr. S.D. Ohio 2010) (finding the reference to "reorganization" in factor 2 is intentional, and finding "a reorganizing debtor, as opposed to a liquidating debtor, needs to be protected from suits that may deplete its

39

assets so that it can, in fact, reorganize" and "[t]o hold otherwise may be to encourage the filing of liquidating chapter 11 cases where the driving purpose is to obtain non-consensual third-party releases").

### 3.    Whether non-debtor release is "essential" to the reorganization

Again, this case is a liquidation so Mahwah cannot fulfil this factor.  *Id.*[15]  No release was required for reorganization because Mahwah did not reorganize.

Further, Mahwah provided no evidence that its plan hinges on the Released Parties being free from suits of other parties.  Mahwah provided no testimony of a single Released Party who claimed they would have acted any differently if the plan did not include the Third-Party Releases.  Instead, its representative declared with no evidence that the release was the "quid pro quo" of the Released Parties' concessions, Appx. 2332.  The representative further declined to state that the plan would fail if the court decided not to permit the release of two of the Released Parties.  Appx. 2708.

The bankruptcy court summarily declared that the Third-Party Release and Exculpation Clause were "part of the holistic structure" of the plan, an "integral part of the parties' negotiations," and "served to avoid entanglement of the estates in

---

[15]  *See also In re Midway Gold US., Inc.*, 575 B.R. 475, 503 (Bankr. D. Colo. 2017) ("[T]he justification for granting [third-party] releases in a liquidation is far less compelling than in a reorganization."); *In re City Homes III, LLC*, 564 B.R. 827, 870-71 (Bankr. D. Md. 2017) (recognizing that the need for third-party releases, if any, does not apply in liquidations); *In re Berwick Black Cattle Co.*, 394 B.R. 448, 461 (Bankr. C.D. Ill. 2008) ("The rationale for granting third-party releases is far less compelling, if it exists at all, in a liquidation than in a reorganization.")

expensive and protracted post-confirmation litigation." Appx. 2842, 2844. But the Fourth Circuit rejected such summary findings as insufficient to support the inclusion of non-debtor releases. *Behrmann*, 663 F.3d at 712-13 (holding inadequate bankruptcy court's findings that release provisions were "essential" to reorganization). As the Fourth Circuit explained, such summary findings are "meaningless in the absence of specific factual findings explaining why this is so. *Id.*

### 4.   Whether the affected class consented

For the reasons discussed in section B.1 *supra*, the majority of affected parties were not provided notice or an opportunity to object to the release provision. And, for the reasons discussed in B.2 *supra*, even those who were provided with notice should not have their failure to affirmatively act deemed "consent" to the termination of their litigation rights.

### 5.   Whether there was full payment to the affected class

Mahwah's response to this factor is that the plan "provides for the payment in full of all Allowed Administrative Claims and a meaningful recovery to most of the Debtor's creditors." Appx. 2395. But the payment of administrative claims is irrelevant; this is a requirement for confirmation of any chapter 11 plan. 11 U.S.C. § 1129(a)(9). And a "meaningful recovery" is not the equivalent of full or substantially full payment of claims. Nor did Mahwah make any attempt to justify the zero recovery for shareholders, whose rights against non-debtors for claims related to

Mahwah were terminated under the plan.  Appx. 2395, 2461.  The record reflects there was no full payment to the affected classes.

> 6.  **Whether there was opportunity for those who chose not to settle to recover in full**

The plan provides no mechanism to pay many of the claims being non-consensually released.  Mahwah made no attempt to meet its burden on this factor. Appx. 2395-96.  None of the shareholders upon whom the releases are being foisted are recovering anything.  Similarly, if one of Mahwah's former employees has a claim against one of Mahwah's former consultants, that claim is barred by the Third-Party Release and is simply extinguished, with no other means of recovery.

> 7.  **Whether the bankruptcy court made a record of specific factual findings that support its conclusions**

The bankruptcy court made no "specific factual findings" that support its conclusion that the *Behrmann* facts were satisfied.  Appx. 2874 n. 28.  Reliance on Mahwah's argument, which itself failed to address all the factors, was insufficient to meet this factor.

For these reasons, Mahwah failed to meet its burden on the *Behrmann* factors, and the bankruptcy court clearly erred in finding the burden was met.

> D.  **The bankruptcy court reversibly erred in approving the Exculpation Clause**

The bankruptcy court erred as a matter of law in approving the Exculpation Clause without applying the *Behrmann* factors.  It further abused its discretion in

approving a clause that released claims against an overly broad set of parties and that failed to include an exception for claims to proceed with the court's approval.

