Nos. 3:21-cv-167-DJN (Lead Case), 3:21-cv-166 & 3:21-CV-00205 (Consolidated)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

In re RETAIL GROUP INC., *et al.*, Debtors.

JOEL PATTERSON, *et al.* & JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4, Appellants,
v.
MAHWAH BERGEN RETAIL GROUP, INC., Appellee.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**REPLY BRIEF OF APPELLANT JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4**

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
SUMI SAKATA
Trial Attorney

Department of Justice
Executive Office for United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel: (202) 307-1399
sumi.sakata@usdoj.gov

JOHN P. FITZGERALD, III
Acting United States Trustee for Region 4
KATHRYN R. MONTGOMERY
Assistant United States Trustee
HUGH M. BERNSTEIN
Trial Attorney

Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Tel: (804) 771-2310
Fax: (804) 771-2330
kathryn.montgomery@usdoj.gov
hugh.m.bernstein@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION................................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.   As a Preliminary Matter, Mahwah Liquidated Its Business Before Plan
     Confirmation. ............................................................................................ 2

II.  The Bankruptcy Court Reversibly Erred When It Approved the Non-Debtor
     Releases. ................................................................................................... 3

     A.   *Behrmann* applies to all non-debtor releases. ................................. 3

     B.   *Behrmann* applies here because the non-debtor release provisions were
          not consensual. ........................................................................... 6

     1.   Many of the Releasing Parties had no notice or opportunity to opt out .. 7

     2.   Failure to opt-out or object did not manifest any party's consent to the
          non-debtor releases. ..................................................................... 9

          a.   Mahwah may not rely on bankruptcy procedures to establish that
               inaction is consent to non-debtor releases. ............................. 9

          b.   Nor may Mahwah rely on class action procedures to establish that
               inaction is consent to non-debtor releases. ............................. 9

          c.   Consent may not be inferred from silence absent unusual
               circumstances, none of which exist here. ............................. 10

     C.   At a minimum, *Behrmann* applies to releases where consent is implied... 12

     D.   The Exculpation Clause is inappropriate under *Behrmann.* ...................... 13

III. Equitable Mootness Does Not Bar This Appeal. ................................................. 14

     A.   Equitable mootness interferes with bankruptcy appellate process, stunts
          jurisprudence, and distorts practice............................................................. 14

     B.   This appeal does not meet the conditions for equitable mootness under
          circuit precedent. ....................................................................................... 17

     1.   The government sought a stay. ................................................................. 18

     2.   While substantially consummated, the plan is not for reorganization and
          need not be undone by the appeal. ........................................................... 18

     3.   The appeal will not affect the success of the plan, which is for
          liquidation.............................................................................................. 19

     4.   The appeal will not unduly affect the interests of third parties............... 21

     C.   Even if it might otherwise render an appeal equitably moot, the doctrine
          does not bar this appeal............................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Aegean Marine Petroleum Network Inc.*,
  599 B.R. 717 (Bankr. S.D.N.Y. 2019) ........................................................... 4

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 10

*Baltimore Sun Co. v. Goetz*,
  886 F.2d 60 (4th Cir. 1989) ..................................................................... 25

*Bate Land Co. LP v. Bate Land & Timber LLC (In re Bate Land & Timber LLC)*,
  877 F.3d 188 (4th Cir. 2017) ................................................................ 18, 19

*Behrmann v. Nat'l Heritage Found.*,
  663 F.3d 704 (4th Cir. 2011) ............................................................*passim*

*Callaway v. Benton*,
  336 U.S. 132 (1949) ................................................................................. 4

*Cent. Virginia Cmty. Coll. v. Katz*,
  546 U.S. 356 (2006) ................................................................................. 1

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ............................................................................... 15

*In re Cont'l Airlines*,
  203 F.3d 203 (3d Cir. 2000) ..................................................................... 5

*FishDish, LLP v. VeroBlue Farms USA, Inc. (In re VeroBlue Farms USA, Inc.)*,
  6 F.4th 880 (8th Cir. 2021) ..................................................................... 16

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
  No. 2:16-BK-17463-ER, 2018 WL 1229989 (C.D. Cal. Jan. 19, 2018) .................... 25

*In re Gateway Radiology Consultants, P.A.*,
  983 F.3d 1239 (11th Cir. 2020) ................................................................. 23

*In re K&D Indus. Servs. Holding Co.*,
   2021 WL 949531 (E.D. Mich. Mar. 12, 2021) ............................................................. 25

*Karlin v. Avis*,
   457 F.2d 57 (2d Cir. 1972) ........................................................................................ 12

*Kingdomware Technologies, Inc. v. U.S.*,
   136 S.Ct. 1969 (2016) ............................................................................................... 25

*Mac Panel Co. v. Virginia Panel Corp.*,
   283 F.3d 622 (4th Cir. 2002) ............................................................................... 15, 18

*Nat'l Heritage Foundation, Inc. v. Highbourne Foundation*,
   760 F.3d 344 (4th Cir. 2014) .................................................................................... 13

*In re Neogenix Oncology, Inc.*,
   No. 12-23557-TC, 2015 WL 5786345 (Bankr. D. Md. 2015) .................................... 12

*OPM v. Richmond*,
   496 U.S. 414 (1990) ................................................................................................. 24

*Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*,
   816 F.3d 273 (4th Cir. 2016) ...................................................................................... 2

*R2 Invs., LDC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*,
   691 F.3d 476 (2d Cir. 2012) ................................................................................ 20, 21

*Railway Lab. Executives' Ass'n v. Gibbons*,
   455 U.S. 457 (1982) ................................................................................................... 5

*Stern v. Marshall*,
   564 U.S. 462 (2011) ................................................................................................. 14

*Thompson v. Kings Entertainment Co.*,
   674 F. Supp. 1194 (E.D. Va. 1987) ...................................................................... 11, 12

