Nos. 3:21-cv-167-DJN (Lead Case), 3:21-cv-166 & 3:21-CV-00205 (Consolidated)

———————————————————————————————————————

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

———————————————————————————————————————

In re RETAIL GROUP INC., *et al.*, Debtors.

———————————————————————————————————————

JOEL PATTERSON, *et al.* & JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4, Appellants,
v.
MAHWAH BERGEN RETAIL GROUP, INC., Appellee.

———————————————————————————————————————

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

———————————————————————————————————————

**BRIEF IN RESPONSE TO COURT'S ORDER OF NOVEMBER 5, 2021,
BY APPELLANT JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4**

———————————————————————————————————————

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
SUMI SAKATA
Trial Attorney

Department of Justice
Executive Office for United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel: (202) 307-1399
sumi.sakata@usdoj.gov

JOHN P. FITZGERALD, III
Acting United States Trustee for Region 4
KATHRYN R. MONTGOMERY
Assistant United States Trustee
HUGH M. BERNSTEIN
Trial Attorney

Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Tel: (804) 771-2310
Fax: (804) 771-2330
kathryn.montgomery@usdoj.gov
hugh.m.bernstein@usdoj.gov

TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

RESPONSE ......................................................................................................... 2

    I.    The Issues Before the District Court in the Southern District of New York in *In re Purdue Pharma* Have Limited Relevance for this Appeal. .............................. 2

    II.   Fees Approved for Law Firms Involved in the Appeal During the Bankruptcy Case. ................................................................................................................... 4

        A.       Retention and Compensation of Professionals to be Paid by the Estate. 5

        B.       Provisions in the Confirmed Plan Regarding Professional Fees. .............. 6

        B.       Fees Incurred in the Bankruptcy Case by Firms Involved in the Appeal. 8

    III.  Venue for the Debtors Was Technically Proper Based on Affiliate Incorporation. ........................................................................................................ 12

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Behrmann v. Nat'l Heritage Found.*,
    663 F.3d 704 (4th Cir. 2011) ...................................................................... 3, 4

*In re ERG Intermediate Holdings, LLC,*
No. 15-31858-HDH11, 2015 WL 6521607 (Bankr. N.D. Tex. Oct. 27, 2015) ........... 13

*In re Dunmore Homes, Inc.,*
    380 B.R. 663 (Bankr. S.D.N.Y. 2008) ................................................... 12, 13

*In re LeClair,*
    336 B.R. 718 (Bankr. E.D. Va. 2002). ............................................................ 6

*In re Metromedia Fiber Network, In*c.,
    416 F.3d 136 (2d Cir. 2005) ..................................................................... 3, 4

*In re Patriot Coal Corp.,*
    482 B.R. 718 (Bankr. S.D.N.Y. 2012) ........................................................ 14

*In re Vernon-Williams,*
    377 B.R. 156 (Bankr. E.D. Va. 2007) ........................................................... 6

*Robinson v. Equifax Info. Servs., LLC,*
   560 F.3d 235 (4th Cir. 2009) ................................................................................. 5

*SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.),*
   960 F.2d 285 (2d Cir. 1992) ................................................................................... 3

*Stern v. Marshall,*
   564 U.S. 462 (2011) ............................................................................................... 4

**Statutes**

11 U.S.C. § 327 .......................................................................................................... 5

11 U.S.C. § 327(a) ...................................................................................................... 5

11 U.S.C. § 327(e) ...................................................................................................... 5

11 U.S.C. § 330 ....................................................................................................... 1, 5

11 U.S.C. § 330(a) ...................................................................................................... 5

11 U.S.C. § 330(a)(1)(A) ............................................................................................ 5

11 U.S.C. § 330(a)(4)(A) ............................................................................................ 5

11 U.S.C. § 350 .......................................................................................................... 6

11 U.S.C. § 1102 ........................................................................................................ 5

11 U.S.C. § 1103 ........................................................................................................ 5

11 U.S.C. § 1103(b) .................................................................................................... 5

11 U.S.C. § 1141(b) .................................................................................................... 6

28 U.S.C. §586(a)(3) .................................................................................................. 1

28 U.S.C. § 1408 ........................................................................................... 12, 13, 14

28 U.S.C. § 1408(1) ....................................................................................... 1, 12, 13

28 U.S.C. § 1408(2) ............................................................................................ 12, 13

28 U.S.C. § 1412 ...................................................................................................... 12

Fed. R. Civ. P. 23 ....................................................................................................... 3

**Other Authorities**

Bankr. E. D. Va. R. 5001-1 ................................................................................................. 13

## INTRODUCTION

Pursuant to the Court's Order Scheduling Oral Argument and Requiring Additional Briefing dated November 5, 2021 (the "November 5 Order"), the United States Trustee is filing this brief in response to address the following three points:

(1) The issues before the Southern District of New York in the pending appeal of *In re Purdue Pharma, L.P., et al.*, 7:21cv08721-CM, have limited relevance for this appeal, both because of the facts of each case and the issues the United States Trustee has raised on appeal.

