Nos. 3:21-cv-167-DJN (Lead Case), 3:21-cv-166 & 3:21-CV-00205(Consolidated)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

In re RETAIL GROUP INC, *et al.*, Debtors.

JOEL PATTERSON, *et al.* & JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4, Appellants,

v.

MAHWAH BERGEN RETAIL GROUP, INC., Appellee.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Jointly Administered Bankruptcy Case No. 20-33113-KRH

## SUPPLEMENTAL BRIEF OF APPELLANTS
## JOEL PATTERSON AND MICHAELLA CORPORATION

| | |
|---|---|
| Michael Etkin (*pro hac vice*) | Ronald A. Page, Jr. |
| Andrew Behlmann (*pro hac vice*) | Virginia Bar No. 71343 |
| John Schneider (*pro hac vice*) | RONALD PAGE, PLC |
| LOWENSTEIN SANDLER LLP | P.O. Box 73087 |
| One Lowenstein Drive | N. Chesterfield, Virginia 23235 |
| Roseland, New Jersey 07068 | (804) 562-8704 |
| (973) 597-2500 | rpage@rpagelaw.com |
| metkin@lowenstein.com | |
| abehlmann@lowenstein.com | |
| jschneider@lowenstein.com | |

*Counsel to Appellants Joel Patterson and Michaella Corporation*

## **CORPORATE DISCLOSURE STATEMENT**

Appellant Joel Patterson is a natural person. Appellant Michaella Corporation has no parent corporation, and no publicly held corporation owns an interest of ten percent or more in Appellant Michaella Corporation.

Joel Patterson and Michaella Corporation ("Appellants"), court-appointed lead plaintiffs in *In re Ascena Retail Group, Inc. Securities Litigation*, Case No. 19-cv-13529 (D.N.J.) (the "Securities Litigation") and appellants in two of the three above-captioned consolidated appeals (the "Appeals")[1] from orders entered by the Bankruptcy Court below in the chapter 11 bankruptcy cases (the "Bankruptcy Proceeding") of the above-captioned appellee and its affiliated debtors (the "Debtors"), hereby submit this supplemental brief pursuant to the Court's order entered November 5, 2021 [ECF No. 49], and respectfully state as follows in response to each of the three points raised therein:

1. *Whether any similarities exist between this appeal and the issues in the pending appeal of* In re Purdue Pharma, L.P., et al.*, 7:21cv08271-CM, in the Southern District of New York and, if so, what — if any — impact the rulings in that case may have on this case in terms of persuasive authority*

These Appeals and the pending appeal from the confirmation order in *In re Purdue Pharma, L.P., et al.* all arise from chapter 11 plans containing third-party releases that purport to release direct claims of non-debtors against other non-debtors. However, the similarities end there and the differences are significant.

For the reasons discussed below, Appellants submit that there is no need for the Court to await the adjudication of the *Purdue* appeal before ruling on these

---

[1] These two Appeals have been consolidated with a third appeal brought by the United States Trustee for Region 4 (the "UST Appeal") for procedural purposes but not for purposes of decision. As discussed below, the relief sought in the UST Appeal is significantly broader than the narrowly tailored relief Appellants seek in these Appeals. Appellants do not seek to unwind confirmation or to strike the third-party release in its entirety, but rather, seek only to avoid the gratuitous and unjustified release of their claims and the claims of the proposed class in the Securities Litigation against two of the Debtors' former directors and officers.

Appeals. The releases at issue in *Purdue* at least had some colorable factual justification because the released parties contributed billions of dollars to fund Purdue's chapter 11 plan and the Bankruptcy Court found that the releases were critical to Purdue's reorganization. That is a radical departure from the Debtors' plan of liquidation, which did not depend in any way upon the release of the non-debtor defendants in the Securities Litigation (the "Individual Defendants"), two former directors and officers of the Debtors who provided no contribution whatsoever to fund the plan and had no involvement whatsoever in the Debtors' reorganization efforts or eventual liquidation.

