**Nos. 3:21-cv-167-DJN (Lead), 3:21-cv-166 & 3:21-cv-00205 (Consolidated)**

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA

————————————

IN RE RETAIL GROUP INC., ET AL.,

*Debtors*,

————————————

JOEL PATTERSON, ET AL. & JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4,

*Appellants*,

v.

MAHWAH BERGEN RETAIL GROUP, INC.,

*Appellee.*

————————————

On Appeal from the United States Bankruptcy Court
for the Eastern District of Virginia
Bankruptcy Case No. 20-33113-KRH

————————————

### SUPPLEMENTAL BRIEF FOR
### APPELLEE MAHWAH BERGEN RETAIL GROUP, INC.

————————————

GEORGE W. HICKS, JR. (*pro hac vice*)
ANDREW C. LAWRENCE (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
george.hicks@kirkland.com

EDWARD O. SASSOWER, P.C.
STEVEN N. SERAJEDDINI, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(202) 446-4800

CULLEN D. SPECKHART (VSB 79096)
*Counsel of Record*
OLYA ANTLE (VSB 83153)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800
cspeckhart@cooley.com

JOHN R. LUZE
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

*Counsel for Appellee Mahwah Bergen Retail Group, Inc.*

Date: November 15, 2021

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION AND SUMMARY ............................................................1

    I.     Any Rulings In The *Purdue* Appeal Will Support Ascena Or Will Be Irrelevant To This Appeal .........................................................3

           A.     Equitable Mootness ....................................................................4

           B.     Third-Party-Release Provision ...................................................7

           C.     Exculpation Provision ..............................................................14

           D.     Confirmation Process ...............................................................14

    II.    The Bankruptcy Court Approved Fees For Ascena's Counsel In A May 2021 Order That No Party Appealed .....................................15

    III.   Venue For This Bankruptcy Proceeding Is Proper In The Richmond Division Of The Eastern District Of Virginia .................17

CONCLUSION .......................................................................................19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Behrmann v. Nat'l Heritage Found.*,
  663 F.3d 704 (4th Cir. 2011) ............................................................................9, 12

*In re Kirwan Offices S.à.r.l.*,
  592 B.R. 489 (S.D.N.Y. 2018) ...............................................................................13

*In re Metromedia Fiber Network, Inc.*,
  416 F.3d 136 (2d Cir. 2005) ...............................................................................8, 9

*In re Purdue Pharma L.P.*,
  No. 19-23649 (RDD), 2021 WL 4240974
  (Bankr. S.D.N.Y. Sept. 17, 2021).........................................................................10

*In re Purdue Pharma L.P.*,
  No. 21-cv-7966, 2021 WL 4803909
  (S.D.N.Y. Oct. 13, 2021).......................................................................................5, 6

*United States v. Energy Res. Co.*,
  495 U.S. 545 (1990) ..............................................................................................11

**Statutes**

28 U.S.C. §127 ..............................................................................................................18

28 U.S.C. §1406 ............................................................................................................19

28 U.S.C. §1408 .................................................................................................. 17, 18, 19

28 U.S.C. §157 ..............................................................................................................13

**Rules**

Local Bankr. R. 1071-1 ................................................................................................18

Local Bankr. R. 5005-1 .......................................................................................... 18, 19

**Other Authorities**

Chapter 11 Voluntary Petition,
  Dkt.1, *In re DBCM Holdings, LLC*,
  No. 20-33112 (Bankr. E.D. Va. filed July 23, 2020) .........................................18

*Collier on Bankruptcy* (16th ed. 2021) .................................................... 8, 9, 18, 19

Rick Archer,
  *Purdue Agrees Not To Finalize Ch. 11*
  *Plan Until Appeals Done*, Law360
  (Nov. 9, 2021), https://bit.ly/3BYpmEl ................................................................. 6

Order, Dkt.1276,
  *In re BBGI US, Inc.*,
  No. 20-11785 (CSS)
  (Bankr. D. Del. filed June 17, 2021) ................................................................. 16

Order, Dkt.1101,
  *In re Chinos Holdings, Inc.*,
  No. 20-32181 (KLP)
  (Bankr. E.D. Va. filed Nov. 23, 2020) ................................................................ 16

Order, Dkt.1729,
  *In re Vitamin OldCo Holdings, Inc. (f/k/a GNC Holdings, Inc.)*,
  No. 20-11662 (KBO) (Bankr. D. Del. filed Dec. 28, 2020) ............................... 16

