Nos. 3:21-cv-167-DJN (Lead Case), 3:21-cv-166 & 3:21-CV-00205(Consolidated)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

In re RETAIL GROUP INC, *et al.*, Debtors.

JOEL PATTERSON, *et al.* & JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4, Appellants,

v.

MAHWAH BERGEN RETAIL GROUP, INC., Appellee.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Jointly Administered Bankruptcy Case No. 20-33113-KRH

## SECOND SUPPLEMENTAL BRIEF OF APPELLANTS
## JOEL PATTERSON AND MICHAELLA CORPORATION

Michael Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Michael Papandrea (*pro hac vice*)
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500
metkin@lowenstein.com
abehlmann@lowenstein.com
mpapandrea@lowenstein.com

Ronald A. Page, Jr.
Virginia Bar No. 71343
RONALD PAGE, PLC
P.O. Box 73087
N. Chesterfield, Virginia 23235
(804) 562-8704
rpage@rpagelaw.com

*Counsel to Appellants Joel Patterson and Michaella Corporation*

## CORPORATE DISCLOSURE STATEMENT

Appellant Joel Patterson is a natural person. Appellant Michaella Corporation has no parent corporation, and no publicly held corporation owns an interest of ten percent or more in Appellant Michaella Corporation.

Joel Patterson and Michaella Corporation ("Appellants"), court-appointed lead plaintiffs in *In re Ascena Retail Group, Inc. Securities Litigation*, Case No. 19-cv-13529 (D.N.J.) (the "Securities Litigation") and appellants in two of the three above-captioned consolidated appeals (the "Appeals")[1] from orders entered by the Bankruptcy Court in the chapter 11 bankruptcy cases (the "Bankruptcy Proceeding") of the appellee ("Appellee") and its affiliated debtors (collectively with Appellee, the "Debtors"), hereby submit this supplemental brief pursuant to the Court's order entered on November 18, 2021 [ECF No. 54], and respectfully state as follows in response to each of the five issues raised therein:

1. *Whether the sheer breadth of the non-debtor releases alone, including the breadth of the parties deemed to release and be released, as well as the range of claims released, violates the Supreme Court's holding in* Stern v. Marshall, *564 U.S. 462 (2011). Additionally, does the sheer breadth of the non-debtor releases and the Bankruptcy Court's failure to examine each party deemed to release and be released, as well as each type of claim to be released, including whether such claim constitutes a core or non-core claim, preclude appellate review of the releases?*

Because the third-party release (the "Third-Party Release") contained in the Debtors' chapter 11 plan of liquidation (the "Plan") purports to release the direct

---

[1] These two Appeals have been consolidated with a third appeal brought by the United States Trustee for Region 4 (the "UST Appeal") for procedural purposes but not for purposes of decision. As discussed below, the relief sought in the UST Appeal is significantly broader than the narrowly tailored relief Appellants seek in these Appeals. Appellants do not seek to unwind confirmation or to strike the third-party release in its entirety, but rather, seek only to avoid the gratuitous and unjustified release of their claims and the claims of the proposed class in the Securities Litigation against two of the Debtors' former directors and officers.

claims of Appellants and the Class against the two non-debtor defendants (the "Individual Defendants") in the Securities Litigation (the "Securities Claims"), the release unquestionably violates *Stern* on the existing record. The Securities Claims are direct claims against the Individual Defendants under the federal securities laws. The Securities Claims did not arise in the Debtors' Bankruptcy Proceeding, nor could they ever be addressed through the bankruptcy claims process because the Individual Defendants were not debtors. Accordingly, as discussed in Appellants' Opening Brief and Reply Brief, the Third-Party Release was effectively a final judgment dismissing the Securities Claims with prejudice, which the Bankruptcy Court lacked constitutional adjudicatory authority to enter pursuant to *Stern*. *See* Appellants' Opening Brief at 41-46.

Despite the extraordinarily expansive scope of the Third-Party Release and the host of unidentified parties and claims potentially affected by it, Appellants' Appeals involve only a narrowly defined set of parties and claims: the Securities Claims against the two Individual Defendants. Irrespective of whether the Bankruptcy Court examined the Individual Defendants as released parties or the Securities Claims as released claims in any detail, the uncontroverted facts in the record on appeal are sufficient for this Court to find that the Third-Party Release was impermissible under *Stern* as applied to those specific parties and claims.

