Nos. 3:21-cv-167-DJN (Lead), 3:21-cv-166 & 3:21-cv-00205 (Consolidated)

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA

In re Retail Group Inc., et al.,

*Debtors*,

Joel Patterson, et al. & John P. Fitzgerald, III,
Acting United States Trustee for Region 4,

*Appellants*,

v.

Mahwah Bergen Retail Group, Inc.,

*Appellee.*

On Appeal from the United States Bankruptcy Court
for the Eastern District of Virginia
Bankruptcy Case No. 20-33113-KRH

### SECOND SUPPLEMENTAL BRIEF FOR
### APPELLEE MAHWAH BERGEN RETAIL GROUP, INC.

George W. Hicks, Jr. (*pro hac vice*)
Andrew C. Lawrence (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
george.hicks@kirkland.com

Edward O. Sassower, P.C.
Steven N. Serajeddini, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(202) 446-4800

Cullen D. Speckhart (VSB 790096)
*Counsel of Record*
Olya Antle (VSB 83153)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800
cspeckhart@cooley.com

John R. Luze
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

*Counsel for Appellee Mahwah Bergen Retail Group, Inc.*
Date: December 2, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

I.   The Third-Party-Release Provision Is Fully Consistent With *Stern*, And Nothing Precludes This Court From Rejecting Appellants' Challenges To That Provision ...........................................1

II.  This Court Would Have To Invalidate The Plan In Its Entirety If It Finds The Third-Party-Release And/Or Exculpation Provisions Unenforceable And The Appeal Not Equitably Moot ........7

III. Ascena Would Continue To Take The Position That The Third-Party-Release And Exculpation Provisions Are Nonseverable From The Plan Under The Circumstances Posed By The Court. .......13

IV.  This Court Lacks Jurisdiction To Order The Bankruptcy Court To Review The Attorneys' Fees Approved In This Case For Excessiveness Or To Clawback Any Such Fees .................................14

V.   George W. Hicks, Jr. Of Kirkland & Ellis Will Present Oral Argument For Ascena, And Two Other Attorneys Will Join Him At Counsel Table ..........................................................................15

CONCLUSION ...................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Barraford v. T & N Ltd.*,
    778 F.3d 258 (1st Cir. 2015) ...................................................................8

*Behrmann v. Nat'l Heritage Found.*,
    663 F.3d 704 (4th Cir. 2011) ...................................................................6

*In re Airadigm Commc'ns, Inc.*,
    616 F.3d 642 (7th Cir. 2010) ...................................................................8

*In re AOV Indus., Inc.*,
    792 F.2d 1140 (D.C. Cir. 1986)...............................................................3

*In re Caterbone*,
    640 F.3d 108 (3d Cir. 2011) ...................................................................15

*In re Charter Commc'ns, Inc.*,
    691 F.3d 476 (2d Cir. 2012) ...............................................................9, 10

*In re Coudert Bros. LLP*,
    673 F.3d 180 (2d Cir. 2012) ...................................................................15

*In re D.C. Diamond Corp.*,
    806 F.App'x 195 (4th Cir. 2020)...........................................................14

*In re FFS Data, Inc.*,
    776 F.3d 12994 (11th Cir. 2015) ..............................................................8

*In re Kirwan Offs. S.à.r.l.*,
    592 B.R. 489 (S.D.N.Y. 2018) ..................................................................3

*In re Kirwan Offs. S.à.r.l.*,
    792 F.App'x 99 (2d Cir. 2019)..................................................................4

*In re Millennium Lab Holdings II, LLC*,
    945 F.3d 126 (3d Cir. 2019) .................................................................2, 4

*In re Sobczak-Slomczewski*,
    826 F.3d 429 (7th Cir. 2016) .................................................................15

*In re Specialty Equip. Companies, Inc.*,
    3 F.3d 1043 (7th Cir. 1993) ......................................................................2

*Kuhn Constr., Inc. v. Diamond State Port Corp.*,
    990 A.2d 393 (Del. 2010)..........................................................................9

*Mac Panel Co. v. Va. Panel Corp.*,
    283 F.3d 622 (4th Cir. 2002) ..................................................................13