> **1.   The bankruptcy court erred as a matter of law in failing to apply the *Behrmann* factors to the Exculpation Clause**

In *Behrmann*, the Fourth Circuit set forth the applicable standard for *both* third-party releases and exculpation provisions.  It defined the term "Release Provisions" to include the plan's various "release, injunction and exculpation provisions." *Behrmann*, 663 F.3d at 707.  It then held that the factors it set forth were the applicable test for considering all of the "Release Provisions" before remanding to determine whether the debtor's "circumstances entitle it to the benefit of the Release Provisions." *Id.* at 712-13.  Thus, the *Behrmann* factors apply to both third-party releases and exculpation clauses.

Further, while it maintains a separate title from the Third-Party Release, the Exculpation Clause in Mahwah's plan also dictates a release of non-debtors' state and federal-law claims against non-debtors.  It releases the Exculpated Parties from liability for any acts of negligence related to their conduct in the case. Appx. 2461-62. It also releases the Exculpated Parties from liability for "violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan," with no exception for grossly negligent, or even intentional, conduct. *Id.*  Thus, even if, as further discussed below, the Fourth Circuit were to permit exculpation in bankruptcy cases, the Exculpation

43

Clause goes beyond simply "'rais[ing] the standard of liability for fiduciaries for their conduct during the bankruptcy case,'" as the bankruptcy court claimed.  Appx. 2874 (quoting *In re: Health Diagnostic Lab'y, Inc.*, 551 B.R. 218, 232 (Bankr. E.D. Va. 2016)).

The bankruptcy court thus erred as a matter of law in failing to apply the *Berhmann* factors.  Rather than attempting to make specific findings supporting why the circumstances entitled Mahwah to the Exculpation Clause, *Berhmann*, 663 F.3d at 713, the bankruptcy court simply held that (a) it "has approved them in a number of chapter 11 cases," and (b) the clause is "narrowly tailored and appropriate."  Appx. 2874.  These findings do not satisfy the standard mandated by *Berhmann*.  Nor, for the reasons set forth in C, *supra*, could that standard be satisfied here.

### 2. The Exculpation Clause is impermissibly broad and fails to permit claims to proceed with court approval

No provision in the Bankruptcy Code or otherwise authorizes a court to immunize parties for acts of negligence within a bankruptcy case, nor has the Fourth Circuit yet addressed the propriety of exculpation clauses in chapter 11 plans. Nevertheless, some courts have permitted plan provisions releasing claims again certain estate fiduciaries or key actors related to their actions in the bankruptcy case, other than for willful misconduct or gross negligence.  *See, e.g., Blixseth*, 961 F.3d at 1084-85; *Pac. Lumber*, 584 F.3d at 253; *PWS Holding Corp.*, 228 F.3d at 245; *Nat'l Heritage*, 478 B.R. at 224.

44

Even if the Fourth Circuit were to permit exculpation, the government submits that it should permit it sparingly, in accordance with its exhortation that non-debtor releases "should be granted cautiously and infrequently." *Behrmann*, 663 F.3d at 712. Here, the bankruptcy court abused its discretion in approving the Exculpation Clause in light of its overbreadth and failure to include exceptions for claims with court approval.

The Third Circuit, the first circuit court to address exculpations, held that a plan could exculpate a statutory creditors' committee and estate professionals for their actions in the bankruptcy case except for willful misconduct or gross negligence. *PWS*, 228 F.3d at 246. The Third Circuit reasoned that such a provision merely stated the standard to which such estate fiduciaries were held in a chapter 11 case. *Id.* That logic does not prevail for exculpated parties who are not estate fiduciaries. *In re Washington Mut., Inc.*, 442 B.R. 314, 350 (Bankr. D. Del. 2011); *see also Pac. Lumber*, 584 F.3d at 253 (striking exculpation provision as to parties other than creditors' committee and its members); *but see Blixseth*, 961 F.3d at 1084-85 (affirming exculpation of debtor's largest creditor). The government respectfully disagrees with the extension of exculpated parties permitted by the *Blixseth* court. If exculpations are permitted, they should not extend further than estate fiduciaries. Doing otherwise removes any limiting principle to the otherwise statutorily unauthorized termination of non-debtor rights as to other non-debtors.

Here, the Exculpation Clause is not limited to estate fiduciaries.  Indeed, it is not even limited to parties who have performed "necessary and valuable duties" in connection with the case, the prior standard set by the bankruptcy court.[16]  *Nat'l Heritage*, 478 B.R. at 234.  Like the definition of "Released Parties," the term "Exculpated Parties" includes all current and former employees, attorneys, accountants, managers, financial advisors, and consultants of every party being exculpated.  Appx. 2422, ¶ 71.  The range of parties is so broad that it extends to parties who performed no duties essential, necessary, or at all related to the cases.