*U.S. v. Marine Shale Processors*,
   81 F.3d 1329 (5th Cir. 1996) .................................................................................... 24

*United States v. California*,
   332 U.S. 19 (1947) ................................................................................................... 24

*United States v. Pepperman*,
   976 F.2d 123 (3d Cir. 1992) ....................................................................................... 5

*Yee v. City of Escondido,*
  503 U.S. 519 (1992) ............................................................................ 8

**Statutes**

11 U.S.C. § 105(a) .......................................................................... 4, 5

11 U.S.C. §§ 301-303 ........................................................................... 9

11 U.S.C. § 305 ................................................................................. 14

11 U.S.C. § 363(m) ...................................................................... 14, 25

11 U.S.C. § 364 ................................................................................. 23

11 U.S.C. § 364(e) ............................................................................ 14

11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6) and (a)(19) .............................. 6

11 U.S.C. § 524 ................................................................................... 4

11 U.S.C. § 524(a) .......................................................................... 5, 6

11 U.S.C. § 524(e) .......................................................................... 5, 6

11 U.S.C. § 524(g) ...................................................................... 4, 5, 6

11 U.S.C. §§ 544, 545, 547, 548 and 549 ......................................... 21

11 U.S.C. § 547(c)(2) ....................................................................... 23

11 U.S.C. § 1101(2) .......................................................................... 15

11 U.S.C. § 1102(a)(1) ...................................................................... 23

11 U.S.C. § 1103(c) .......................................................................... 23

11 U.S.C. § 1107(a) .......................................................................... 22

11 U.S.C. § 1123(b)(6) ................................................................ 4, 5, 6

28 U.S.C. § 157(b)(1) ....................................................................... 14

28 U.S.C. § 158 ................................................................................. 14

28 U.S.C. §§ 158(a)-(d) .................................................................... 14

28 U.S.C. § 581(a)(4) .................................................................. 24

**Other Authorities**

4 Ann., ch. 17, § 7, 11 Statutes at Large 165 (D. Pickering ed. 1764) ............................ 1

Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks and Balances*, Texas Law Review, Vol. 100 (forthcoming 2021) ........................ 16, 17

Brief for Professors of Bankruptcy Law as Amici Curiae Supporting Petitioner, *Hargreaves v. Nuverra Environmental Solutions, Inc.*, No. 21-17 (U.S., filed Aug. 31, 2021) ............................................................... 16, 17, 20

7 COLLIER ON BANKRUPTCY ¶ 1100.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ........................................................................ 3

Fed. R. Bankr. P. 2002 ............................................................... 7

Fed. R. Civ. P. 55 ...................................................................... 9

Fed. R. Civ. P. 70(e) .................................................................. 9

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787 ............................ 24

Melissa B. Jacoby, *Corporate Bankruptcy Hybridity*, 166 U. Pa. L. Rev. 1715, 1734 (2018) ............................................................................ 17

Pet'n for a Writ of Certiorari, *United States v. GWI PCS 1, Inc.*, No. 00–1621, 2001 WL 34124814 (filed Apr. 2001) .............................................. 15

Restatement (Second) of Contracts § 69, cmt. a ............................................ 11

U.S. Const. art. I, § 8, cl. 4 ......................................................... 5

*Williston on Contracts* (4th ed. 2021) ............................................. 11, 12

# INTRODUCTION

The discharge of a bankruptcy debtor's pre-petition liabilities—wiping away debts incurred to others—is extraordinary relief authorized only by statute, and only when the debtor complies with that statute. *See Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 364 (2006) (noting that it was not until 1705 that the English Parliament adopted a law "providing that upon compliance with the statute, 'all and every person and persons so becoming bankrupt ... shall be discharged from all debts by him, her, or them due and owing at the time that he, she, or they did become bankrupt'") (quoting 4 Ann., ch. 17, § 7, 11 Statutes at Large 165 (D. Pickering ed. 1764)). Congress has specified through the Bankruptcy Code what procedures and requirements a debtor must undergo to receive bankruptcy relief.

Yet, below, Mahwah's directors and officers agreed with certain of Mahwah's lenders and creditors that they and other non-debtor parties would use Mahwah's bankruptcy case to relieve themselves of various liabilities, known or unknown, that they owed to other non-debtor parties. The bankruptcy court reversibly erred in approving the non-debtor releases in Mahwah's chapter 11 plan. Mahwah failed to satisfy the factors required by circuit precedent to allow a non-debtor release. Even if, as Mahwah incorrectly contends, those factors do not apply to a consensual non-debtor release, the release here was not consensual given the lack of proper notice or affirmative consent.

And Mahwah's argument that this Court should abstain from its duty to hear this appeal on the notion of "equitable mootness" should be rejected.  This legally dubious prudential doctrine, which the government does not accept, should not be used to shield an abuse of the bankruptcy system from proper appellate review by an Article III court.

## ARGUMENT

### I.  As a Preliminary Matter, Mahwah Liquidated Its Business Before Plan Confirmation.

Mahwah's arguments on appeal are primarily based on a false premise—that undoing the non-debtor releases in the plan would somehow jeopardize its reorganized retail operations, including "tens of thousands of jobs," "rent to landlords," or the ability of consumers to shop "their favorite brands."  *See* Appellee's Brief at 1.  This contention is incorrect.

As the United States Trustee previously explained, UST Brief at 10; UST Supp. Brief at 3, Mahwah sold its assets—its Catherine enterprise, its Justice enterprise, its Lane Bryant brand, and the "premium" brands comprising the Ann Taylor, LOFT, and Lou & Grey businesses—as going-concerns in three separate sales transactions; all were completed prior to confirmation of its plan.  App'x 2259-61, 2262-64, 2265-67, 2320 at ¶ 5.  The sales of Mahwah's assets were final orders that were not appealed, and as such cannot now be undone.  *See Providence Hall Assocs. Ltd. P'ship v.*

*Wells Fargo Bank, N.A.*, 816 F.3d 273, 280 (4th Cir. 2016) (holding sales orders are final orders on the merits due res judicata effect).