(2) While the inquiry for additional briefing as to the amount of fees charged by each law firm involved in this appeal might be directed only to law firms billing in the bankruptcy case, the United States Trustee, whose duties pursuant to 28 U.S.C. §586(a)(3) include the review of fee applications filed pursuant to 11 U.S.C. § 330, has provided some points of clarification and information regarding fees sought and approved in the bankruptcy case by the retained professionals.

(3) Venue for the Debtors' bankruptcy case in the Richmond Division of the Eastern District of Virginia was technically proper under 28 U.S.C. § 1408(1) because one of the 64 Debtors whose cases were jointly administered below has been incorporated in Virginia since 2003.

Counsel for the United States Trustee will be prepared to address any questions the Court may have as to these points at oral argument.

## RESPONSE

I. **The Issues Before the District Court in the Southern District of New York in *In re Purdue Pharma* Have Limited Relevance for this Appeal.**

In *Purdue*, the bankruptcy court confirmed a chapter 11 plan that extinguished direct claims held by non-debtors against hundreds, potentially over a thousand, of other non-debtors. No. 19-bk-23649 (Bankr. S.D.N.Y.), ECF No. 3726 at 31, 43, 132-33; ECF No. 3711, Ex. X. The release was issued without any attempt to acquire the consent of the non-debtor claimants whose claims were being extinguished, and without any opportunity to opt out of the release. In contrast, here, the bankruptcy court's approval of the third-party releases depended primarily on its finding that all parties were deemed—improperly, as explained in the United States Trustee's briefs— to have consented to the releases by failing to opt out of them. Accordingly, the bankruptcy court below treated the releases as terms of a settlement that the bankruptcy court was approving in conjunction with the plan based on contract law principles.

The United States Trustee appealed the *Purdue* court's confirmation order.[1] There, he argues that there was no statutory authority for a bankruptcy court to

---

[1] A wide range of appellants, including states and Canadian native tribe and municipal governments, separately appealed the *Purdue* court's confirmation order. Some of these other appellants in *Purdue* raise arguments, such as states' police powers and foreign sovereign immunity, that are not applicable here. *See, e.g.,* No. 7:21cv08721 (S.D.N.Y.), ECF No. 101 at 11-20 (brief of Washington, Connecticut, Rhode Island, Delaware, and Vermont arguing release interfered with states' police powers); ECF

terminate claims between non-debtors. *See* No. 7:21cv08721 (S.D.N.Y.), ECF No. 91 at 38-41. But, unlike the Fourth Circuit, the Second Circuit does not have binding precedent that permits bankruptcy courts to issue non-debtor releases. *See id.* at 50 (noting that the discussion of non-debtor releases in *In re Metromedia Fiber Network, In*c., 416 F.3d 136, 142-43 (2d Cir. 2005), was *dictum*); *see also id.* at 56 (discussing *SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 288 (2d Cir. 1992), and noting that it did not involve a chapter 11 plan confirmation but instead affirmed a settlement by a class representative who released claims on behalf of a certified mandatory class under Fed. R. Civ. P. 23); *id.* at 53-57 (distinguishing other Second Circuit cases).

As stated in the reply brief filed in this Court, the United States Trustee respectfully reserves the right to argue in an appropriate forum that Fourth Circuit precedent permitting non-debtor releases should be reconsidered. Reply Brief at 3 n.2. But this Court may not overturn that precedent;[2] and for that reason, the United States Trustee seeks to apply the requirements of *Behrmann v. Nat'l Heritage Found.*, 663

---

No. 98 at 26-39 (brief of Canadian appellants arguing that release violated their sovereign immunity).

[2] For this reason, although the United States Trustee raised the implications of the Bankruptcy Clause and why it limits the bankruptcy court's authority under the Bankruptcy Code to issue non-debtor releases both in *Purdue*, No. 21cv08721 (S.D.N.Y.), ECF No. 91 at 31-33, and here, UST Reply Brief at 5 n.3, to the extent the United States Trustee does not seek to overturn Fourth Circuit precedent, the *Purdue* court's ruling on this issue should not impact the outcome here.