A. **Nature of Releases**

Purdue's chapter 11 plan of reorganization contains a nonconsensual third-party release that, if upheld on appeal, will bind creditors irrespective of whether or how they voted on the plan. The legal standard for approval of a nonconsensual third-party release in the Second Circuit requires specific legal findings that the released parties provided a substantial monetary contribution and that the release was essential to the reorganization. *See In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142-43 (2d Cir. 2005). As discussed below, the *Purdue* Bankruptcy Court made such findings following a lengthy and heavily contested evidentiary trial.

Here, the Debtors' chapter 11 plan contains an "opt-out" third-party release that supposedly provided creditors the opportunity to opt out of being deemed to

grant the release. However, as discussed in Appellants' opening and reply briefs, this purported "consent" mechanism was fundamentally defective as to Appellants and the proposed class in the Securities Litigation (the "Proposed Class"). Members of the Proposed Class received nothing under the Debtors' plan of liquidation, were deemed to reject the plan, and thus had neither the opportunity to vote on the plan nor any reason to believe they needed to take any action with respect to the plan. Thus, members of the Proposed Class could not reasonably be charged with an obligation to take affirmative steps to avoid involuntarily relinquishing their only source of recovery through the Securities Litigation in exchange for absolutely nothing. Because the purported consent mechanism was defective as to Appellants and the Proposed Class, the third-party release was effectively nonconsensual – but unlike the released parties in *Purdue*, the Individual Defendants in the Securities Litigation provided no consideration for the release and the release was not essential – or even relevant – to the Debtors' plan of liquidation.

### B. Consideration

The primary non-debtor released parties in *Purdue*, members of the Sackler family, agreed to pay a total of $4,325,000,000 for the benefit of Purdue's bankruptcy estate and creditors in exchange for broad, nonconsensual releases of claims against themselves and an assortment of other non-debtor parties related to them. Pursuant to Purdue's plan of reorganization, the Sacklers' contribution will be used to fund

distributions to victims of Purdue's opioid products and to fund nationwide drug addiction treatment and prevention programs.  The *Purdue* court made extensive factual findings regarding the substantial consideration to be paid by the Sacklers. One of the fundamental disputes on appeal in that case is whether the Sacklers paid enough money to justify the broad release of third parties' claims against themselves and their related parties.

By contrast, the Individual Defendants here left the Debtors' employ before the Debtors filed for bankruptcy protection and played no role whatsoever in the Debtors' failed efforts to restructure and the eventual sale of their assets.  The Individual Defendants provided no contribution whatsoever to the Debtors' bankruptcy estate or their plan of liquidation, much less a substantial financial contribution justifying the release of claims against them by investors who were completely disenfranchised under the plan.  The Bankruptcy Court made no findings regarding the Individual Defendants' contribution to the plan, because there was no contribution at all.

C. **Necessity to the Reorganization:**

The *Purdue* court found that the third-party releases at issue in that case were "absolutely critical" to confirmation of Purdue's chapter 11 plan of reorganization, a prerequisite to approval of a nonconsensual third-party release under *Metromedia*. By contrast, the Debtors here made no showing whatsoever that the release of claims

of Appellants and the Proposed Class against the Individual Defendants was essential to the Debtors' plan of liquidation, because it was not. The two Individual Defendants had absolutely nothing to do with, and provided no contribution to, the Debtors' failed restructuring efforts or their plan of liquidation.

### D. Scope of Relief Sought

The relief Appellants seek in these Appeals is significantly narrower than the relief sought by the appellants in *Purdue*. Like the United States Trustee for Region 4, the appellant in a third appeal procedurally consolidated with these Appeals, the *Purdue* appellants challenge the propriety of third-party releases not just in the context of Purdue's chapter 11 plan, but also as a general matter, and seek to eliminate the release in its entirety. Appellants here do not seek such broad relief. Rather, Appellants challenge only the propriety of the third-party release as applied to their claims and the claims of the Proposed Class against the two Individual Defendants in the Securities Litigation.