Order, Dkt.2056,
  *In re Payless Holdings LLC*, No. 19-40883
  (Bankr. E.D. Mo. filed Apr. 16, 2020) ............................................................... 16

Order, Dkt.2062,
  *In re Remington Outdoor Co., Inc.*,
  No. 20-81688 (CJR) (Bankr. N.D. Ala. filed July 1, 2021) ............................... 16

Order, Dkt.2146,
  *In re Neiman Marcus Grp. Ltd. LLC*,
  No. 20-32519 (DRJ) (Bankr. S.D. Tex. filed Dec. 10, 2020) ............................. 16

## INTRODUCTION AND SUMMARY

Ascena Retail Group, Inc. and its affiliated debtors ("Ascena") respectfully submit this supplemental brief pursuant to this Court's order dated November 5, 2021 ("Order"). *See* Dkt.49.  The Order directs the parties to:  (1) address whether there are any similarities between this appeal and the issues in the appeal from the order confirming the Chapter 11 plan of reorganization of Purdue Pharma, L.P. and its affiliated debtors ("*Purdue* appeal"), and, if so, what impact (if any) the rulings in that case may have on this case; (2) provide certain information regarding the fees approved for the law firms involved in this bankruptcy proceeding; and (3) explain the propriety of venue for this bankruptcy proceeding in the Richmond Division of the Eastern District of Virginia.  *See* Order.1-2.  Ascena respectfully sets forth its responses to each of these requests.

*First*, this appeal involves four issues, and the *Purdue* appeal implicates two of them—equitable mootness and the propriety of third-party-release provisions.  As to equitable mootness, the *Purdue* district court has issued a ruling indicating that it will not dismiss the *Purdue* appeal as equitably moot, but its reasoning confirms that the opposite result is warranted here.  As to the propriety of third-party-release pro-visions, the *Purdue* district court is examining a *nonconsensual* third-party-release provision *without* an opt-out mechanism, whereas this appeal involves a *consensual*

third-party-release provision *with* an opt-out mechanism.  Accordingly, any pro-nouncements about the validity of the nonconsensual third-party-release provision in the *Purdue* appeal will have no pertinence here.  Indeed, the arguments made by the U.S. Trustee and the United States challenging the provision in the *Purdue* appeal *support* Ascena's position here.  And while the *Purdue* district court will also address the scope of the bankruptcy court's authority to approve third-party-release provisions in Chapter 11 plans—an issue that the Securities Plaintiffs (but not the U.S. Trustee) have raised here—the *Purdue* district court judge recently opined on that issue at length in a decision that embraced Ascena's arguments here.  That same judge is likely to offer similar reasoning in the *Purdue* appeal, again supporting Ascena's position in this appeal.

*Second*, in a final fee order dated May 12, 2021, the bankruptcy court approved the fees for the law firms that represented Ascena in this bankruptcy proceeding.  The bankruptcy court approved approximately $7.4 million in fees for Kirkland & Ellis LLP and approximately $1 million in fees for Cooley LLP—amounts that reflected adjustments following discussions with the U.S. Trustee and that are in line with (if not below) fees approved for retail bankruptcies of similar size and complexity.  Neither the U.S. Trustee nor any other party lodged an objection to the firms' fees, and no party appealed the fee order.  The two attorneys at

those firms with the highest approved non-blended hourly rates billed under seven hours total, and the bankruptcy court approved fees of under $10,000 for their work.

*Third*, venue is proper in the Richmond Division of the Eastern District of Virginia because one of Ascena's affiliated debtors was incorporated in Virginia and maintained its registered office in Richmond. Under the applicable venue statute and the local bankruptcy rules, that affiliated debtor could commence a Chapter 11 case in the Richmond Division of the Eastern District of Virginia, and as a result, every other affiliated debtor in this bankruptcy proceeding could do so as well. No party has objected to venue in this bankruptcy proceeding.