The Individual Defendants are Appellee's former CEO and CFO, both of whom left Appellee's employ prior to its bankruptcy filing and contributed nothing whatsoever to the Debtors' failed reorganization efforts and eventual liquidation. The Securities Claims are claims for monetary damages based upon the Individual Defendants' violations of the Securities Exchange Act of 1934, which predate and are wholly unrelated to the Chapter 11 Cases. It is indisputable that the Securities Claims against the Individual Defendants are not core proceedings under 28 U.S.C. § 157(b)(2), do not arise from the bankruptcy itself, and could never be resolved in the bankruptcy proof of claim process. *See Stern*, 564 U.S. at 499 ("[T]he question is whether the action at issue [1] stems from the bankruptcy itself or [2] would necessarily be resolved in the claims allowance process."). No further development of the factual record is necessary for this Court to make that determination.

Accordingly, the Bankruptcy Court lacked constitutional adjudicatory authority to approve the Third-Party Release as applied to the Securities Claims against the Individual Defendants. *Id*. Any conclusion to the contrary would be reviewed by this Court *de novo* in any event and thus it is well within this Court's authority to review – and overturn – the Third-Party Release to the limited extent requested by Appellants upon the existing record. *See, e.g.*, *In re Harford Sands, Inc.*, 372 F.3d 637, 639 (4th Cir. 2004) (noting that legal conclusions are reviewed *de novo*).

2.  *In the Brief of Appellee John P. Fitzgerald, III, Acting United States Trustee for Region 4, the Trustee requests that the Court "(1) deem the Third-Party Release and Exculpation Clause to be unenforceable, or (2) in the alternative, to deem all Releasing Parties to have opted out of the Third-Party Release and Exculpation Clause." (ECF No. 35 at 51.) In the supplemental briefs, the parties shall address the precise remedy that the Court should grant if the Court finds the non-debtor releases and/or exculpation clause to be unenforceable and finds that this appeal is not equitably moot.*

The relief Appellants seek can be provided through any one of three possible remedies: deeming Appellants and the Class to have opted out of the Third-Party Release, excluding the Individual Defendants from the definition of "Released Parties" under the Plan, or categorically excluding the Securities Claims from the operation of the Third-Party Release.

First, the Court can direct the Bankruptcy Court to enter an order deeming Appellants and all other members of the Class to have opted out of the Third-Party Release (or deeming Appellants to have opted out of the Third-Party Release on behalf of the entire Class). This is the most efficient means of granting effective relief to Appellants and the Class because it will not alter the Plan in any way and thus avoids any possible dispute over the impact of the Plan's supposed nonseverability clause (which, as discussed below, is not an issue in any event). This remedy is agnostic with regard to the Plan because the Plan does not contain a cap on how many creditors can opt out of the Third-Party Release and did not condition confirmation on the number of creditors who opted out. Rather, this remedy merely invokes a mechanism *already contained in the Plan* to fully and fairly address the

-4-

myriad of procedural, substantive, and constitutional defects in the Plan and Third-Party Release – all without the need to modify, unwind, or otherwise impact the Plan. The Third-Party Release, by its own terms, would simply not apply to Appellants and Class members. *See, e.g.*, Plan Art.I.A.129 ("[A]n Entity shall not be a Releasing Party if it . . . opt(s) out of the releases contained in the Plan[.]").[2]

Second, this Court can direct the Bankruptcy Court to enter an order excluding the two Individual Defendants from the definition of "Released Party" under Article I.A.128 of the Plan. Third, the Court can direct the Bankruptcy Court to enter an order deeming the Third-Party Release inapplicable to the Securities Claims against the Individual Defendants, consistent with *Stern*.

Both the second and third alternative remedies would leave the Plan entirely intact except to the extent applicable to the Securities Claims against the Individual Defendants. *See, e.g.*, *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000)

---

[2] In addition to opposing confirmation of the Plan, Appellants also moved for entry of an order of the Bankruptcy Court either recognizing their inherent authority to opt out of the Third-Party Release on behalf of the entire Class, or certifying the Class for the limited purpose of permitting Appellants to do so. *See* Appellants' Record Appendix A00005002, Bankr. Dkt. 740. The constitutional, substantive, and procedural failures warranting such relief – which the Bankruptcy Court erred in choosing not to grant, for the reasons set forth in Appellees' Opening Brief – are intertwined with the flaws in the Plan. Accordingly, deeming the Class to have opted out of the Third-Party Release, or deeming Appellants to have opted out on behalf of the Class, will provide Appellants and the Class a complete remedy for the Bankruptcy Court's erroneous decisions underlying both of these Appeals.