*Milic v. McCarthy*,
    613 B.R. 642 (E.D. Va. 2019) .................................................................14

*Stern v. Marshall*,
    564 U.S. 462 (2011) ......................................................................... *passim*

*Tracey v. Franklin*,
    67 A.2d 56 (Del. 1949)................................................................................8

*United States v. Energy Res. Co.*,
    495 U.S. 545 (1990) ....................................................................................2

*Wellness Int'l Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015) ....................................................................................4

**Statutes**

11 U.S.C. §105(a) ...............................................................................................2

11 U.S.C. §1123(b) .............................................................................................2

28 U.S.C. §157(b) ...................................................................................... 1, 2, 4

28 U.S.C. §158(c) .............................................................................................15

**Treatise**

1 *Collier on Bankruptcy* (16th ed. 2021) .................................................................3

**Rule**

Fed. R. Bankr. P. 8002(a) ................................................................................14

Ascena Retail Group, Inc. and its affiliated debtors ("Ascena") respectfully submit this supplemental brief pursuant to the Court's order dated November 18, 2021 ("Order").  *See* Dkt.54.

## I.  The Third-Party-Release Provision Is Fully Consistent With *Stern*, And Nothing Precludes This Court From Rejecting Appellants' Challenges To That Provision.

**1.**  The Order raises two initial questions, the first of which is:

"Whether the sheer breadth of the non-debtor releases alone, including the breadth of the parties deemed to release and be released, as well as the range of claims released, violates the Supreme Court's holding in *Stern v. Marshall*, 564 U.S. 462 (2011)."  Order.1.

The answer to this question is no.  *Stern* was a self-described "narrow" decision in which the Supreme Court addressed two issues:  (1) whether the bankruptcy court had statutory authority under 28 U.S.C. §157(b) to enter final judgment on a state-law tortious-interference counterclaim that Vickie Lynn Marshall had asserted in her bankruptcy case against E. Pierce Marshall (who had previously filed a defamation claim against Vickie in the same bankruptcy case), and (2) if so, whether conferring such authority on the bankruptcy court is constitutional.  *See* 564 U.S. at 468-69, 502.  The Court made short work of the statutory question:  "[T]he plain text of §157(b)(2)(C)" states that "core proceedings" include "'counterclaims by the estate against persons filing claims against the estate,'" and so the bankruptcy court could "enter a final judgment on [Vickie's] tortious interference counterclaim" as a statutory matter.  *Id.* at 475-78.

The Supreme Court concluded, however, that "Article III of the Constitution" did not permit the bankruptcy court to enter final judgment on the counterclaim. *Id.* at 482. That was so because "the action at issue"—a standalone common-law tort claim—did not qualify as "integral to the restructuring of the debtor-creditor relationship": It did not "stem[] from the bankruptcy itself" (or otherwise "flow from a federal statutory scheme"), nor would it "necessarily be resolved in the claims allowance process." *Id.* at 493, 497, 499.

As Ascena has explained, the Third-Party-Release Provision is fully consistent with *Stern*. *See* Ascena.Br.52-60. As to statutory authority, this case—like *Stern*—clearly concerns a core proceeding. Specifically, the plain text of 28 U.S.C. §157(b)(2)(L) states that the "confirmations of plans" are "core proceedings." And in the Bankruptcy Code, Congress expressly gave bankruptcy courts "broad authority," *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990), to confirm plans with "any" "necessary" or "appropriate" provision that is otherwise consistent with the Code, 11 U.S.C. §§105(a), 1123(b)(6). The bankruptcy court thus had the statutory power to confirm Ascena's plan and its constituent components, as other courts have correctly determined in similar circumstances.[1]

---

[1] *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 137 (3d Cir. 2019) ("The Bankruptcy Court indisputably had 'core' statutory authority to confirm the plan" "containing the [nonconsensual] release provisions."); *In re Specialty Equip. Companies, Inc.*, 3 F.3d 1043, 1045 (7th Cir. 1993) ("[A] bankruptcy court does