At a minimum, the Exculpation Clause should not limit the liability of attorneys to their clients; attorneys are under ethical obligations and should remain subject to their professional conduct standards.[17]  *See*, *e.g.*, George Kuney, *Unethical Protection?  Model Rule 1.8(H) and Plan Releases of Professional Liability*, 83 Am. Bankr. L.J. 481 (Summer 2009) (noting conflict between plan release practice and ethical rules).

The bankruptcy court further abused its discretion in failing to comply with its prior caselaw in requiring a "gatekeeper function" by which the court may, "in its discretion, permit an action to go forward against the exculpated parties."  *National*

---

[16]  Nor is it even limited to the most important non-debtor party in the case, as in *Blixseth*, 961 F.3d at 1084.

[17]  Attempts by bankruptcy professionals to seek indemnification and exculpation in bankruptcy increased "in the wake of claims asserted against an accounting firm . . . and the $185 million settlement of those claims" within a bankruptcy case.  Kurt F. Gwynne, *Indemnification and Exculpation of Professional Persons in Bankruptcy Cases*, 10 Am. Bankr. Inst. L. Rev. 711, 711 (2002).

*Heritage*, 478 B.R. at 234.  In *Nat'l Heritage*, on remand, the bankruptcy court stated the exculpation provision served a similar role to the *Barton* doctrine.  478 B.R. at 232 (citing *Barton v. Barbour*, 104 U.S. 126(1881)).  That doctrine provides that before an action can be brought against a bankruptcy trustee or other court-appointed estate officers for acts committed in their official capacity, the plaintiff must obtain leave of the court that appointed that trustee or officer.  *McDaniel v. Blust*, 668 F.3d 153, 156-57 (4th Cir. 2012); *Gordon v. Nick*, No. 96-1858, 1998 WL 559734 at *2 (4th Cir. Sept. 2, 1998).

By analogy to the *Barton* doctrine, the *Nat'l Heritage* court found the plan's gatekeeper function an important element in approving the exculpation clause therein. *Nat'l Heritage*, 478 B.R. at 232-33, 234.  The Exculpation Clause here provides no such gatekeeper provision.  Instead, it releases an overly wide range of parties from liability for negligence in the bankruptcy case, with no ability for the bankruptcy court to assess the claim's propriety or let it proceed.  Removing this requirement untethers the exculpation clause from its presumed underpinnings in the *Barton* doctrine.

## II.   The Bankruptcy Court Abused Its Discretion in How It Conducted the Disclosure Statement and Confirmation Approval Process

As recited in Statement of the Facts sections C and D, *supra*, the bankruptcy court declined to resolve the objections to the Third-Party Release and Exculpation Clause at the disclosure statement stage.  Appx. 0942.  The court instead permitted the plan to proceed to a vote with the challenged Third-Party Release and

Exculpation Clause, having announced that it could address the parties' objections at the confirmation stage.   Appx. 0928, 0938-40, 0942.

Yet, at the confirmation stage, the bankruptcy court claimed it could not "redline" the Third-Party Release and Exculpation Clause out of the plan, which had already been voted upon with the provisions included.  Appx. 2742.  By setting the stage and claiming its hands were thereby tied, the bankruptcy court abused its discretion in two ways.

First, the bankruptcy court's failure to exercise its discretion in approving agreements reached by the most powerful parties in the bankruptcy case, at the expense of the least powerful, is itself an abuse of discretion.

And second, the bankruptcy court abused its discretion in setting up a procedure to discourage timely and orderly appeals of its orders to an Article III judge.

### A.    The bankruptcy court abused its discretion by not exercising discretion

The release of non-debtors' claims against other non-debtors is an extraordinary relief approved by the Fourth Circuit to be used "cautiously and infrequently." *Behrmann*, 663 F.3d at 712.  Yet, the bankruptcy court approved the request made by the debtors and their secured lenders for that extraordinary relief—not for the first time[18]—claiming that it would not "second-guess" the decisions of

---

[18]  *See* Appx. 2867 n. 22.

those constituents.  Appx. 2871.  This was an abuse of discretion.  *See James*, 6 F.3d at

239 (a court abuses its discretion when it fails or refuses "actually to exercise its

discretion").