Mahwah's president admitted that the three transactions sold "substantially all" of Mahwah's assets, and the plan "provide[d] for the distribution of remaining estate cash" to Mahwah's creditors and equity holders. App'x at 2320-2321. While there is a reorganized debtor, that entity's purpose is generally for "winding down" its affairs, and it will automatically dissolve when the plan's administrator files a notice that all distributions were made, and its duties completed, under the plan. App'x at 2638, 2640; Plan at Art. IV, Sec. E & E.5. Thus, Mahwah ultimately liquidated its business.[1]

## II. The Bankruptcy Court Reversibly Erred When It Approved the Non-Debtor Releases.

### A. *Behrmann* applies to all non-debtor releases.

Although the Fourth Circuit has permitted bankruptcy courts to issue non-debtor releases,[2] it has cautioned that such releases "be granted cautiously and infrequently." *Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 712 (4th Cir. 2011). The lack of authority for bankruptcy courts to terminate non-debtors' property rights

---

[1] Contrary to Mahwah's implication, not all chapter 11 cases are reorganizations. (Appellee Br. at 6, 81.) "[C]hapter 11 of the Bankruptcy Code provides an opportunity for a debtor to reorganize its business or financial affairs or *engage in an orderly liquidation of its property* either as a going concern or otherwise." 7 COLLIER ON BANKRUPTCY ¶ 1100.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (emphasis added).

[2] The U.S. Trustee reserves the right to argue in an appropriate venue that Fourth Circuit precedent should be reconsidered given the statutory prohibitions against non-debtor discharges.

against other non-debtor parties mandates such caution.

"As a general rule, a bankruptcy court has no power to say what happens to property that belongs to a third party, even if that third party is a creditor or otherwise is a party in interest." *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 723 (Bankr. S.D.N.Y. 2019) (citing *Callaway v. Benton*, 336 U.S. 132, 136-41 (1949)) (noting the extraordinary nature of non-debtor releases). As explained in the United States Trustee's opening brief, with a sole exception limited to asbestos cases, no provision of the Bankruptcy Code authorizes bankruptcy courts to extinguish a non-debtor's liabilities to another non-debtor. UST Opening Brief at 4-7. And yet, non-debtor releases that terminate non-debtor parties' litigation rights against other non-debtors have been increasingly popular in chapter 11 cases. *See Aegean Marine*, 599 B.R. at 723 (noting that parties "frequently seek third-party releases" in cases before the court). At a minimum, this counsels against expansively construing or applying other exceptions.

Mahwah admits that the only statutory provisions relied upon by bankruptcy courts for authority to issue non-debtor releases are 11 U.S.C. §§ 105(a) and 1123(b)(6). Appellee's Brief at 41. But neither provision even mentions non-debtor releases, which are confined to section 524. And—unlike section 524(g)—neither constitutes authority to release non-debtors from liabilities incurred to other non-debtors. Section 105(a) authorizes courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

11 U.S.C. § 105(a). But "section 105(a) has a limited scope. It does not 'create substantive rights that would otherwise be unavailable under the Bankruptcy Code.'" *In re Cont'l Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) (quoting *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992)) (questioning use of section 105 as authority for non-debtor releases).[3]

And section 1123(b)(6) is an even weaker source of authority to issue third-party non-debtor releases outside 11 U.S.C. § 524(g). Section 1123(b)(6) provides only that a "plan may … include any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). But a non-debtor release *is* inconsistent with other provisions of the Bankruptcy Code, including: 11 U.S.C. § 524(a), which provides only for the discharge of the debtor; 11 U.S.C. § 524(e), which provides that the discharge of the debtor "does not affect the liability of any other entity on, or the property of any other entity for, such debt;" and 11 U.S.C. § 524(g), which defines the limited asbestos-related circumstances when

---

[3] Even if Congress had intended for section 105(a) to authorize bankruptcy courts to extinguish a non-debtor's direct claims against another non-debtor—and there is no indication that Congress so intended—such authorization would exceed the powers conferred by the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4. The Bankruptcy Clause provides that Congress shall have power to "establish … uniform Laws on the subject of Bankruptcies throughout the United States." *Id.* "Bankruptcy" is defined as the "subject of the relations between an insolvent or nonpaying or fraudulent debtor and his creditors, extending to his and their relief." *Railway Lab. Executives' Ass'n v. Gibbons*, 455 U.S. 457, 466 (1982) (citation omitted). The Bankruptcy Clause thus "contemplate[s] an adjustment of a failing debtor's obligations," *id.* (citation omitted), and not the adjustment of non-debtors' liability to the debtor's creditors.

releases are permitted.  Considering sections 524(a), (e), and (g), section 1123(b)(6)

cannot be read to permit courts to discharge or release the debts of non-debtors.

Indeed, the non-debtor release at issue here provides Mahwah's directors and

officers even greater relief than they could have received if they had filed for

bankruptcy themselves.  The Bankruptcy Code expressly prohibits an individual's

discharge of debts for fraud, breach of fiduciary duty, willful misconduct, and

securities law violations.  *See* 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6) and (a)(19).  Yet, the

non-debtor release provisions would terminate the right to bring claims of that nature

against them.  App'x 2659.

This is why bankruptcy courts must adhere to the multi-factor *Behrmann* test

even for allegedly consensual non-debtor releases.  The bankruptcy court reversibly

erred by failing to do so.  Mahwah's argument that the *Behrmann* factors are satisfied is

unavailing and continues its false narrative about the scope of the releases and the

nature of the plan.  For the reasons set forth in the government's opening brief, the

factors were not met.  UST Opening Brief at 37-42.  As this Court held in its order

denying a stay, the bankruptcy court did not in fact find the *Behrmann* factors were

satisfied.  ECF No. 33 at 11 n. 3.  This Court should decline Mahwah's invitation to

revisit that analysis.