F.3d 704, 712 (4th Cir. 2011), to the bankruptcy court's order issuing a non-debtor release.  Notably, the *Behrmann* factors differ from the *Metromedia* factors that the *Purdue* bankruptcy court purported to apply.  Consequently, the United States Trustee's statutory arguments in the *Purdue* appeal should not impact the more limited arguments he poses in this appeal.

There is one issue in the *Purdue* appeal that may serve as persuasive authority in this matter.  The one overlapping issue is whether a bankruptcy court has constitutional authority to terminate non-debtors' state law claims against other non-debtors under *Stern v. Marshall*, 564 U.S. 462 (2011).  The United States Trustee raised the issue here, albeit briefly, UST Brief at 30 n.11, as did the other appellants to this appeal, Securities Plaintiffs' Brief at 37-46.  Although *Purdue* implicates certain other constitutional questions, the remainder of those issues are not before this Court.

## II.   Fees Approved for Law Firms Involved in the Appeal During the Bankruptcy Case.

The November 5 Order requests information from each law firm involved in this appeal as to the amount of fees approved for their firm in the Debtors' bankruptcy case to date.  While the inquiry for the additional briefing as to this issue might be directed only to law firms billing in the bankruptcy case, the United States Trustee addresses some points of clarification and information.

A.    **Retention and Compensation of Professionals to be Paid by the Estate.**

Pursuant to sections 327 and 1103 of the Bankruptcy Code, the bankruptcy court may authorize debtors in possession and official committees formed under section 1102 to employ professionals to represent them and carry out the duties prescribed in the Bankruptcy Code during a bankruptcy case. *See* 11 U.S.C. §§ 327(a), 327(e), 1103(b). In turn, section 330 authorizes the payment from the estate of compensation for and reimbursement of expenses to those professionals. *See* 11 U.S.C. § 330. Awards for compensation are limited to "actual, necessary services." 11 U.S.C. § 330(a)(1)(A). Courts may not grant "compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). In conjunction with the statutory framework of section 330(a), courts in this circuit utilize the loadstar method[3] when determining an appropriate award for

---

[3] The loadstar method requires an analysis of a twelve part test that includes: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *See Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009) (citations omitted).

professional fees and costs.  *See In re Vernon-Williams*, 377 B.R. 156, 184 (Bankr. E.D. Va. 2007); *In re LeClair*, 336 B.R. 718, 720 (Bankr. E.D. Va. 2002).

A confirmed and effective plan terminates the debtor-in-possession and, except as provided otherwise in the plan, vests all the property of the estate in the reorganized debtor.  11 U.S.C. § 1141(b).  Official committees, as statutory creatures appointed by the United States Trustee, likewise cease to exist once a plan goes effective, although a plan may by contract create a post-confirmation committee and a confirmation order may at times retain the committee for some length of time.[4] Bankruptcy courts, therefore, only review and approve retained professionals' fees until a plan is confirmed, after which the reorganized debtors would be allowed to pay legal and professional fees and expenses in the ordinary course and without the requirement to file fee applications subject to review by the Bankruptcy Court and parties in interest.  Such was the case here.

## B.    Provisions in the Confirmed Plan Regarding Professional Fees.

The confirmed Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (*f/k/a* Ascena Retail Group, Inc.) and its Debtor Affiliates (the "Plan") provides procedures for the payment of retained professionals' fees and expenses.  *See* ECF No. 1811, at Exhibit A.  For fees

---

[4] Despite plan confirmation, a bankruptcy case may remain open long after plan confirmation to address, among other matters, claims allowance, fee applications (for pre-confirmation work), and avoidance action litigation.  A bankruptcy case may be closed only after the estate is fully administered.  11 U.S.C. § 350.

and expenses incurred by such professionals on or after July 23, 2020—the date on which the Debtors filed for bankruptcy (the "Petition Date")—through and including February 25, 2021—the date on which the Bankruptcy Court entered its order confirming the Plan (the "Confirmation Date")—the Plan provides:

> All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The amount of the Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

*See* Plan at Art. II.D.2. The Plan provides, however, that for fees and expenses incurred after the Confirmation Date, the Debtors and/or Reorganized Debtors have the authority to pay such fees and expenses in the ordinary course without further notice and a hearing:

> From and after the Confirmation Date, the Debtors or the Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Reorganized Debtors, as applicable. Upon the Confirmation Date, any requirements that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice or action, order, or approval of the Bankruptcy Court.