### E. Conclusion

Although these Appeals and the *Purdue* confirmation appeal all involve third-party releases, the facts and circumstances at issue here are drastically different. Appellants submit that the narrowly tailored relief they seek can be granted efficiently and effectively without waiting for the *Purdue* appeal to play out to its conclusion, and without any impact whatsoever on the Debtors' confirmed plan of

liquidation. However, if the releases in *Purdue* – which were supported by billions of dollars of consideration and were the linchpin of the plan of reorganization – eventually are found on appeal to have been inappropriate, then the gratuitous release of the claims of Appellants and the Proposed Class against the Individual Defendants cannot be said to be anything other than an abject mockery of due process and the bankruptcy system.[2]

2. *Each law firm involved in this appeal shall state the total amount of fees approved for their firm in this Bankruptcy Proceeding to date, along with the following: (a) the highest non-blended hourly rate approved to be paid to an attorney in their firm for this proceeding; (b) the name of the attorney for the highest non-blended rate; and (c) the amount of the law firm's total approved fee that is based on that attorney's work. The Court intends to address the fees approved in this case during oral argument*

Counsel for Appellants were not estate professionals in the Bankruptcy Proceeding of the Debtors. Accordingly, fees of Appellants' counsel are not subject to approval in the Bankruptcy Proceeding and thus no fees have been approved. Fees and expenses of Appellants' lead counsel in the Securities Litigation and primary bankruptcy counsel in the Bankruptcy Proceeding[3] are contingent upon a recovery by Appellants and the Proposed Class in the Securities Litigation and, similar to professional fees in most securities class actions, are subject to approval by the

---

[2] Appellants take no position with respect to the impact of *Purdue* on the broader relief sought in the UST Appeal that is procedurally consolidated with these Appeals. However, Appellants respectfully submit that in the event the Court is inclined to refrain from ruling in the UST Appeal pending the outcome of *Purdue*, these Appeals can and should proceed to decision on their own merits, given the limited scope of the relief Appellants seek.

[3] Appellants' local bankruptcy counsel is compensated on an hourly basis as an expense.

United States District Court for the District of New Jersey in connection with any settlement or judgment in Appellants' favor in the Securities Litigation.

3. *The propriety of venue in the Richmond Division of the Eastern District of Virginia for this Bankruptcy Proceeding*

To the best of Appellants' knowledge, no party in interest formally challenged venue of the Bankruptcy Proceeding. Accordingly, Appellants are not aware of the basis upon which the Debtors established venue in the Eastern District of Virginia. Based upon the voluntary chapter 11 bankruptcy petitions filed by the Debtors in the Bankruptcy Proceeding, it does not appear any of the Debtors were Virginia entities or had a principal place of business in Virginia. Appellants understand that the Debtors had one or more retail store locations in Virginia. Appellants are not aware of what, if any, other connections the Debtors may have had to this District.

Dated: November 15, 2021　　　　　　　　Respectfully submitted,

| | |
|---|---|
| Michael Etkin (*pro hac vice*) |  */s/ Ronald A. Page, Jr.* |
| Andrew Behlmann (*pro hac vice*) | Ronald A. Page, Jr. |
| John Schneider (*pro hac vice*) | Virginia Bar No. 71343 |
| LOWENSTEIN SANDLER LLP | RONALD PAGE, PLC |
| One Lowenstein Drive | P.O. Box 73087 |
| Roseland, New Jersey 07068 | N. Chesterfield, Virginia 23235 |
| (973) 597-2500 | (804) 562-8704 |
| metkin@lowenstein.com | rpage@rpagelaw.com |
| abehlmann@lowenstein.com | |
| jschneider@lowenstein.com | |

*Counsel to Appellants Joel Patterson and Michaella Corporation*

## **CERTIFICATE OF COMPLIANCE**

The foregoing compiles with the type-volume limitations applicable under this Court's *Order (Scheduling Oral Argument; Requiring Additional Briefing)* entered on November 5, 2021 because it does not exceed twenty (20) pages.

I further certify that the foregoing complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

By /s/ Ronald A. Page, Jr.
   Counsel

## CERTIFICATE OF SERVICE

I hereby certify that, on November 15, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Virginia by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By   /s/ Ronald A. Page, Jr.
       Counsel