## I.   Any Rulings In The *Purdue* Appeal Will Support Ascena Or Will Be Irrelevant To This Appeal.

The first point that the Order asks the parties to address is: "Whether any similarities exist between this appeal and the issues in the pending appeal of *In re Purdue Pharma, L.P., et al.*, 7:2lcv08271-CM, in the Southern District of New York and, if so, what—if any—impact the rulings in that case may have on this case in terms of persuasive authority." Order.1.[1]

---

[1] To clarify, the specific appeal referenced in the Order (No. 21-cv-8271) is the appeal initiated by the State of Oregon. That appeal, however, is one of 16 appeals challenging the order confirming the *Purdue* Chapter 11 plan. Moreover, each one of those appeals—which involve several other states, the U.S. Trustee, the United States, and certain other parties—are now consolidated before Judge McMahon, and the lead case is No. 21-cv-7532. Oregon has filed its opening brief in the consolidated appeal, and that brief is only two pages and incorporates by reference briefs from other parties (specifically, (1) the brief from California and (2) the brief from

As this Court is aware, this appeal involves four issues:  (1) whether this appeal is equitably moot; (2) whether the bankruptcy court properly approved the Third-Party-Release Provision in Ascena's plan; (3) whether the bankruptcy court properly approved the Exculpation Provision in Ascena's plan; and (4) whether the bankruptcy court properly addressed confirmation issues at the confirmation stage. *See* Ascena.Br.5.  The third and fourth of these issues are not presented in the *Purdue* appeal.  The first and second issues—*i.e.*, equitable mootness and the propriety of third-party-release provisions—are presented in the *Purdue* appeal.  But any rulings by the *Purdue* district court on these issues either are likely to favor Ascena in this appeal—specifically, as to (1) equitable mootness and (2) a bankruptcy court's subject-matter jurisdiction and constitutional authority to approve third-party-release provisions—or will be irrelevant to this appeal given critical differences between the third-party-release provisions in the *Purdue* confirmed plan and the plan here.

## A.    Equitable Mootness

The first issue in this appeal is whether it is equitably moot.  *See* Ascena.Br.30-40.  In the *Purdue* appeal, the district court has already issued one ruling regarding equitable mootness.  *See In re Purdue Pharma L.P.*, No. 21-cv-

---

Washington, Rhode Island, Delaware, Vermont, and Connecticut).  *See* Dkt.52, No. 21-cv-8271 (S.D.N.Y. filed Oct. 25, 2021).  Because Oregon's appeal presents essentially the same issues as the other appeals, this supplemental brief discusses the consolidated *Purdue* appeal in general rather than Oregon's appeal specifically.

7966, 2021 WL 4803909 (S.D.N.Y. Oct. 13, 2021).   That ruling firmly supports Ascena's argument that this appeal is equitably moot.

In *Purdue*, the bankruptcy court entered its confirmation order on September 17, 2021.  *See id.* at *3.  To avoid a determination of equitable mootness on appeal, several parties expeditiously sought a stay pending appeal of the confirmation order. For example, the U.S. Trustee filed a stay motion in the bankruptcy court two days *before* the confirmation order and asked for expedited consideration, and he filed an amended stay motion just four days after the confirmation order.  *See id.* at *4.  Various other parties likewise filed stay motions in the bankruptcy court as early as two days after the confirmation order.  *See id.*  Furthermore, just 21 days after the confirmation order, the U.S. Trustee filed a stay motion in the district court.  *See id.*

The district court denied a stay because it saw no "real threat" of equitable mootness.  *Id.* at *6.  The court observed that the doctrine is "alive and well in the Second Circuit," but explained that equitable mootness "is never found unless 'the debtor's reorganization plan has been substantially consummated.'"  *Id.* at *1, *5 (emphasis omitted).  The debtors, however, had taken "[n]o step" whatsoever to consummate their plan.  *Id.* at *6.  The court also noted that equitable mootness is less appropriate if the appellant "pursued with diligence all available remedies to obtain a stay of execution of the objectionable order."  *Id.* at *5.  It then held that, given the

U.S. Trustee's diligent attempts to pursue a stay, "no one can say that the U.S. Trustee has slept on his rights or failed to take any and all steps available to him."  *Id.* at *6.