("The releases (or some of the releases) could be stricken from the plan without undoing other portions of it."); *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 228 (3d Cir. 2003) (noting that the appellant had only requested to strike a provision indemnifying a professional for negligent conduct from the Plan, and finding that if the court "were to modify the indemnity provision, the Plan would otherwise survive intact"). Moreover, as discussed below, it is not credible to assume that the Debtors and their supporting constituencies would sacrifice confirmation of the Plan if the Securities Claims or the Individual Defendants are carved out from the Third-Party Release – and the nonseverability clause does not preclude this Court from granting this narrow relief. *See, e.g., In re Charter Communications, Inc.*, 691 F.3d 476, 485 (2d Cir. 2012) ("[A] nonseverability clause standing on its own cannot support a finding of equitable mootness.").[3]

---

[3] As discussed above, the record here is sufficient for the Court to overturn the Third-Party Release of the Securities Claims against the Individual Defendants. However, should this Court decline to grant the relief requested by Appellants, Appellants submit that the Court would need to vacate the Confirmation Order and remand to the Bankruptcy Court for specific factual findings. At a minimum, specific factual findings are necessary to support approval of the Third-Party Release of the Securities Claims against the Individual Defendants. The Bankruptcy Court merely stated that the *Behrmann* factors had been satisfied without making any factual findings, a gesture the Fourth Circuit has described elsewhere as "meaningless." *See Behrmann v. National Heritage Foundation*, 663 F.3d 704, 712-13 (4th Cir. 2011) ("[T]o simply conclude, as the bankruptcy court did, that the Release Provisions [warranted approval in light of the applicable factors] is meaningless in the absence of specific factual findings explaining why this is so.").

> 3. *In the Response Brief for Appellee Mahwah Bergen Retail Group, Inc., Appellee claims that this appeal is equitably moot, in part because the non-debtor releases and exculpation clause are nonseverable from the Plan. (ECF No. 43 at 34-35.) In addressing the appropriate remedy, Appellee shall state whether it would continue to take this position if the Court finds the two provisions unenforceable and the appeal not equitably moot. If so, does a finding that the provisions lack enforceability necessitate a remand to the Bankruptcy Court to unwind the Plan? Likewise, Appellants shall address whether the Plan's "Nonseverability of Plan Provisions" permits the relief that they request.*

Deeming the Appellants and all other Class members to have opted out of the Third-Party Release does not implicate the Plan's nonseverability clause for the reasons noted above. The opt-out mechanism, although its implementation during the Bankruptcy Proceeding was problematic, nevertheless is part of the Plan as confirmed.

Likewise, striking the Individual Defendants from the definition of "Released Party" or ordering that the Third-Party Release is unenforceable with respect to the Securities Claims against the Individual Defendants would have no impact whatsoever on Appellee, creditors, or any third parties other than the Individual Defendants (whose release is completely gratuitous, and who contributed nothing to the Debtors' failed restructuring efforts or their eventual liquidation through the Plan). The mere existence of a boilerplate nonseverability clause in the Plan does not preclude the Court from granting this extremely narrow relief. As the Second Circuit observed in *Charter*:

> Allowing a boilerplate nonseverability clause, without more, to determine the equitable mootness question would give the debtor and other negotiating parties too much power to constrain Article III review. Given the ubiquity of nonseverability clauses in . . . plans, such a rule could moot virtually every appeal where a stay had not been granted . . . . [E]quitable mootness is a practical doctrine that requires courts to consider the actual effects of the relief requested on the debtor's emergence from bankruptcy. While a nonseverability clause may be one indication that a particular term was important to the bargaining parties, a district court cannot rely on such a clause to the exclusion of other evidence.

*In re Charter Communications, Inc.*, 691 B.R. at 485-86. While the *Charter* court ultimately upheld the district court's determination that the appeal before it was equitably moot, the court made clear that the district court "did not rest its decision exclusively on the nonseverability clause." *Id.* at 486. Rather, it dismissed the appeal as equitably moot because the plan settlement and releases being reviewed on appeal were critical components of the debtor's plan that could not be disentangled from the plan. *Id.* ("[The released party] may not be willing to give up the benefit he received . . . without also reneging on at least part of the benefit he bestowed on [the debtor]."). *See also In re Sabine Oil & Gas Corp.*, 2017 WL 477780 at *5 (S.D.N.Y. Feb. 3, 2017) ("The Court notes that there is substantial evidence in the record independent of the non-severability clauses demonstrating that the settlement was integral to the plan of reorganization."); *In re ION Media Networks, Inc.*, 480 B.R. 494, 500 (S.D.N.Y. 2012) ("[T]o nullify the releases while

leaving the remainder of the consummated [Plan] intact would ignore the tradeoff that allowed the parties to settle in the first instance and treat a non-severable provision . . . as dispensible.").