The bankruptcy court also had constitutional authority to confirm the plan, including the Third-Party Release Provision.  At the outset, "[t]here has never been any doubt"—even "under … *Stern*"—regarding "the constitutional authority of a [bankruptcy court] to enter final orders in" confirmation proceedings, 1 *Collier on Bankruptcy* ¶3.02[3][a] (16th ed. 2021), which is the "operative proceeding" for constitutional purposes here, *Kirwan*, 592 B.R. at 511.  Plan confirmation is self-evidently "integral to the restructuring of the debtor-creditor relationship" and "flow[s] from a federal statutory scheme."  *Stern*, 564 U.S. at 493, 497.  And even if approval of the Third-Party-Release Provision were considered to be the "operative proceeding," the outcome is the same, because release provisions likewise "stem[] from the bankruptcy itself" and "flow from a federal statutory scheme," *id.* at 493, 499, including Bankruptcy Code provisions like §105(a) and §1123(b)(6).  *See, e.g.*, *Kirwan*, 592 B.R. at 511.  Indeed, the Third-Party-Release Provision here is "integral to the restructuring of the debtor-creditor relationship," *Stern*, 564 U.S. at 497, as the

---

have the power to determine the legality of provisions, including releases, incorporated into a reorganization plan."); *In re AOV Indus., Inc.*, 792 F.2d 1140, 1145 (D.C. Cir. 1986) ("[T]he confirmation of a reorganization plan" is "clearly" a "proceeding[] at the core of bankruptcy law," even though the plan's third-party-release provision "may have an impact on claims outside the scope of the immediate proceedings[.]"); *In re Kirwan Offs. S.à.r.l.*, 592 B.R. 489, 504 (S.D.N.Y. 2018) ("A bankruptcy court acts pursuant to its core jurisdiction when it considers the involuntary release of claims against a third-party, non-debtor in connection with the confirmation of a proposed plan of reorganization, which is a statutorily-defined core proceeding.").

bankruptcy court repeatedly emphasized based on the uncontroverted evidence, *see* UST.App.2844, 2894, 2898, 2899; *see also Millennium Lab*, 945 F.3d at 140.

The alleged "sheer breadth" of the Third-Party Release Provision does not alter any of the foregoing analysis.  Order.1.  Whether a release is broad or narrow, the "confirmations of plans" containing such releases remain "core proceedings" in which bankruptcy courts have the statutory authority under 28 U.S.C. §157(b)(2)(L) to render final judgment.  Likewise, whether a release is broad or narrow, the release—and the confirmation of a plan containing it—"stems from the bankruptcy itself" and "flow[s] from a federal statutory scheme."  *Stern*, 564 U.S. at 493, 499. The "breadth" of a release is simply immaterial to a *Stern* analysis—and particularly so here, where the bankruptcy court explicitly found the allegedly broad Third-Party-Release Provision "integral" to Ascena's restructuring.

The Third-Party-Release Provision does not violate *Stern* for another, independent reason.  In *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665 (2015), the Supreme Court explained that "*Stern* was premised on *nonconsent* to adjudication by the Bankruptcy Court," and it emphasized that *Stern* "simply does not govern the question whether litigants may validly consent to adjudication by a bankruptcy court."  *Id.* at 682 (emphasis added).  *Wellness* further observed that *implicit* consent is all that is required.  *See id.* at 683-85; *see also, e.g.*, *In re Kirwan Offs. S.à.r.l.*, 792 F.App'x 99, 103 (2d Cir. 2019).  Here, the affected parties are

subject to the purportedly broad Third-Party-Release Provision *only* because they consented to it after receiving notice and an opportunity to object or opt-out.  *See* Ascena.Br.46-47, 55-56.  Under *Wellness*, it simply does not "violate[] the Supreme Court's holding in *Stern*," Order.1, when a bankruptcy court enters a final order with the parties' consent—regardless whether the matter at issue is broad or narrow.

To be sure, the Securities Plaintiffs resist this conclusion on behalf of putative class members in the Securities Litigation, but they plainly lack standing to do so. *See* Ascena.Br.48-52.  And while the U.S. Trustee has asserted a repeatedly forfeited argument that certain parties received insufficient notice of the opt-out procedures, the bankruptcy court identified the obvious solution if those parties were ever to materialize:  "An adversely affected party could seek relief from the Confirmation Order … on grounds such as excusable neglect if the notice the party was given proves to have been actually deficient."  UST.App.2897; *see* Ascena.Br.71 n.12.