Bankruptcy is a carefully calibrated set of checks and balances designed to

protect the rights of both debtors and creditors.  The bankruptcy court has an

independent role in enforcing those checks and balances.  *See Espinosa*, 559 U.S. at 277

(holding bankruptcy judges have an obligation to direct debtors to conform plans to

the requirement of the law).  Failure to properly exercise that check risks

gamesmanship and collusion among the parties.  *See In re Millennium Lab Holdings II,*

*LLC.*, 945 F.3d 126, 139 (3d Cir. 2019) (acknowledging argument that bankruptcy

courts' approval of releases "simply because reorganization financers demand them"

may "lead to gamesmanship"); *cf. Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 986-

987 (2017) (recognizing that "rare case" exception risks becoming "a more general

rule" in practice, and may lead to "collusion" in which insiders may "use the

reorganization process to gain an unfair advantage").  Here, the affected parties lost

significant rights as a result.

### B.  The bankruptcy court abused its discretion in failing to resolve the objections at the disclosure statement stage

As is clear from Mahwah's response to the government's motion for stay

pending appeal, it intends to rely upon the doctrine of equitable mootness to seek

dismissal of this appeal.  (Doc. 27 at 15.)  For the reasons set forth in the

government's reply to the motion (Doc. 28), and as will be further explained in its reply brief, this appeal should not be dismissed on those grounds.  But the impending dismissal attempt highlights the procedural abuse attendant in the bankruptcy court's decision to delay resolution of the objections.  *See* Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks and Balances,* Texas Law Review, Vol. 100, 2021, *available at* SSRN: https://ssrn.com/abstract=3851339 or http://dx.doi.org/10.2139/ssrn.3851339 (discussing how aggressive restructuring, equitable mootness, and judge-shopping have contributed to the breakdown of fairness in the bankruptcy system).

The court confirmed Mahwah's plan on February 25, 2021, which went effective on March 5, 2021.  Appx. 2530-2672.  By contrast, the bankruptcy court approved the disclosure statement on September 11, 2020.  Appx. 0980-1582.  Had the court resolved the objections at the disclosure statement stage, one of the objecting parties would have been able to seek interlocutory appeal, *see* 28 U.S.C § 158(a)(3), even directly to the Fourth Circuit, 28 U.S.C. § 158(d)(2), and avoided a non-merits challenge on equitable mootness grounds.  *See Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 192 (3d Cir. 2001) (equitable mootness doctrine can easily be used as a weapon to prevent any appellate review of bankruptcy court orders confirming reorganization plans).

This was not the first time,[19] nor the last time,[20] that the bankruptcy court declined to resolve objections to third-party releases at the disclosure statement stage, only to confirm the plan over objections.  The court's failure to issue its ruling at the disclosure statement stage was an abuse of discretion.

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to (1) deem the Third-Party Release and Exculpation Clause to be unenforceable, or (2) in the alternative, to deem all Releasing Parties to have opted-out of the Third-Party Release and Exculpation Clause, or (3) award any other relief that this Court deems justice requires.

---

[19]  *See, e.g.*, *In re Pier 1 Imports, Inc.*, Case No. 20-30805 (Bankr. E.D. Va.), Doc. 797 at 15; *In re Gemstone Solutions Group Inc.*, Case No. 19-30258, (Bankr. E.D. Va.), Doc. 1424 at 65.

[20]  *In re Alpha Media Holdings*, Case No. 21-30209 (Bankr. E.D. Va.), Doc. 295 at 163.

Respectfully submitted,

June 28, 2021

JOHN P. FITZGERALD, III,
ACTING UNITED STATES
TRUSTEE FOR REGION FOUR

By: /s/*Kathryn R. Montgomery*
Kathryn R. Montgomery (VA Bar No.
42380)
Assistant United States Trustee
United States Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
(804) 771-2310
Fax: (804) 771-2330


RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
SUMI SAKATA
Trial Attorney

Department of Justice
Executive Office for
United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel: (202) 307-1399
Fax: (202) 307-2397
sumi.sakata@usdoj.gov

JOHN P. FITZGERALD, III
Acting United States Trustee for Region 4
KATHRYN R. MONTGOMERY
Assistant United States Trustee
HUGH M. BERNSTEIN
Trial Attorney

Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Tel: (804) 771-2310

Kathryn.Montgomery@usdoj.gov
hugh.m.bernstein@usdoj.gov

## <u>CERTIFICATE OF COMPLIANCE WITH</u>
## <u>FED. R. BANKR. P. 8015(a)(7)</u>

1.      This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 12,552 words.

2.      This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 Word in 14-point Garamond font.

<u>/s/ *Kathryn R. Montgomery*</u>
Kathryn R. Montgomery

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY, that on this 28th day of June 2021, a copy of the foregoing brief was filed electronically in the United States District Court for the Eastern District of Virginia and that according to the Court's CM/ECF system, all parties entitled to service will receive service electronically.


/s/ *Kathryn R. Montgomery*
Kathryn R. Montgomery