    **B.**    ***Behrmann*** **applies here because the non-debtor release provisions were not consensual.**

Even if, as Mahwah contends, the bankruptcy court did not need to apply

*Behrmann* if a non-debtor release is consensual, the court still committed reversible error. This was not, in fact, a consensual release.

### 1. Many of the Releasing Parties had no notice or opportunity to opt out.

Mahwah describes a "Releasing Party" as "defined to include holders of claims impaired under the plan, as well as former and current [Mahwah] shareholders." Appellee's Br. at 13. This is misleading.

That description omits most of the Releasing Parties, which includes all of the (a) current and former officers and directors of Mahwah and certain creditors, (b) current and former employees of Mahwah and certain creditors, (c) current and former accountants of Mahwah and certain creditors, (d) current and former attorneys of Mahwah and certain creditors, (e) current and former consultants of Mahwah and certain creditors, and (f) current and former financial advisors of Mahwah and certain creditors. App'x 323-24, ¶¶ 107-109. In other words, non-debtor parties far beyond the circle of Mahwah's creditors and equity holders were deemed by the plan to have released claims against non-debtors.

Yet, as explained in the United States Trustee's supplemental brief, the record reflects service of the disclosure statement materials, including notice of the non-debtor release, only on the classes of claimants treated in Mahwah's plan, some former equity holders, and the core list of 65 notice recipients for Mahwah's case under Fed. R. Bankr. P. 2002. Supp. Brief at 6.

Mahwah does not contend that any of the other Releasing Parties had notice of the non-debtor release provisions or an opportunity to opt out. Rather, all Mahwah says in response is to assert that this argument is waived because it was not raised below. Appellee's Brief at 69-70.

Mahwah misapprehends the rules of preserving an issue on appeal. If an issue is "properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). The United States Trustee raised whether the non-debtor release provisions are consensual below and argued that they were not. App'x 2726. He was not required to make every argument supporting his position on that issue or identify every individual who he contends did not consent.[4] Mahwah's failure to provide notice to all parties whose property rights were extinguished means that not all parties "agreed" to the non-debtor releases.

---

[4] Mahwah also contends the failure to notify Releasing Parties is irrelevant because no one has complained. Appellee's Brief at 69. It is unclear how a party that did not receive notice would know to complain. And Mahwah's implication that the newspaper publication of the confirmation hearing somehow constituted sufficient notice is insupportable; that notice provided no inkling that the plan's non-debtor release would apply to any party outside of Mahwah's bankruptcy case. App'x 985-986, 1558-1561.

### 2. Failure to opt-out or object did not manifest any party's consent to the non-debtor releases.

#### a. Mahwah may not rely on bankruptcy procedures to establish that inaction is consent to non-debtor releases.

By operation of law, the filing of a petition for bankruptcy relief institutes a judicial process by which a bankruptcy case is commenced in bankruptcy court. 11 U.S.C. §§ 301-303. And actions taken within the context of a judicial case are not akin to contractual actions.

When a defendant fails to plead or otherwise defend against a plaintiff's claim filed in a civil action, default judgment may be entered against it. Fed. R. Civ. P. 55. Such default judgment does not constitute the contractual agreement of the defendant to comply with the relief requested. Rather, the judgment carries the weight of an order of a federal court, as to which the failure to comply may result in a finding of contempt. Fed. R. Civ. P. 70(e).

Mahwah claims that bankruptcy courts may extinguish non-debtors' litigation rights against other non-debtors because the parties had mutually contractually agreed to this. If so, then bankruptcy courts may not rely on their ability to issue negative notice under judicial process to establish contractual consent from a party's failure to object.

#### b. Nor may Mahwah rely on class action procedures to establish that inaction is consent to non-debtor releases.

Mahwah's attempt to analogize the non-debtor releases to class action

procedures fails at the outset.  Appellee's Brief at 45.  In the latter, members that fail

to opt out of a class action have claims litigated on their behalf, and they may receive

whatever proceeds are the result of that litigation.  In the former, non-debtors lose

their claims and any corresponding compensation forever if they fail to (1) be aware

of the release and (2) take affirmative action to opt out or object.  The two are not

equivalent.

Further, federal class actions may proceed only after a court certifies that the

class meets various procedural requirements, including:

> (1) numerosity (a "class [so large] that joinder of all members is
> impracticable"); (2) commonality ("questions of law or fact common to
> the class"); (3) typicality (named parties' claims or defenses "are typical ...
> of the class"); and (4) adequacy of representation (representatives "will
> fairly and adequately protect the interests of the class").

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting Fed. R. Civ. P. 23); *see*

*id.* at 621 (noting that these standards protect against the variability of equitable

justice).

In other words, the Federal Rules of Civil Procedure set objective procedural

protections before a class can be certified and potential members bound.  No such

protections exist in chapter 11 cases, nor did the bankruptcy court attempt to meet

such standards before releasing non-debtors' claims against other non-debtors.

### c.  Consent may not be inferred from silence absent unusual circumstances, none of which exist here.

Mahwah argues that a party's silence in the face of an offer is sufficient to infer

acceptance.  Appellee's Brief at 44.  But inferring consent from mere silence is contrary to basic contract law.  *Thompson v. Kings Entertainment Co.*, 674 F. Supp. 1194, 1199 (E.D. Va. 1987) ("Requiring an offeree to take affirmative steps to reject an offer, however, is inconsistent with general contract law.  In the absence of special relations between the parties or other circumstances, the offeree need make no reply to the offer and his silence and inaction cannot be construed as assent."); Restatement (Second) of Contracts § 69, cmt. a ("Acceptance by silence is exceptional.  Ordinarily an offeror does not have power to cause the silence of the offeree to operate as acceptance.")