*See* Plan at Art. II.D.4. After February 25, 2021, the date the Bankruptcy Court entered the Confirmation Order, the Reorganized Debtors would use cash on hand, including funds from the Exit Facilities, to continue paying the professionals, but, as set forth above, the United States Trustee's ability to review such fees and expenses, and the Court's authority to approve or disapprove them, ceased on such date. *See* Plan at Arts. IV.D and IV.E.

### B. Fees Incurred in the Bankruptcy Case by Firms Involved in the Appeal.

The United States Trustee has reviewed the fee applications that Kirkland & Ellis LLP and Cooley LLP—who represent Appellee Mahwah Bergen Retail Group, Inc.—filed with the Bankruptcy Court to determine the fees and expenses these firms incurred between the Petition Date and the Confirmation Date. Because, as explained above, the Bankruptcy Court did not have the authority or the duty to approve Kirkland & Ellis LLP's and Cooley LLP's fees and expenses after February 25, 2021, the United States Trustee has no information regarding (a) any fees or expenses these firms have incurred with respect to these appellate proceedings or (b) the hourly fees charged by George W. Hicks, Jr., Andrew C. Lawrence, and Edward O. Sassower, Esq., each of whom is a Kirkland & Ellis LLP attorney who did not bill fees during the bankruptcy case.

During the seven months from the Petition Date to the Confirmation Date, the total amount of professionals' fees and expenses incurred by Kirkland & Ellis LLP

and Cooley LLP and approved by the Bankruptcy Court totaled $8,398,801.62 in fees

and $273,943.06 in expenses, as set forth in more detail below:

| Applicant | Docket Number of Application and Order | Fees Requested on Final Fee Application | Fees Allowed for Final Fee Application[5] | Expenses Requested on Final Fee Application | Expenses Allowed for Final Fee Application |
|---|---|---|---|---|---|
| Kirkland & Ellis LLP[6] | Doc. Nos. 2010 and 2134 | $7,569,907.50 | $7,419,907.50 | $154,250.78 | $154,250.78 |
| Cooley LLP[7] | Doc. Nos. 2011 and 2134 | $986,233.35 | $978,894.12 | $119,692.28 | $119,692.28 |
| **Total** | | $8,556,140.85 | $8,398,801.62 | $273,943.06 | $273,943.06 |

[5] Fees reflected in this column reflect the agreed upon reductions by the Debtors' professionals pursuant to their respective discussions with the Office of the United States Trustee; however, at least for Cooley LLP, there were additional reductions negotiated prior to the final fee applications being filed that may not be reflected in this chart.

[6] After discussions with the Office of the United State Trustee, Kirkland & Ellis LLP agreed to a reduction in fees of $150,000.00.  Notably, during the 90-day period before the Petition Date, the Debtors paid advance payment retainers to Kirkland & Ellis LLP in the total amount of $5,636,918.15.  *See* ECF No. 500.  The firm drew down over $4 million prior to the filing of the Chapter 11 cases, leaving a balance of $1,506,979.13 as of the Petition Date in the advance retainer.

[7] After discussions with the Office of the United State Trustee, Cooley LLP agreed to a reduction in fees of $50,895.88 and a reduction in expense reimbursement of $552.48.  Prior to the Petition date, the Debtors paid Cooley LLP a security retainer of $250,000.00.  *See* ECF No. 500.  Subsequently, the Debtors were invoiced in the aggregate amount of $76,910.06 for fees and expenses incurred pre-petition, and after application of these fees and expenses, as of the Petition Date Cooley LLP was holding $173,089.94 of the retainer.  *Id.*

According to the information available on the Bankruptcy Court docket, out of the 108 timekeepers from Kirkland & Ellis LLP who billed to the bankruptcy case, the firm's biller with the highest hourly rate of $1,595.00 was Chad J. Husnick, P.C., a partner in the Restructuring Department, who billed 0.5 hours to the case. *See* ECF No. 2010.[8] Kirkland & Ellis LLP's partners' hourly rates ranged from $1,595.00 to $1,135.00. *Id.* The chart below reflects the fees charged and the total fees incurred by the partners in the Kirkland & Ellis LLP Restructuring Department from the Petition Date to the Confirmation Date[9]:

| Professional | Position and Year of Admission | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Chad J. Husnick, P.C. | Partner in Restructuring Department – 2004 | $1,595.00 | 0.50 | $797.50 |
| Steven N. Serajeddini, P.C. | Partner in Restructuring Department – 2010 | $1,345.00 | 284.40 | $383,056.00 |
| | | $1,495.00 | 16.60 | $24,817.00 |
| Susan Golden | Partner in Restructuring Department - 1988 | $1,175.00 | 2.80 | $3,290.00 |
| | | $1,220.00 | 0.70 | $854.00 |
| John R. Luze | Partner in Restructuring Department - 2013 | $1,135.00 | 740.20 | $840,127.00 |
| | | $1,155.00 | 162.40 | $187,572.00 |