Given this ruling, it is clear that equitable mootness is unlikely to play a role in the *Purdue* appeal moving forward.[2]  But the *Purdue* court's order starkly demonstrates why a different outcome is warranted here.  *See* Ascena.Br.30-40.  Quite unlike the U.S. Trustee in the *Purdue* appeal, Appellants here unquestionably "slept on [their] rights" and "failed to take any and all steps available to [them]" to forestall the "execution of the objectionable order."  Specifically, (1) only one Appellant—the U.S. Trustee—ever sought a stay of the February 25 confirmation order; (2) he inexplicably waited 33 days after the order's entry to do so; (3) he never sought expedited consideration of that motion, so the bankruptcy court did not decide it until three months later; (4) he did not seek expedited consideration of his stay motion in this Court; and (5) no Appellant ever made any effort to accelerate consideration of this appeal on the merits—just the opposite.  *See* Ascena.Br.31-33.  In the mean-

---

[2] In fact, on November 9, 2021, the *Purdue* debtors stipulated that they will not put their plan into effect until (1) Judge McMahon resolves the appeal in the district court or (2) December 31, 2021, whichever is earlier.  The debtors also stipulated that they will not use any pre-effective-date motions to assert equitable mootness. *See* Rick Archer, *Purdue Agrees Not To Finalize Ch. 11 Plan Until Appeals Done*, Law360 (Nov. 9, 2021), https://bit.ly/3BYpmEl.

time—unlike in *Purdue*, and as the U.S. Trustee here has conceded—Ascena substantially consummated its plan, which includes the Third-Party-Release and Exculpations Provisions that are the subjects of this appeal. *See* U.S.Trustee.Reply.24 (acknowledging that Ascena's "chapter 11 plan has been substantially consummated").

In short, the same factors that demonstrate why the *Purdue* appeal does *not* warrant dismissal on equitable-mootness grounds underscore why this one *does*. The order in the *Purdue* appeal confirms that this Court can and should dismiss this appeal without even reaching the merits. *See* Ascena.Br.30-40.

## B.    Third-Party-Release Provision

The second issue in this appeal concerns the propriety of the Third-Party-Release Provision in Ascena's plan—an issue that includes a challenge by the Securities Plaintiffs (who lack appellate standing) regarding the bankruptcy court's subject-matter jurisdiction and constitutional authority to approve the provision. *See* Ascena.Br.41-86. The *Purdue* appeal also involves a dispute over the propriety of a third-party-release provision and the bankruptcy court's authority to approve it. *See, e.g.*, Dkt.91 at 25-58; Dkt.94 at 18-44; Dkt.95 at 6-14; Dkt.101 at 11-39, No. 21-cv-7532 (S.D.N.Y. filed Oct. 25-26, 2021). But the third-party-release provision at issue in the *Purdue* appeal is orders of magnitude different from the one in Ascena's plan. Hence, any ruling in the *Purdue* appeal regarding the propriety of that release

will be largely irrelevant here.  And any ruling in the *Purdue* appeal regarding a bankruptcy court's authority to approve third-party-release provisions is almost certain to favor Ascena, because the *Purdue* district court judge has already held that bankruptcy courts have such authority.

1.  As Ascena has explained, third-party-release provisions come in two varieties:  "consensual" and "nonconsensual."  *See* Ascena.Br.7-8, 42-46.  Third-party-release provisions are "tolerated if the affected creditors consent," as the Second Circuit has observed.  *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005).  In fact, consensual third-party-release provisions are "generally approve[d]" by courts nationwide.  8 *Collier on Bankruptcy* ¶1141.02[5][b] (16th ed. 2021) ("*Collier*").  And those courts widely agree that a third-party-release provision is consensual when a debtor provides notice of the provision to affected third parties and an opportunity to opt-out—*i.e.*, when a debtor deploys the same kind of opt-out procedures that are deployed in class-action litigation.  *See* Ascena.Br.8, 45-46.

By contrast, nonconsensual third-party-release provisions—*e.g.*, those that do *not* permit opt-outs—are more controversial.  Indeed, there is a circuit split over whether nonconsensual third-party-release provisions are permissible, albeit a lopsided one, since a large majority of courts of appeals (including the Second and Fourth Circuits) have approved their use in appropriate circumstances.  7 *Collier*

¶1123.02[6][a].  In determining whether a particular nonconsensual third-party-release provision is warranted, courts conduct a "fact-intensive inquiry that will vary from case to case," and the factors that are relevant to the inquiry can differ from circuit to circuit.  *See* 8 *Collier* ¶1141.02[5][c] & n.67.  Thus, for instance, the Fourth Circuit has "commend[ed]" consideration of six factors.  *Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 711-12 (4th Cir. 2011).  By comparison, the Second Circuit has concluded that any inquiry into the propriety of nonconsensual third-party-release provisions "is not a matter of factors and prongs," but that such provisions are nevertheless permissible when "truly unusual circumstances render the release terms important to success of the plan."  *Metromedia*, 416 F.3d at 142-43.