That simply is not the case here. To the contrary, there is no evidence that releasing the Securities Claims against the Individual Defendants is a critical component of the Plan or that removing the Individual Defendants from the definition of "Released Parties" would impact or otherwise undermine the Plan. *See, e.g.,* Appellants' Reply Brief at ¶¶ 31. The Individual Defendants left the Debtors' employ before the Bankruptcy Proceeding and contributed nothing to the Debtors' restructuring efforts or their eventual liquidation through the Plan. The Individual Defendants provided no consideration or other value to the estate in connection with the Plan or the Third-Party Release. The Debtors merely granted a gratuitous release in favor of two former insiders. The Debtors have conceded these critical facts. *See, e.g.,* Transcript of Hearing Held Feb. 25, 2021, A00007480 – A00007643, at 26:5-24 (testifying that the Individual Defendants were neither directly nor indirectly involved in the Debtors' chapter 11 process).

The fact that the Appellee included a self-serving nonseverability clause in the Plan in an effort to hamstring potential confirmation appeals is not a legitimate basis for precluding appellate review of the impermissible Third-Party Release. Moreover, it is simply not credible under these circumstances to believe that the

Debtors and other stakeholders that supported and benefited from confirmation of the Plan would blow it all up if the two former officers and directors were excluded from the Third-Party Release.

4. *If the Court finds the non-debtor releases and/or the exculpation clause unenforceable, and finds that the provisions cannot be severed from the Plan, such that the case must be remanded to the Bankruptcy Court, can the Court further order the Bankruptcy Court to review the attorneys' fees approved in this case for excessiveness and clawback any such excessive fees?*

Appellants did not object to approval of the fees sought by Appellee's professionals in the bankruptcy case and have not appealed from the Bankruptcy Court order approving such fees.  In addition, disgorgement of any of the professional fees of Appellee's counsel would not inure to the benefit of Appellants or their constituents as their claims are not entitled to any distribution from the estate under Appellee's chapter 11 plan of liquidation.  Accordingly, Appellants take no position with respect to the fees of Appellee's counsel.

5. *Finally, each party shall identify the attorney who will argue on its behalf on December 20, 2021, who will be seated at counsel table for each party and the vaccination status of each person who will be seated at counsel table.*

Andrew Behlmann will argue on behalf of the Appellants.  Michael Etkin, Andrew Behlmann, and Ronald A. Page, Jr. will be seated at counsel table behalf of the Appellants.  Messrs. Etkin, Behlmann, and Page are fully vaccinated against COVID-19 and each will submit a *COVID-19 Vaccination Status Attestation* pursuant to General Order 2021-13.

| | |
|---|---|
| Dated: December 2, 2021 | Respectfully submitted, |
| Michael Etkin (*pro hac vice*)<br>Andrew Behlmann (*pro hac vice*)<br>Michael Papandrea (*pro hac vice*)<br>LOWENSTEIN SANDLER LLP<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br>(973) 597-2500<br>metkin@lowenstein.com<br>abehlmann@lowenstein.com<br>mpapandrea@lowenstein.com | <u>/s/ Ronald A. Page, Jr.</u><br>Ronald A. Page, Jr.<br>Virginia Bar No. 71343<br>RONALD PAGE, PLC<br>P.O. Box 73087<br>N. Chesterfield, Virginia 23235<br>(804) 562-8704<br>rpage@rpagelaw.com |

*Counsel to Appellants Joel Patterson and Michaella Corporation*

## **CERTIFICATE OF COMPLIANCE**

The foregoing compiles with the type-volume limitations applicable under this Court's *Order (Requiring Supplemental Briefing)* entered on November 18, 2021 because it does not exceed fifteen (15) pages.

I further certify that the foregoing complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

By   /s/ *Ronald A. Page, Jr.*
      Counsel

## CERTIFICATE OF SERVICE

I hereby certify that, on December 2, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Virginia by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By   /s/ *Ronald A. Page, Jr.*
       Counsel