At bottom, *Stern*'s holdings regarding a bankruptcy court's statutory and con-stitutional authority to enter final judgment on a state-law counterclaim have no bearing on this case, which concerns a bankruptcy court's authority to confirm a plan of reorganization containing a release provision—all in the context, no less, of con-sent to the bankruptcy court's adjudication, as opposed to the wholly nonconsensual adjudication in *Stern*.  Characterizing the Third-Party-Release Provision as broad does not alter that conclusion.

**2.**  The second initial question in the Order is:

"Additionally, does the sheer breadth of the non-debtor releases and the Bankruptcy Court's failure to examine each party deemed to release and be released, as well as each type of claim to be released, including whether such claim constitutes a core or non-core claim, preclude appellate review of the releases?"  Order.1.

The answer to this question is also no.  As noted, the bankruptcy court concluded here that the Third-Party-Release Provision is a necessary and appropriate provision of Ascena's plan and that it is consensual because of its opt-out procedures.  *See* Ascena.Br.46-48.  On the merits, Appellants have challenged that determination on various grounds:  the multi-factor balancing test outlined in *Behrmann v. National Heritage Foundation*, 663 F.3d 704 (4th Cir. 2011), applies even to consensual third-party-release provisions, and the Third-Party-Release Provision here cannot satisfy that test; the Third-Party-Release Provision is nonconsensual because the opt-out procedures utilized here are *per se* insufficient; and certain parties received inadequate notice of the opt-out procedures.

Nothing "preclude[s]" the Court, Order.1, from addressing Appellants' contentions (and affirming the confirmation order), assuming *arguendo* that this appeal is not equitably moot.  The alleged "sheer breadth" of the Third-Party Release Provision does not render this Court incapable of reviewing Appellants' arguments, nor does the bankruptcy court's purported "failure to examine each party deemed to release and be released, as well as each type of claim to be released, including whether

such claim constitutes a core or non-core claim." *Id.*  In particular, such granular inquiries are unnecessary to determining whether the bankruptcy court had statutory and constitutional authority to approve the Third-Party Release Provision, because the question is simply whether confirmation of a plan containing a release provision is a core proceeding (it is) and the plan "stems from the bankruptcy itself" or "flow[s] from a federal statutory scheme" (it does).  *Stern*, 564 U.S. at 493, 499.

## II. This Court Would Have To Invalidate The Plan In Its Entirety If It Finds The Third-Party-Release And/Or Exculpation Provisions Unenforceable And The Appeal Not Equitably Moot.

The second question in the Order is:

"In the Brief of Appellee John P. Fitzgerald, III, Acting United States Trustee for Region 4, the Trustee requests that the Court '(1) deem the Third-Party Release and Exculpation Clause to be unenforceable, or (2) in the alternative, to deem all Releasing Parties to have opted out of the Third-Party Release and Exculpation Clause.' (ECF No. 35 at 51.)  In the supplemental briefs, the parties shall address the precise remedy that the Court should grant if the Court finds the non-debtor releases and/or exculpation clause to be unenforceable and finds that this appeal is not equitably moot." Order.1-2.

If this Court finds the Third-Party-Release and/or Exculpation Provision in Ascena's plan unenforceable, while further concluding that this appeal is not equitably moot, the Court will have no choice but to invalidate the plan entirely.

As Ascena has explained, *see* Ascena.Br.15-16, 34-35, the plan contains a provision entitled "Nonseverability of Plan Provisions," which expressly states that, upon plan confirmation, "each term and provision of the Plan" is (1) "integral to the