To support its contrary position, Mahwah mischaracterizes the authorities to which it cites.  Mahwah cites *Williston on Contracts* for the proposition that "silence or inaction will operate to bind the offeree to a contract . . . when the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer." Appellee's Brief at 44 (citing *Williston on Contracts* § 6:50 (4th ed. 2021)).  This quote is taken out of context.

What *Williston* says is: "As a general rule, an offeree does not need to reply to an offer, and its silence and inaction *will not* be construed as an assent to an offer." *Williston*, § 6:50 (emphasis added).  "Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting." *Id.*  The treatise then describes four

exceptions to this rule, and it is the second of these four exceptions Mahwah quotes in its brief as if it were the actual rule. *Id.*; Appellee's Brief at 44.

These exceptions are "limited," and the exception Mahwah quotes especially so. *Williston*, §§ 6:50 *&* 6:53 (noting that "few courts have specifically recognized the principle"). The few cases applying that exception have required special circumstances such as a pre-existing contract between the parties, the offeree's retention of benefits from the offeror, or a situation where the silence equates to a misrepresentation. *See, e.g., Karlin v. Avis*, 457 F.2d 57, 61-62 (2d Cir. 1972); *Thompson*, 674 F. Supp. at 1199. None relied on the existence of a bankruptcy case of a debtor to extinguish non-debtor claims against other non-debtors.

C.    **At a minimum, *Behrmann* applies to releases where consent is implied.**

Even if implied consent were acceptable, the *Behrmann* factors would need to be applied. *In re Neogenix Oncology, Inc.*, No. 12-23557-TC, 2015 WL 5786345 at *5-*6 (Bankr. D. Md. 2015). Recognizing that an opt-out procedure is "insufficient affirmation of consent" to constitute express consent, the *Neogenix* court held that "it is a matter of semantics to say that a release is given by 'implied consent where the releasing party has the right to opt out but does not do so, as compared to saying a release is 'nonconsensual' under the very same facts." *Id.* Notably, Mahwah failed to address *Neogenix* at all.

## D.    The Exculpation Clause is inappropriate under *Behrmann*.

In *Behrmann*, the Fourth Circuit included the challenged plan's "exculpation provision" in the defined term "Release Provisions" that it reviewed on appeal. *Behrmann*, 663 F.3d at 706-07.  Thus, the Fourth Circuit's instruction to the bankruptcy court to apply the identified *Behrmann* factors on remand to determine whether to permit the Release Provisions applied equally to the exculpation provision. *Id.* at 712-13.  Contrary to Mahwah's implication, Appellee's Brief at 90, the exculpation clause in *Behrmann* was not before the Fourth Circuit after remand.  *Nat'l Heritage Foundation, Inc. v. Highbourne Foundation*, 760 F.3d 344, 346 n.2 (4th Cir. 2014). Thus, the Fourth Circuit never held the bankruptcy court's failure to apply the *Behrmann* factors to exculpation clauses was appropriate.

Further, Mahwah argues that exculpation clauses are appropriate to protect "skilled individuals who "assist in the reorganization efforts." Appellee's Br. at 87 (internal quotation marks and citation omitted).  But this ignores the actual scope of the exculpated parties, which here go far beyond those who played any role in any reorganization efforts, provides an end-run around attorneys' ethical obligations, and contains no gatekeeper function.  Thus, the Exculpation Clause fails even Mahwah's standard of "properly limited and not overly broad."  Appellee's Brief at 87.

## III. Equitable Mootness Does Not Bar This Appeal.

### A. Equitable mootness interferes with bankruptcy appellate process, stunts jurisprudence, and distorts practice.

Congress requires Article III courts' appellate review of final orders and judgments entered by non-Article III bankruptcy judges. *See* 28 U.S.C. §§ 158(a)-(d); *see also* 28 U.S.C. § 157(b)(1) (authorizing bankruptcy courts to "determine all cases under title 11 …subject to review under section 158" of title 28). Where Congress determined that a particular bankruptcy court order should *not* be subject to review by an appellate court, or that the effect of an appeal of a particular order should be limited, it did so explicitly by statute. *See* 11 U.S.C. §§ 305 (authorizing abstention and prohibiting appellate review), 363(m) (narrowing effect of appellate review for sale or lease of property taken in good faith); 364(e) (same for extension of credit in good faith).

Notably, there is no statutory exception for the confirmation of chapter 11 reorganization plans from the normal procedures for appellate review. The Bankruptcy Code does not contemplate that otherwise reversible errors of an Article I bankruptcy court might evade review by an Article III court because they occurred as part of an order approving a chapter 11 plan. *Cf. Stern v. Marshall*, 564 U.S. 462, 494 (2011) ("Congress may not vest in a non-Article III court the power to . . . issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review").

Notwithstanding the lack of any supporting statutory authority in either title 11 or title 28, courts have evolved a prudential doctrine by which an appeal of an order confirming a chapter 11 plan can be deemed "equitably moot" when the plan has been substantially consummated.[5] *See, e.g.*, *Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). This doctrine bears no relation to "the constitutional doctrine of mootness, which bars consideration of appeals because no Article III case or controversy remains …." *Mac Panel*, 283 F.3d at 625. The judge-made doctrine has not been endorsed by the Supreme Court and the U.S. Solicitor General questions its propriety. Pet'n for a Writ of Certiorari, *United States v. GWI PCS 1, Inc.*, No. 00–1621, 2001 WL 34124814, at *22 (Apr. 2001).