[8] This Supplemental Brief cites dockets from the record of the bankruptcy case below, all of which are available on the Bankruptcy Court's docket at Case No. 20-33113-KRH or Case No. 20-33112-KRH, but some of which were not included in the record for this appeal. The United States Trustee can provide copies of any of these documents at the Court's request.

[9] Approximately 24 other partners from other departments billed time to the bankruptcy case and their hourly rates fell within the ranges set forth above.

*Id.*

Similarly, according to information available on the Bankruptcy Court docket, out of the 18 timekeepers from Cooley LLP who billed fees in the bankruptcy case, the firm's biller with the highest hourly rate of $1,345.00 was Robert L. Eisenbach III, with the title "of counsel" in the Bankruptcy Department, who billed 6.3 hours to the case for a total of $8,473.50. *See* ECF No. 2011. Cooley LLP's partners' hourly rates ranged from $1,345.00 to $1,015.00. *Id.* The Cooley LLP partner who charged the most hours in the case was Cullen D. Speckhart, who billed 133.7 hours in the case at $1,060.00 per hour and 34 hours at $1,125.00, for fees between the Petition Date and Confirmation Date of $179,972.00. *Id.* The other two partners from Cooley LLP who billed to the bankruptcy case charged the following: (a) 1.6 hours at $1,325 per hour and (b) 23 hours at $1,015 and 3.6 hours at $1,090 (due to a rate increase during the pendency of the bankruptcy case).

Because Joel Patterson and Michaella Corporation, the court-appointed lead plaintiffs in the securities fraud class action and appellants in these proceedings, were not subject to the Bankruptcy Court's approval for their retention because their legal fees and expenses were not entitled to be paid by the estate, the United States Trustee is not privy to information regarding the legal fees that these firms charged.

### III.   Venue for the Debtors Was Technically Proper Based on Affiliate Incorporation.

A bankruptcy case may be commenced in any judicial district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement." 28 U.S.C. § 1408(1).  A person or entity may also file for bankruptcy in any district in which the bankruptcy case of an affiliate, partnership, or general partner is already pending.  28 U.S.C. § 1408(2).  For a business debtor, "domicile is generally held to be its state of incorporation." *In re Dunmore Homes, Inc.,* 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008).  Even if venue is proper in a particular district under section 1408, the court has discretion to transfer the case to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

As of the Petition Date, the Debtors' corporate structure consisted of a total of approximately 85 entities, with Ascena Retail Group, Inc., one of the Debtors, being the parent company.  Sixty-four of those entities sought Chapter 11 bankruptcy relief. Two of the 85 entities were incorporated in Virginia, but only one of them—DBCM Holdings, LLC *(fka* Dress Barn Credit Management, LLC ("DBCMH"))—filed for bankruptcy.  *See* Declaration of Carrie W. Teffner, Interim Executive Chair of Ascena Retail Group, Inc., In Support of Chapter 11 Petitions and First Day Motions, ECF

12

No. 14, at <u>Exhibit B</u>.  DBCMH is a wholly owned subsidiary of DBI Holdings, Inc.,

which in turn is a wholly owned subsidiary of Ascena Retail Group, Inc.

Under 28 U.S.C. § 1408(1), venue for DBCMH—the first of the jointly

administered debtors that filed for Chapter 11 relief in Case No. 20-33112—appears

to be proper because DBCMH has been incorporated under the laws of Virginia since

2003 and maintains a registered agent, Corporate Service Company, in Richmond.  As

a result, for purposes of section 1408, the "domicile" of DBCMH is in Virginia, and

venue in any district in the state is proper for that entity.  *See In re ERG Intermediate*

*Holdings, LLC,* No. 15-31858-HDH11, 2015 WL 6521607, at *4 (Bankr. N.D. Tex.

Oct. 27, 2015) ("[A]n entity that is formed under the laws of a given state is domiciled

in the entire state for purposes of section 1408(1) and may file a case under the

Bankruptcy Code in any District in that state); *see also Dunmore,* 380 B.R. at 670

(holding that venue was proper in the Southern District of New York because the

debtor was incorporated in the state of New York); Bankr. E. D. Va. R. 5001-1.