The stark differences between consensual and nonconsensual third-party-release provisions demonstrate why any ruling regarding the propriety of the provision at issue in the *Purdue* appeal will have no persuasive value here.  The Third-Party-Release Provision in Ascena's plan is *consensual*:  That provision contains an opt-out mechanism, and Ascena provided sufficient notice of the provision to affected parties and the means for opting-out.  *See* Ascena.Br.46-48.  By contrast, it is undisputed that the third-party-release provision in the *Purdue* appeal is *nonconsensual*.  *See In re Purdue Pharma L.P.*, No. 19-23649 (RDD), 2021 WL 4240974, at *35

(Bankr. S.D.N.Y. Sept. 17, 2021) (addressing "the objections to the plan's noncon-sensual release and injunction of third-party claims against the shareholder settling parties").[3]

In fact, in the *Purdue* appeal, the U.S. Trustee, the United States, and other parties have protested that the third-party-release provision cannot stand *precisely because it did not contain an opt-out mechanism*. *See, e.g.*, Dkt.91 at 27, No. 21-cv-7532 (S.D.N.Y. filed Oct. 25, 2021) (U.S. Trustee: "The Supreme Court has held that in adjudicating claims for monetary damages, 'due process requires at a mini-mum that an absent plaintiff be provided with an opportunity to remove himself from the class[.]'"); *id.* at 26 n.6 (U.S. Trustee: "[A]t no point were victims ever asked whether they consented to give up their rights to sue the Sackler Family and oth-ers."); Dkt.94 at 18, No. 21-cv-7532 (S.D.N.Y. filed Oct. 25, 2021) (United States: "In exchange for the involuntary release of civil claims against the Sacklers and oth-ers, the Debtors' creditors must accept whatever payment the Plan provides, even if they do not consent, with no chance to opt out."); *id.* at 23 (United States: "The

---

[3] The third-party-release provision at issue in the *Purdue* appeal provides that "the Shareholder Released Parties … shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released … by the Releasing Par-ties from any and all Causes of Action" that are "based on or relating to, or in any manner arising from, in whole or in part, … the Debtors" and "as to which any con-duct, omission or liability of any Debtor or any Estate is the legal cause or is other-wise a legally relevant factor." Dkt.3726 at §10.7(b), No. 19-23649 (Bankr. S.D.N.Y. filed Sept. 2, 2021).

Shareholder Release, a forced settlement, violates due process because the Debtors and the consenting parties cannot agree to dispose of the rights of non-consenting parties, with no opportunity for dissatisfied claimants to opt out."). Thus, not only is the *Purdue* appeal materially distinguishable from this appeal in this respect, but the arguments that the U.S. Trustee and United States (among others) are making in that case *support* Ascena's position—and the propriety of the Third-Party-Release Provision—here.

Because the Third-Party-Release Provision in Ascena's plan is consensual, this Court need only decide whether the bankruptcy court properly exercised its "broad" equitable authority under §105(a) and §1123(b)(6) of the Bankruptcy Code in approving it. *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990). By contrast, because the third-party-release provision in the *Purdue* appeal is noncon-sensual, the district court there will undertake a substantially different analysis—to determine whether, under the Second Circuit's *Metromedia* decision, the *Purdue* case is one of the "rare cases" where a nonconsensual third-party-release provision is "proper."

In sum, the *Purdue* district court's analysis—addressing a factually and le-gally distinguishable set of circumstances—will have no bearing here. If anything, the arguments of the U.S. Trustee and the United States challenging the third-party-

release provision in *Purdue* support Ascena's position that the Third-Party-Release Provision here is consensual and permissible.[4]

**2.**   That leaves only the question whether bankruptcy courts have subject-matter jurisdiction and constitutional authority to approve third-party-release provisions when confirming Chapter 11 plans.   Several parties in the *Purdue* appeal have asserted that the bankruptcy court lacked such authority to approve the third-party-release provision at issue there.   *See, e.g.*, Dkt.91 at 33-38; Dkt.94 at 31-44; Dkt.95 at 10-14; Dkt.101 at 36-39, No. 21-cv-7532 (S.D.N.Y. filed Oct. 25-26, 2021).   And in this appeal, while the U.S. Trustee has not raised any such concerns, the Securities Plaintiffs have done so (albeit only after perfunctorily asserting and barely developing the argument below, and despite lacking appellate standing since they opted out of the Third-Party-Release Provision).   *See* Ascena.Br.52-60.