Plan and may not be deleted or modified without the Debtors' or the Reorganized Debtors' consent" and (2) "nonseverable and mutually dependent." UST.App.2667. Moreover, the bankruptcy court explicitly found, based on "uncontroverted evidence" from several witnesses, that the Third-Party-Release and Exculpation Provision are "an integral part of the Plan." UST.App.2866, 2875; *see also* UST.App.2842 (describing provisions as "part of the holistic structure of the Plan"); UST.App.2547, 2549 (finding provisions "essential" to plan). Accordingly, as a matter of law, an order from this Court "find[ing] the non-debtor releases and/or exculpation clause to be unenforceable," Order.2, would necessarily result in the entire plan falling. *See, e.g.*, *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 664 (7th Cir. 2010) ("Principles of contract law apply to interpreting a plan of reorganization[.]"); *In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015) (same); *Barraford v. T & N Ltd.*, 778 F.3d 258, 263 (1st Cir. 2015) (same); UST.App.2628 (Delaware law governs plan); *Tracey v. Franklin*, 67 A.2d 56, 487 (Del. 1949) (holding, under Delaware law, that "entire agreement" is "unenforceable" when "invalid" provision is "an integral part of the agreement").

Notably, Appellants have never provided any meaningful response to the foregoing. They do not dispute the bankruptcy court's findings, based on the uncontroverted evidence, that the provisions are "integral" to the plan, and they do not challenge the plan's nonseverability provision. At most, they have sought to downplay

the effect of the nonseverability provision, but their arguments are unavailing.

*First*, the Securities Plaintiffs contend that they "do not seek to sever the Third-Party Release." Patterson.Reply.15. But they have explicitly asked this Court to "remove the claims [in] the Securities Litigation from the scope of the Third-Party Release," *id.* at 16, which unquestionably "modif[ies]" that provision (which would otherwise encompass such claims), UST.App.2667.

*Second*, the U.S. Trustee notes that the plan was "severable prior to the plan's confirmation" and invokes *Behrmann* to suggest that the plan thus "would remain viable absent" the provisions at issue. UST.Reply.26. But the plan here—unlike the *Behrmann* plan—separately and specifically provides for nonseverability upon confirmation in light of the "integral" and "mutually dependent" nature of its terms. The U.S. Trustee's argument ignores that critical distinguishing feature and impermissibly renders that portion of the plan superfluous. *See Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) ("[W]e will give each provision and term effect, so as not to render any part of the contract mere surplusage.").

*Third*, Appellants cite *In re Charter Communications, Inc.*, 691 F.3d 476 (2d Cir. 2012), which stated that "[a]llowing a boilerplate nonseverability clause, *without more*, to determine the equitable mootness question would give the debtor and other negotiating parties too much power to constrain Article III review." *Id.* at 485

9

(emphasis added); *see* UST.Reply.26; Patterson.Reply.15.  But as that language reflects, the court was simply considering whether "a nonseverability clause standing *on its own*" could "support a finding of equitable mootness."  *Charter*, 691 F.3d at 485 (emphasis added).  Ascena has never so argued; rather, numerous features of this case establish equitable mootness.  *See* Ascena.Br.31-40.  Regardless, the Second Circuit ultimately held that the lower courts had not relied "exclusively on the nonseverability clause" because the bankruptcy court, "[c]rediting multiple witnesses," "found" that the releases at issue "were critical to the bargain that allowed Charter to successfully restructure" and that "undoing them … would cut the heart out of the reorganization"—with the appellants "point[ing] to no evidence" to the contrary.  *Charter*, 691 F.3d at 486.  That is exactly what happened here in the bankruptcy court.  In short, *Charter* supports Ascena, not Appellants.

*Fourth*, the U.S. Trustee argues that, because Ascena "may consent to deletion or modification of plan provisions after confirmation," then "even if the non-severability provision were given effect," Ascena "may delete or modify" the releases "if this Court determines" that they are "improper" and Ascena "prefers to retain the other provisions intact."  UST.Reply.27.  But presumably this Court—not Ascena—would impose a remedy in that situation (indeed, that is the entire premise of the Court's questions).  Regardless, the U.S. Trustee's argument is nothing more than an admission that, given the nonseverability provision, the entire plan must fall if

the Court finds the Third-Party Release or Exculpation Provisions unenforceable, because the "other provisions" that he invokes consist of *the rest of the plan*.