As explained by the United States Trustee in his reply brief in support of his motion to stay pending appeal, ECF No. 28 at 4, the Supreme Court has repeatedly emphasized the "virtually unflagging obligation … [of federal courts] to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Just recently, the Eighth Circuit discussed the incompatibility of the equitable mootness doctrine with a litigant's right to appellate review of bankruptcy

---

[5] For purposes of chapter 11 cases, "substantial consummation" means:
   (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
   (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
   (C) commencement of distribution under the plan.
11 U.S.C. § 1101(2).

court decisions on their merits, and severely limited the doctrine's reach. *FishDish, LLP v. VeroBlue Farms USA, Inc. (In re VeroBlue Farms USA, Inc.)*, 6 F.4th 880, 888-891 (8th Cir. 2021). This reflects the growing trend recognizing the equitable mootness doctrine interferes both with Congress's design for the bankruptcy system and the duty of federal courts to fully exercise their jurisdiction.

And a group of 28 bankruptcy law professors recently commented that the increased application of equitable mootness has strangled the development of law. Brief for Professors of Bankruptcy Law as Amici Curiae Supporting Petitioner, *Hargreaves v. Nuverra Environmental Solutions, Inc.*, No. 21-17 (U.S., filed Aug. 31, 2021), ("Amicus Brief") at * 7-12.[6] The lack of appellate review results in fewer judicial precedents, often in the most complex areas of chapter 11 jurisprudence. *Id.* at 9. And the paucity of bankruptcy law precedent contributes to unpredictable outcomes. *Id.* at 7.

The doctrine disturbs general bankruptcy practice in other ways. It encourages forum shopping. *Id.* at 12; *see also* Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks and Balances*, Texas Law Review, Vol. 100, (forthcoming 2021), *available at* SSRN: https://ssrn.com/abstract=3851339, at 60 & 63 (characterizing

---

[6] The petition for certiorari in *Hargreaves* is currently pending before the Supreme Court. The Eighth Circuit has predicted that as equitable mootness "becomes the rule of appellate bankruptcy jurisprudence, rather than an exception," the Supreme Court "will step in and severely curtail—perhaps even abolish—its use, just as the Court curtailed lower courts' excessive use of the 'Rooker-Feldman doctrine' to avoid difficult claim and issue preclusion analysis …." *In re VeroBlue Farms*, 6 F.4th at 891.

Richmond, Virginia as a "judge-picking district" and calculating that Delaware, Houston, Southern District of New York, and Richmond combined had 91% of all big case filings in 2020). And it invites sharp practices, such as including objectionable terms in a chapter 11 plan and then "'rush[ing] to consummate a restructuring plan to insulate the deal from further judicial scrutiny.'" Amicus Brief at 14 (quoting Melissa B. Jacoby, *Corporate Bankruptcy Hybridity*, 166 U. Pa. L. Rev. 1715, 1734 (2018)); Levitin, *Purdue's Poison Pill* at 52 (noting debtors have "weaponized" equitable mootness).

Notably, Mahwah's plan went effective 8 days after the bankruptcy court confirmed it and 4 days before the court issued a memorandum opinion as to why it confirmed the plan. *See Bankruptcy Docket*, ECF Nos. 1811, 1845, 1855. The United States Trustee maintains the bankruptcy court's decision to defer whether to permit the non-debtor releases until the confirmation hearing, when the court determined it was too late to change, was an abuse of discretion. UST Opening Brief at 47-51. Mahwah's arguments to the contrary ignore both the record and common sense. Appellee's Brief at 94-96.

**B.     This appeal does not meet the conditions for equitable mootness under circuit precedent.**

The Fourth Circuit has identified the following as relevant factors to consider in applying equitable mootness:

(1) whether the appellant sought and obtained a stay;

(2) whether the reorganization plan or other equitable relief ordered has been substantially consummated;

(3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and

(4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Behrmann*, 663 F.3d at 713 (citation omitted). As in the Eighth Circuit, it requires equitable mootness decisions to be determined by "the totality of [the case's] circumstances." *Mac Panel*, 283 F.3d at 625. The satisfaction of one factor alone need not render an appeal equitably moot. *See, e.g., Behrmann*, 663 F.3d at 713 (finding balance of factors did not support dismissal even though plan had been substantially consummated). The factors do not favor a finding of equitable mootness here.

### 1.     The government sought a stay.

The government sought a stay both from the bankruptcy court and this Court. Bankr. ECF No. 1962 & ECF No. 18. That the stay was ultimately not issued is not fatal to the appeal of a confirmation order. *Bate Land Co. LP v. Bate Land & Timber LLC (In re Bate Land & Timber LLC)*, 877 F.3d 188, 196 (4th Cir. 2017); *see also Behrmann*, 663 F.3d at 713.

### 2.     While substantially consummated, the plan is not for reorganization and need not be undone by the appeal.

Although Mahwah's chapter 11 plan has been substantially consummated, for

the reasons noted in Argument I, *supra*, Mahwah liquidated its business prior to confirmation. Further, the government does not seek to undo the portions of the plan that have been consummated, including the distributions to Mahwah's creditors. He seeks only to ensure that lawsuits asserting state or federal law claims by and against non-debtor parties are not enjoined under the plan. Consequently, "it would not be impractical, imprudent, or inequitable to allow the appeal to proceed." *Bate Land & Timber LLC*, 877 F.3d at 196.

### 3. The appeal will not affect the success of the plan, which is for liquidation.

For the same reason as noted in section 2, *supra*, this appeal would not affect the success of Mahwah's plan, which as explained above, simply apportioned the proceeds from the sale of Mahwah's businesses among its creditors. The government does not seek to recover any distributions made under the plan.