The remaining 63 debtors in these jointly administered cases do not appear to

have domiciles or principal places of business in Virginia.  Pursuant to 28 U.S.C.

§ 1408(2), each of these debtors is an affiliate of DBCMH, and thus venue for those

debtors in Virginia is proper based on the venue of DBCMH's bankruptcy case.

It is not entirely clear from the documents the Debtors filed with the

Bankruptcy Court whether DBCMH is an operating company.  According to the

operating reports the Debtors filed as well as the post-confirmation quarterly reports

that the Plan Administrator filed with the Bankruptcy Court, the Debtors' total

disbursements through the third quarter of 2021 amount to $2,391,534,803.00.

DBCMH's portion of those disbursements was $18,303.00, roughly .0007% of the

total.  ECF Nos. 490, 723, 1060, 1230, 1401, 1569, 1831, 1964, 1977, 2098, 2308, and

2460.  According to the schedules of assets and liabilities that DBCMH filed with the

Bankruptcy Court, its only assets are interests in insurance policies and intercompany

receivables.  *See* Bankr. Case No. 20-33112-KRH, ECF Nos. 6 and 7 (Bankr. E.D. Va.

filed Aug. 27, 2020).

Even though the requirements of section 1408 were satisfied here, the

Bankruptcy Court could nevertheless have transferred venue if it had concluded that

either the interests of justice or the convenience of the parties favored venue in a

different district.  No party moved for such relief in the Bankruptcy Court.  This case

is decidedly different from *In re Patriot Coal Corp.*, 482 B.R. 718, 744 (Bankr. S.D.N.Y.

2012), where the United States Trustee moved to transfer venue—and the court

ordered that venue be transferred—"in the interests of justice" because venue was

based on an affiliate created on the eve of bankruptcy for the sole purpose of creating

venue.  In contrast, venue in this case was based on an affiliate that existed and that

was incorporated in Virginia long before the Debtors sought bankruptcy relief, and

the Debtors' satisfaction of section 1408 does not therefore appear to be the result of

an abusive manipulation of the venue rules.  In addition, the United States Trustee is

14

not aware of any creditors or other parties who have asserted that they were

inconvenienced by venue in the Eastern District of Virginia.

Respectfully submitted,

November 15, 2021                JOHN P. FITZGERALD, III,
                                ACTING UNITED STATES
                                TRUSTEE FOR REGION FOUR

                                By: /s/ Kathryn R. Montgomery
                                Kathryn R. Montgomery, VSB No. 42380
                                Assistant United States Trustee
                                United States Department of Justice
                                Office of the United States Trustee
                                701 East Broad Street, Suite 4304
                                Richmond, Virginia 23219
                                Tel.: (804) 771-2310
                                Fax: (804) 771-2330


RAMONA D. ELLIOTT                JOHN P. FITZGERALD, III
Deputy Director/General Counsel  Acting United States Trustee for Region 4
P. MATTHEW SUTKO                 KATHRYN R. MONTGOMERY
Associate General Counsel        Assistant United States Trustee
SUMI SAKATA                      HUGH M. BERNSTEIN
Trial Attorney                   Trial Attorney

Department of Justice           Department of Justice
Executive Office for            Office of the United States Trustee
United States Trustees          701 East Broad Street, Suite 4304
441 G Street, NW, Suite 6150    Richmond, Virginia 23219
Washington, DC 20530            Tel: (804) 771-2310
Tel: (202) 307-1399
Fax: (202) 307-2397             kathryn.montgomery@usdoj.gov
sumi.sakata@usdoj.gov           hugh.m.bernstein@usdoj.gov

16

## <u>CERTIFICATE OF COMPLIANCE WITH</u>
## <u>FED. R. BANKR. P. 8015(a)(7)</u>

1.      This document complies with the type-volume limit of Fed. R. Bankr. P.

8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R.

Bankr. P. 8015(g), this document contains 3,800 words.

2.      This document complies with the typeface requirements of Fed. R.

Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Word 365 Word in 14-point Garamond font.

/s/ Kathryn R. Montgomery
Kathryn R. Montgomery

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY, that on this 15th day of November 2021, a copy of the foregoing brief was filed electronically in the United States District Court for the Eastern District of Virginia and that according to the Court's CM/ECF system, all parties entitled to service will receive service electronically.

/s/ Kathryn R. Montgomery
Kathryn R. Montgomery