As the parties to the *Purdue* appeal have already recognized, however, the district court judge presiding over that appeal—Judge McMahon—has already examined this question at length.   *See, e.g.*, Dkt.95 at 11, No. 21-cv-7532 (S.D.N.Y.

---

[4] Appellants here have argued that the Third-Party-Release Provision in Ascena's plan must satisfy each of the six factors mentioned in *Behrmann* even if the provision is consensual.   That argument is plainly wrong, as Ascena has explained.   *See* Ascena.Br.60-63.   But even assuming *arguendo* that Appellants are right, the *Behrmann* analysis is not coextensive with the analysis mandated by *Metromedia*, which eschewed "factors and prongs."   416 F.3d at 142.   Thus, the district court's *Metromedia* analysis in the *Purdue* appeal is unlikely to inform any *Behrmann* analysis here—which, again, is unwarranted in the first place.

filed Oct. 25, 2021).  In particular, in *In re Kirwan Offices S.à.r.l.*, 592 B.R. 489 (S.D.N.Y. 2018), Judge McMahon explicitly held that bankruptcy courts have subject-matter jurisdiction to approve Chapter 11 plans with third-party-release provisions.  *See id.* at 504 (citing 28 U.S.C. §157(b)(2)(L) and concluding that "[a] bankruptcy court acts pursuant to its core jurisdiction when it considers the … release of claims against a third-party, non-debtor in connection with the confirmation of a proposed plan of reorganization, which is a statutorily-defined core proceeding").[5] Judge McMahon also explicitly held that, for a variety of reasons, bankruptcy courts have constitutional authority to approve Chapter 11 plans with third-party-release provisions.  *Id.* at 511-12.

The reasoning in Judge McMahon's thorough decision applies with full force here.  Indeed, in this appeal, Ascena has repeatedly cited Judge McMahon's analysis in *Kirwan*, including to note that *Kirwan* has squarely rejected the Securities Plaintiffs' arguments.  *See* Ascena.Br.56-60.  Unless Judge McMahon takes the highly unusual step of reversing course on this issue (thereby diverging from numerous other courts that have embraced reasoning just like *Kirwan*'s), the *Purdue* appeal is

---

[5] *Kirwan* dealt specifically with an "involuntary release," 592 B.R. at 504, but the subject-matter-jurisdiction analysis is no different when, as here, a consensual third-party-release provision is at issue, since plan confirmation is a statutorily defined core proceeding in either scenario.

likely only to confirm that the Securities Plaintiffs' challenge to the bankruptcy court's authority is fundamentally misguided.[6]

## C.   Exculpation Provision

The third issue in this appeal, which only the U.S. Trustee has raised, concerns the propriety of the Exculpation Provision in Ascena's plan.  As Ascena has explained, that provision is clearly appropriate too.  *See* Ascena.Br.86-94.  Although the plan under review in the *Purdue* appeal also contains an exculpation provision, *see* Dkt.3726 at §10.12, No. 19-23649 (Bankr. S.D.N.Y. filed Sept. 2, 2021), no party to that appeal (including the U.S. Trustee) has contested it.  As such, the rulings in the *Purdue* appeal will have no persuasive value with respect to this issue.

## D.   Confirmation Process

The fourth issue in this appeal—which, again, only the U.S. Trustee has raised—concerns whether the bankruptcy court abused its discretion in addressing confirmation issues at the confirmation stage.  As Ascena has explained, the bankruptcy court plainly did no such thing.  *See* Ascena.Br.94-96.  The *Purdue* appeal

---

[6] The *Purdue* appeal also addresses whether a bankruptcy court has the authority to confirm a nonconsensual third-party-release provision that encompasses a state's law-enforcement claims.  *See, e.g.*, Dkt.95 at 10, No. 21-cv-7532 (S.D.N.Y. filed Oct. 25, 2021) (California:  "A bankruptcy court lacks both the statutory and constitutional authority to enter a final judgment on California's civil law-enforcement claims against the Sacklers, which allege violations of state law only."); Dkt.101 at 11, No. 21-cv-7532 (S.D.N.Y. filed Oct. 26, 2021) (Washington, et al.).  That issue, however, is not present here:  Ascena's plan expressly stated that government claims are not released.  *See* UST.App.712-13, 2660.

does not implicate a similar issue.  As such, the rulings in that appeal will have no persuasive value with respect to this issue.