Critically, Appellants have never disputed that invalidating the plan as a whole would require unwinding countless transactions undertaken to date in reliance on its heretofore validity. These transactions include (1) the distribution of nearly $400 million already made to prepetition lenders; (2) the distribution of over $250 million already made to hundreds of priority and administrative claimants, including all vendor and landlord claimants; (3) the funding of the GUC Trust with $7.25 million; (4) the appointment of a GUC Trust trustee, who has already adjudicated and paid the claims of numerous unsecured claimants; (5) the cancellation of Ascena shares; (6) the rejection and assumption, or assumption and assignment, of executory contracts and unexpired leases; (7) the removal of Ascena's Board of Directors and the discharge of their duties; and (8) the implementation of a plan administrator. *See* Ascena.Br.33-34.

Precisely because any finding that the Third-Party-Release and/or Exculpation Provisions are unenforceable would require these drastic actions, however, it ineluctably follows that *this appeal is equitably moot*. Appellants failed to obtain a stay of the confirmation order (and took no meaningful actions to expedite appellate review); Ascena fully consummated its plan as a result; and to unwind the plan at this late juncture (as of this filing, 280 days since entry of the confirmation order)

would plainly affect the success of the plan and the interests of numerous third parties.  Under Fourth Circuit precedent—where, contrary to Appellants' wishes, *see* UST.Reply.20-23, Patterson.Reply.4-6, the equitable mootness doctrine is alive and well—this case is the poster child for equitable mootness.  *See* Ascena.Br.30-40.

Nor have Appellants offered any remedy that would allow this Court to conclude otherwise.  Indeed, the U.S. Trustee's first proposed "remedy"—that the Court "deem the Third-Party Release and Exculpation Clause to be unenforceable"—is no remedy at all, but rather a *liability* determination, as the Court's question underscores.  *See* Order.1 (asking the parties to identify the "remedy" *if* the Third-Party-Release and Exculpation Provisions are "unenforceable").  The U.S. Trustee's "alternative" remedy—that the Court "deem *all* Releasing Parties to have opted out of the Third-Party Release and Exculpation Clause," *id.* (emphasis added)—is equally untenable, for it ignores the plan's nonseverability provision, disregards the overall importance of the Third-Party-Release and Exculpation Provisions to the plan, and tramples the rights of Releasing Parties who support those provisions and are enjoying their benefits.  The Securities Plaintiffs' requested remedy—that the Court "remand this matter to the Bankruptcy Court with instructions to enter an order excluding the Securities Claims against the Individual Defendants from the effects of the Third-Party Release," Patterson.Opening.Br.87—suffers from the same problems.

The bottom line is that any determination that the Third-Party-Release and/or

Exculpation Provisions are to any extent unenforceable would require the Court to undo a "highly successful" restructuring long after the fact.  UST.App.2902 n.19. Equitable mootness is designed to guard against just that sort of "impractical, imprudent, and therefore inequitable" result.  *Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002).

**III.   Ascena Would Continue To Take The Position That The Third-Party-Release And Exculpation Provisions Are Nonseverable From The Plan Under The Circumstances Posed By The Court.**

The third question in the Order is:

"In the Response Brief for Appellee Mahwah Bergen Retail Group, Inc., Appellee claims that this appeal is equitably moot, in part because the non-debtor releases and exculpation clause are nonseverable from the Plan. (ECF No. 43 at 34-35.)  In addressing the appropriate remedy, Appellee shall state whether it would continue to take this position if the Court finds the two provisions unenforceable and the appeal not equitably moot.  If so, does a finding that the provisions lack enforceability necessitate a remand to the Bankruptcy Court to unwind the Plan? Likewise, Appellants shall address whether the Plan's 'Nonseverability of Plan Provisions' permits the relief that they request."  Order.2.

For the reasons set forth above, the answer to these questions (as directed to Ascena) are yes.  Because the plan provides that the Third-Party-Release and Exculpation Provisions are nonseverable upon confirmation, and because the bankruptcy court expressly found based on the uncontroverted evidence that those provisions are integral to the plan—neither of which points Appellants challenge—Ascena would continue to take the position that the Third-Party-Release and Exculpation

Provisions are nonseverable from the plan if the Court finds those provisions unen-

forceable and the appeal not equitably moot.  Consequently, as explained above, the

plan would have to be unwound *in toto*.

## IV. This Court Lacks Jurisdiction To Order The Bankruptcy Court To Review The Attorneys' Fees Approved In This Case For Excessiveness Or To Clawback Any Such Fees.