Nor would the appeal disrupt Mahwah's former businesses, which now operate under wholly different ownership. And, despite releasing a wide universe of non-debtors from liability, the protections of the challenged release provisions do not, per se, extend to the purchasers of those businesses, who are not among those defined as "Released Party." App'x 2625.[7] Regardless, the (final and unappealed) sales orders

---

[7] Only if the purchasers were otherwise Released Parties—*i.e.*, among the otherwise unidentified "Consenting Stakeholders," *see* UST Opening Brief at 12, n.4, or the affiliates or many "Related Parties" to the released non-debtors—would they get protection under the non-debtor releases.

and related agreements provided their own protection to the purchasers against successor liability or claims related to Mahwah. Supp. App'x 3296-97 at ¶ 15, 3313 at § 1.4, 3412-14 at ¶¶ 15 & 18, 3493 at § 1.5., 3561-65 at ¶¶ 14-16 & 18-19, 3618 at § 2.4.

Mahwah cites a "non-severability" provision of the plan as the reason why reversing the non-debtor releases would throw its plan "into disarray." Appellee's Brief at 35. Mahwah ignores two key facts about this provision.

One, the non-severability provision expressly contemplated that all provisions were, in fact, entirely severable prior to the plan's confirmation. App'x at 2667. Only after confirmation would all plan provisions be claimed "nonseverable." *Id.* The pre-confirmation severability "suggests that the plan would remain viable absent the Release Provisions." *Behrmann*, 663 F.3d 704 at 714. Mahwah may not insulate the non-debtor releases from review on appeal through a legal fiction that deems severable provisions as non-severable. *See R2 Invs., LDC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 691 F.3d 476, 485 (2d Cir. 2012) ("Allowing a boilerplate nonseverability clause, without more, to determine the equitable mootness question would give the debtor and other negotiating parties too much power to constrain Article III review.")[8]

---

[8] While the Second Circuit ultimately determined the appeal in *Charter Communs.* was equitably moot, that circuit has a particularly rigid test for equitable mootness that does not apply in the Fourth Circuit. *See Amicus Brief* at 15-16 (noting the judge-made doctrine is applied among the circuit courts inconsistently, and further noting that the

And, two, the non-severability provision expressly contemplates that Mahwah may consent to deletion or modification of plan provisions after confirmation. App'x 2621. Thus, even if the non-severability provision were given effect, if this Court determines that the non-debtor release provisions were improper, Mahwah may delete or modify them if it prefers to retain the other provisions intact.

### 4. The appeal will not unduly affect the interests of third parties.

Mahwah fails to identify any third parties whose interests would be affected by the appeal. Mahwah claims that third parties would be affected if the non-debtor release provisions were reversed because parties whose litigation rights were terminated under the plan were the subject of an "Avoidance Action Waiver" that Mahwah claims was of value to the releasing parties. Appellee's Brief at 35-36. Again, Mahwah's contention is incorrect.

The Bankruptcy Code authorizes trustees (and debtors in possession, like Mahwah) to recover property on behalf of the bankruptcy estate. They may undo or "avoid" certain pre-petition transactions, including, for example, transfers made as a preferential payment to a creditor or a fraudulent transfer. 11 U.S.C. §§ 544, 545, 547,

---

Second Circuit, unlike other circuits, presumes that appeals of substantially consummated plans are equitably moot). Further, unlike here, the subject of the compromise at issue in Charter Communs.'s plan was clearly identified. *Charter Communs.*, 691 F.3d at 480-81. By contrast, here, the bankruptcy court's statement that the non-debtor releases were "integral" to the plan "lack[s] adequate factual support," just as the Fourth Circuit concluded about the bankruptcy court's statements in *Behrmann*, 663 F.3d at 714.

548 and 549. *See also* 11 U.S.C. § 1107(a) (granting a debtor in possession almost all the rights of a trustee). By "waiving" an avoidance action, Mahwah agreed not to seek to litigate any action to recover any potentially avoidable pre-petition payments it made to certain parties.

Notably, Mahwah's plan waived avoidance actions only to a subset of Mahwah's creditors—not to all of its creditors, and not at all to its equity holders, much less the universe of releasing parties that were neither Mahwah's creditors nor equity holders. Rather, the "Avoidance Action Waiver" is limited to "any current or former (a) vendor, supplier, merchant, manufacturer, service provider, factor and/or assignee of such party, (b) landlord and/or (c) non-insider employee that does not opt out of the releases contained in the Plan or that did not cast a vote with respect to and did not file an objection to the Plan." (USTAPP2647; *see also* UST APP2616). Thus, not all the Releasing Parties were granted an Avoidance Action Waiver.

This makes sense as an avoidance action may only be taken against those who had received a pre-petition transfer of property from Mahwah that might be recoverable. Even if the Avoidance Action Waiver had been offered to all releasing parties—which it was not—it would have been of no value to many in the wide universe of non-debtors whose litigation rights were terminated by Mahwah's plan and who had received nothing from Mahwah pre-petition.

To be sure, the creditors to whom the Avoidance Action Waiver was extended might benefit from it. But this does not vindicate Mahwah's argument. These parties

had already negotiated the Avoidance Action Waiver earlier in the bankruptcy case,

when the bankruptcy court entered Mahwah's post-petition financing order.[9]  Supp.

App'x 2981.  Specifically, the committee of unsecured creditors withdrew its informal

objections to Mahwah's motion to obtain post-petition financing under 11 U.S.C. §

364 in exchange for the Avoidance Action Waiver.[10]  *Id.*

The post-petition financing order constituted a final order.  *See In re Gateway*

*Radiology Consultants, P.A.*, 983 F.3d 1239, 1252 (11th Cir. 2020) (order authorizing

loan under 11 U.S.C. § 364 is a final order).  Had the parties incorporated the

Avoidance Action Waiver into the post-petition financing order, which was not

appealed, it would have taken effect regardless of what occurred to Mahwah's plan.

Instead, they chose to defer getting the Avoidance Action Waiver until Mahwah's

plan, which was still subject to a contested confirmation.  They must live with the

outcome of that choice.  Supp. App'x 2981.