*        *        *

In sum, the *Purdue* district court's ruling addressing equitable mootness confirms that equitable mootness is appropriate here.  Its prior ruling in *Kirwan* establishes that a bankruptcy court has authority to confirm Chapter 11 plans containing third-party-release provisions, and it is extremely unlikely that the court will reverse course in the *Purdue* appeal.  And any ruling in the *Purdue* appeal on the propriety of the *nonconsensual* third-party-release provision at issue there will have no bearing on the propriety of the *consensual* third-party-release provision here; indeed, the arguments by the U.S. Trustee and the United States challenging the *Purdue* release firmly *support* the conclusion that the Third-Party-Release Provision in this case is consensual and permissible.

## II.     The Bankruptcy Court Approved Fees For Ascena's Counsel In A May 2021 Order That No Party Appealed.

The second point that the Order asks the parties to address is:  "Each law firm involved in this appeal shall state the total amount of fees approved for their firm in this Bankruptcy Proceeding to date, along with the following: (a) the highest non-blended hourly rate approved to be paid to an attorney in their firm for this proceeding; (b) the name of the attorney for the highest non-blended rate; and (c) the amount

of the law firm's total approved fee that is based on that attorney's work." Order.1-2.

Ascena is represented by two law firms in this appeal—Kirkland & Ellis and Cooley, both of which also represented Ascena in the bankruptcy court. With respect to Kirkland & Ellis, in a final order dated May 12, 2021, the bankruptcy court approved $7,419,907.50 in total fees for work performed from the petition date (July 23, 2020) through plan confirmation (February 25, 2021). *See* Bankr.Dkt.2134 at 6. That approved fee amount reflected "agreed upon reductions" that Kirkland & Elis negotiated with the U.S. Trustee. Bankr.Dkt.2134 at 6 n.1.[7] The Kirkland & Ellis attorney with the highest approved non-blended hourly billing rate is Chad J. Husnick, P.C., with an hourly billing rate of $1,595.00. *See* Bankr.Dkt.2010 at 3. Mr. Husnick billed 0.50 hours in this bankruptcy proceeding, and the bankruptcy court approved a fee of $797.50 for that work. *See* Bankr.Dkt.2010 at 3.

---

[7] Bankruptcy courts regularly approve higher fees in similarly complex bankruptcy cases in the retail industry. *See, e.g.*, Order, Dkt.2062, *In re Remington Outdoor Co., Inc.*, No. 20-81688 (CJR) (Bankr. N.D. Ala. filed July 1, 2021) ($13,678,673.00); Order, Dkt.1276, *In re BBGI US, Inc.*, No. 20-11785 (CSS) (Bankr. D. Del. filed June 17, 2021) ($10,502,825.50); Order, Dkt.1729, *In re Vitamin OldCo Holdings, Inc. (f/k/a GNC Holdings, Inc.)*, No. 20-11662 (KBO) (Bankr. D. Del. filed Dec. 28, 2020) ($13,738,740.16); Order, Dkt.2146, *In re Neiman Marcus Grp. Ltd. LLC*, No. 20-32519 (DRJ) (Bankr. S.D. Tex. filed Dec. 10, 2020) ($10,334,120.00); Order, Dkt.1101, *In re Chinos Holdings, Inc.*, No. 20-32181 (KLP) (Bankr. E.D. Va. filed Nov. 23, 2020) ($13,500,196.04); Order, Dkt.2056, *In re Payless Holdings LLC*, No. 19-40883 (Bankr. E.D. Mo. filed Apr. 16, 2020) ($17,689,030).

With respect to Cooley, in the same May 12, 2021 final order, the bankruptcy court approved $978,894.12 in total fees for work performed from the petition date (July 23, 2020) through plan confirmation (February 25, 2021).  *See* Bankr.Dkt.2134 at 6.  That approved fee amount likewise reflected "agreed upon reductions" that Cooley negotiated with the U.S. Trustee.  Bankr.Dkt.2134 at 6 n.1.  The Cooley attorney with the highest approved non-blended hourly billing rate is Robert L. Eisenbach III, with an hourly billing rate of $1,345.00.  *See* Bankr.Dkt.2011 at 8.  Mr. Eisenbach billed 6.3 hours in this bankruptcy proceeding, and the bankruptcy court approved a fee of $8,473.50 for that work.  *See* Bankr.Dkt.2011 at 8.