The fourth question in the Order is:

"If the Court finds the non-debtor releases and/or the exculpation clause
unenforceable, and finds that the provisions cannot be severed from the
Plan, such that the case must be remanded to the Bankruptcy Court, can
the Court further order the Bankruptcy Court to review the attorneys'
fees approved in this case for excessiveness and clawback any such ex-
cessive fees?"  Order.2.

The answer to this question is no.  As Ascena explained in its first supple-

mental brief, the bankruptcy court entered an order on May 12, 2021 approving at-

torneys' fees in this case for work performed from the petition date (July 23, 2020)

through plan confirmation (February 25, 2021).  *See* Dkt.53 at 15-17 (discussing

Bankr.Dkt.2134).  Under Federal Rule of Bankruptcy Procedure 8002, any party that

wished to challenge that order had to file an appeal to the district court "within 14

days"—*i.e.*, by May 26, 2021.  Fed. R. Bankr. P. 8002(a)(1).  No party ever did so,

however.  Because "Rule 8002's deadline is mandatory and jurisdictional," *Milic v.

McCarthy*, 613 B.R. 642, 647 (E.D. Va. 2019), *aff'd sub nom. In re D.C. Diamond

Corp.*, 806 F.App'x 195 (4th Cir. 2020), the district court (*i.e.*, this Court) lacks

jurisdiction to "order the Bankruptcy Court to review the attorneys' fees approved

14

in this case for excessiveness and clawback any such excessive fees," Order.2; *see also, e.g.*, 28 U.S.C. §158(c)(2) (stating that bankruptcy appeals "shall be taken … in the time provided by Rule 8002 of the Bankruptcy Rules"); *In re Sobczak-Slomczewski*, 826 F.3d 429, 432 (7th Cir. 2016) (holding that "the failure to file a timely notice of appeal" from a bankruptcy court order "strips the district court of jurisdiction to hear the appeal"); *In re Coudert Bros. LLP*, 673 F.3d 180, 185 (2d Cir. 2012) (similar); *In re Caterbone*, 640 F.3d 108, 112 (3d Cir. 2011) (similar); *In re Mouradick*, 13 F.3d 326, 327 (9th Cir. 1994) (similar).

## V.  George W. Hicks, Jr. Of Kirkland & Ellis Will Present Oral Argument For Ascena, And Two Other Attorneys Will Join Him At Counsel Table.

The fifth question in the Order is:

"Finally, each party shall identify the attorney who will argue on its behalf on December 20, 2021, who will be seated at counsel table for each party and the vaccination status of each person who will be seated at counsel table." Order.2.

George W. Hicks, Jr. of Kirkland & Ellis will argue on Ascena's behalf. Mr. Hicks is fully vaccinated against COVID-19 (Moderna). Two attorneys will join Mr. Hicks at counsel table, Steven Serajeddini of Kirkland & Ellis and Olya Antle of Cooley; both are also fully vaccinated (Pfizer and Moderna, respectively).

## CONCLUSION

For the reasons set forth in Ascena's briefing, the Court should dismiss this appeal as equitably moot or, in the alternative, affirm the bankruptcy court.

Respectfully submitted,

GEORGE W. HICKS, JR. (*pro hac vice*)
ANDREW C. LAWRENCE (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
george.hicks@kirkland.com

EDWARD O. SASSOWER, P.C.
STEVEN N. SERAJEDDINI, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(202) 446-4800

JOHN R. LUZE
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

/s/ Cullen D. Speckhart
CULLEN D. SPECKHART (VSB 79096)
*Counsel of Record*
OLYA ANTLE (VSB 83153)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800
cspeckhart@cooley.com

*Counsel for Appellee Mahwah Bergen Retail Group, Inc.*

Date: December 2, 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with this Court's November 18, 2021 order because it does not exceed 15 pages.

2. This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the typestyle requirements of Fed. R. Bankr. P. 8015(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

Date: December 2, 2021

*/s/ Cullen D. Speckhart*
Cullen D. Speckhart

## CERTIFICATE OF SERVICE

I hereby certify that, on December 2, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Virginia by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: December 2, 2021

*/s/ Cullen D. Speckhart*
Cullen D. Speckhart