---

[9]  There was little danger that Mahwah could avoid wages paid to its employees as a preferential payment.  Under 11 U.S.C. § 547(c)(2), payments made "in the ordinary course of business" may not be avoided as a preferential transfer.  And the bankruptcy court specifically authorized Mahwah to pay its employees their pre-petition wages and other employee compensation in the ordinary course of business.  Supp. App'x 2905-12.

[10]  In chapter 11 cases, the United States Trustee appoints a committee of creditors holding unsecured claims.  11 U.S.C. § 1102(a)(1).  The unsecured creditors' committee is authorized to conduct various activities in the bankruptcy case.  11 U.S.C. § 1103(c).

**C.     Even if it might otherwise render an appeal equitably moot, the doctrine does not bar this appeal.**

Even if this Court found that the factors for equitable mootness were met, it should decline to dismiss this appeal for two main reasons.

First, this appeal was brought by the United States Trustee, a federal official charged with "protecting the public interest and ensuring that bankruptcy cases are conducted according to [the] law." H.R. Rep. No. 95-595 at 109 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6070; 28 U.S.C. § 581(a)(4). Courts have long distinguished cases brought by the federal government in its capacity as protector of the public interest and declined to apply traditional rules or equitable doctrines developed in the context of private civil litigation. *See OPM v. Richmond*, 496 U.S. 414 (1990) ("From our earliest cases, we have recognized that equitable estoppel will not lie against the Government as it lies against private litigants"); *United States v. California*, 332 U.S. 19, 40 (1947) (government not subject to equitable doctrines such as adverse possession or laches); *U.S. v. Marine Shale Processors*, 81 F.3d 1329, 1358-59 (5th Cir. 1996) (declining to apply traditional factors for injunctive relief "in a suit involving more than a mere private dispute" where government sought to protect the public interest). Such distinction should also apply here.[11]

---

[11] Mahwah argues that equitable mootness has been applied to appeals by the government but cites no Fourth Circuit case that does so. Appellee's Brief at 38. The United States Trustee is unaware of any Fourth Circuit precedent that has barred an appeal by the government on equitable mootness grounds.

Second, the issues posed by this appeal are capable of repetition yet will evade review. This is a well-established exception to the mootness rule. *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989). While Mahwah argues that this exception does not apply in equitable mootness cases, Appellee's Brief at 39-40, none of the three cases it cites supports that proposition. *Kingdomware Technologies, Inc. v. U.S.*, 136 S.Ct. 1969, 1976 (2016) simply explains the "capable of repetition" exception to mootness. And the remaining two cases involved *statutory* mootness, not equitable mootness. *In re K&D Indus. Servs. Holding Co.*, 2021 WL 949531, at *2 (E.D. Mich. Mar. 12, 2021) (applying 11 U.S.C. § 363(m));[12] *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, No. 2:16-BK-17463-ER, 2018 WL 1229989, at *5 (C.D. Cal. Jan. 19, 2018) (same).

As the United States Trustee has explained *supra*, Congress has made clear by statute the circumstances under which a bankruptcy court order should not be subject to review by an appellate court. Certainly, a judge-made exception should not circumvent such statutory mandate. But the "capable of repetition" exception should apply when the doctrine that might otherwise prohibit appellate review is itself a judge-made notion like equitable mootness. And proceeding with appellate review would address the concerns raised by the equitable mootness doctrine addressed in

---

[12] Mahwah's selective quotation from *K&D Indus.* omitted this point. Appellee's Brief at 39. The full quotation, with the omitted portion in italics, is: "[A] review of the case law considering this exception to mootness suggests that it only applies to Article III mootness, *not statutory mootness*." *K&D Indus.*, 2021 WL 949531, at *2.

Section III.A above.[13]

## **CONCLUSION**

For these reasons, the United States Trustee respectfully asks this Court to

grant the relief requested in his opening brief.

---

[13] Mahwah also claims that the issue will not evade review if the United States Trustee could obtain a stay. Appellee's Brief at 40. But, for the reasons set forth in this Court's order denying a stay, the chances of successfully obtaining a stay are low when the government is acting on behalf of unknown people who are unaware that their rights have been terminated by a bankruptcy court. ECF No. 33 at 20-21.

Respectfully submitted,

October 11, 2021

JOHN P. FITZGERALD, III,
ACTING UNITED STATES
TRUSTEE FOR REGION FOUR

By: /s/ *Kathryn R. Montgomery*
Kathryn R. Montgomery
Assistant United States Trustee
United States Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Tel.: (804) 771-2310
Fax: (804) 771-2330

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
SUMI SAKATA
Trial Attorney

Department of Justice
Executive Office for
United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel: (202) 307-1399
Fax: (202) 307-2397
sumi.sakata@usdoj.gov

JOHN P. FITZGERALD, III
Acting United States Trustee for Region 4
KATHRYN R. MONTGOMERY
Assistant United States Trustee
HUGH M. BERNSTEIN
Trial Attorney

Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Tel: (804) 771-2310

kathryn.montgomery@usdoj.gov
hugh.m.bernstein@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH
## FED. R. BANKR. P. 8015(a)(7)

1.      This document complies with the type-volume limit of Fed. R. Bankr. P.

8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R.

Bankr. P. 8015(g), this document contains 6433 words.

2.      This document complies with the typeface requirements of Fed. R.

Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Word 365 Word in 14-point Garamond font.

/s/ Kathryn R. Montgomery
Kathryn R. Montgomery

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 11th day of October 2021, a copy of the foregoing brief was filed electronically in the United States District Court for the Eastern District of Virginia and that according to the Court's CM/ECF system, all parties entitled to service will receive service electronically.

/s/ Kathryn R. Montgomery
Kathryn R. Montgomery