Neither the U.S. Trustee nor any other party lodged any objection to the fees requested in the firms' fee application, and no party appealed the bankruptcy court's final fee order.

## III.   Venue For This Bankruptcy Proceeding Is Proper In The Richmond Division Of The Eastern District Of Virginia.

The third point that the Order asks the parties to address is:  "The propriety of venue in the Richmond Division of the Eastern District of Virginia for this Bankruptcy Proceeding."  Order.2.

In bankruptcy cases, the venue analysis begins with 28 U.S.C. §1408.  As relevant here, that statute allows a debtor to "commence[]" a bankruptcy proceeding "in the district court for the district … in which the domicile … of the … entity that is the subject of such case ha[s] been located for the one hundred and eighty days

17

immediately preceding such commencement." *Id.* §1408(1).  That statute also allows a debtor to "commence[]" a bankruptcy proceeding "in the district court for the district … in which there is pending a case under title 11 concerning such person's affiliate[.]" *Id.* §1408(2).

Virginia is divided into two judicial districts:  the Eastern District and the Western District.  *See id.* §127.  The Eastern District includes four geographic divisions, one of which is the Richmond Division, which encompasses the city of Richmond.  *See* Local Bankr. R. 1071-1(B)(4).  When a debtor files "[a] petition seeking relief under the Bankruptcy Code" in the Eastern District, it "shall be filed in the division in which the debtor's domicile, residence, principal place of business or principal assets were located for the greater part of the 180 days immediately preceding the filing of the petition."  Local Bankr. R. 5005-1(A)(1).

In light of these statutes and rules, this bankruptcy proceeding is properly venued.  This bankruptcy proceeding involves various affiliated debtors, one of which is DBCM Holdings, LLC ("DBCM"), which incorporated in Virginia in 2003.  *See* Chapter 11 Voluntary Petition, Dkt.1 at 3, 18, *In re DBCM Holdings, LLC*, No. 20-33112 (Bankr. E.D. Va. filed July 23, 2020).  When an entity is incorporated in a particular state, it is "domiciled" there for purposes of the venue statute.  *See* 1 *Collier* ¶4.02[2][b] ("A corporation's domicile is generally held to be its state of incorporation.").  Furthermore, DBCM maintained its registered office specifically in

18

Richmond.  Accordingly, venue is proper for DBCM in the Richmond Division of the Eastern District of Virginia under 28 U.S.C. §1408(1) and Local Bankruptcy Rule 5005-1(A)(1).  And given DBCM's pending Chapter 11 case, the remaining affiliated debtors properly commenced their own Chapter 11 cases in the same jurisdiction under 28 U.S.C. §1408(2).[8]

## CONCLUSION

For the reasons set forth in Ascena's merits brief and above, the Court should dismiss this appeal as equitably moot or, in the alternative, affirm the bankruptcy court.

---

[8] No party has objected to venue during this bankruptcy proceeding, and any such objection would be forfeited by this point. *See, e.g.*, 28 U.S.C. §1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."); 1 *Collier* ¶4.06[3] ("Section 1408, dealing with venue of cases under title 11, is not jurisdictional.  Thus, improper venue can be waived, as is the case in ordinary civil litigation." (footnote omitted)).

Respectfully submitted,

GEORGE W. HICKS, JR. (*pro hac vice*)
ANDREW C. LAWRENCE (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
george.hicks@kirkland.com

EDWARD O. SASSOWER, P.C.
STEVEN N. SERAJEDDINI, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(202) 446-4800

JOHN R. LUZE
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

*/s/ Cullen D. Speckhart*
CULLEN D. SPECKHART (VSB 79096)
*Counsel of Record*
OLYA ANTLE (VSB 83153)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800
cspeckhart@cooley.com

*Counsel for Appellee Mahwah Bergen Retail Group, Inc.*

Date: November 15, 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with this Court's November 5, 2021 order because it does not exceed 20 pages.

2. This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the typestyle requirements of Fed. R. Bankr. P. 8015(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

Date: November 15, 2021

*/s/ Cullen D. Speckhart*
Cullen D. Speckhart

## CERTIFICATE OF SERVICE

I hereby certify that, on November 15, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Virginia by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: November 15, 2021

*/s/ Cullen D. Speckhart*
Cullen D. Speckhart