Nos. 3:21-cv-167-DJN (Lead Case), 3:21-cv-166 & 3:21-CV-00205
(Consolidated)

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

---

In re RETAIL GROUP INC., *et al.*, Debtors.

---

JOEL PATTERSON, *et al*. & JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4, Appellants,
v.
MAHWAH BERGEN RETAIL GROUP, INC., Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

---

**SECOND SUPPLEMENTAL BRIEF OF APPELLANT
JOHN P. FITZGERALD, III,
ACTING UNITED STATES TRUSTEE FOR REGION 4**

---

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
SUMI SAKATA
Trial Attorney

Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel: (202) 307-1399
sumi.sakata@usdoj.gov

JOHN P. FITZGERALD, III
Acting United States Trustee for Region 4
KATHRYN R. MONTGOMERY
Assistant United States Trustee
HUGH M. BERNSTEIN
Trial Attorney

Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Tel: (804) 771-2310
Fax: (804) 771-2330
kathryn.montgomery@usdoj.gov
hugh.m.bernstein@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

RESPONSE...........................................................................................................2

    I.     The Third-Party Release Exceeds the Bankruptcy Court's
Constitutional Authority under *Stern*. ...................................................2

    II.    This Court May Review the Third-Party Release. ...............................6

    III.   The Plan's Non-Severability Provisions Do Not Preclude the Relief
the United States Trustee Seeks. ...........................................................9

    IV.   Reversal of the Confirmation Order Does Not Reopen the Final Fee
Award to Review for Excessiveness on Remand...............................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of New York Trust Co. v. Official Unsecured Creditors' Comm.*
  (*In re Pacific Lumber Co.*),
  584 F.3d 229 (5th Cir. 2009) ..............................................................................10

*Behrmann v. Nat'l Heritage Found.*,
  663 F.3d 704 (4th Cir. 2011) ...............................................................................9

*In re Busy Beaver Bldg. Ctrs, Inc.*,
  19 F.3d 833 (3d Cir. 1994) .................................................................................12

*In re El Paso Refinery, L.P.*,
  257 B.R. 809 (Bankr. W.D. Tex. 2000)...............................................................14

*Exec. Benefits Ins. Agency v. Arkison*,
  573 U.S. 25 (2014)................................................................................................7

*Gold v. Guberman (In re Computer Learning Ctrs., Inc.)*,
  407 F.3d 656 (4th Cir. 2005) ..............................................................................13

*Goldman v. Capital City Mortg. Corp. (In re Nieves)*,
  648 F.3d 232 (4th Cir. 2011) ...............................................................................9

*Grausz v. Englander*,
  321 F.3d 467 (4th Cir. 2003) ..............................................................................14

*In re National Heritage Foundation Inc.*,
  Case No. 09-10525-BFK, Dkt. No. 1061, Order Adjusting
  Permissibility of Release, Exculpation & Injunction Provisions
  (Bankr. E.D. Va. Aug. 27, 2012), *aff'd, Nat'l Heritage Foundation,
  Inc. v. Highbourne Foundation*, 760 F.3d 344 (4th Cir. 2014) .........................10

*R2 Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns,
  Inc.)*,
  691 F.3d 476 (2d Cir. 2012) ...............................................................................11

*Redeye II, LLC v. MorrisAnderson & Assocs. Ltd.* (*In re Swift Air, LLC*),
  624 B.R. 694 (D. Ariz. 2020), *appeal filed*, No. 21-15012 (9th Cir. Jan 4, 2021) ..................................................................................................7

*Stern v. Marshall*,
  564 U.S. 462 (2011) ...........................................................................*passim*

*Travelers Indem. Co. v. Bailey*,
  557 U.S. 137 (2009) ............................................................................3

*Trulis v. Barton*,
  107 F.3d 685 (9th Cir. 1995) ..............................................................3

*Wellness Int'l Network, Ltd. v. Sharif*,
  575 U.S. 665 (2015) ...................................................................2, 5, 6

**Statutes**

11 U.S.C. § 327(a) ...............................................................................12

11 U.S.C. § 330 ...................................................................................13

11 U.S.C. § 330(a) ...............................................................................12

11 U.S.C. § 330(a)(3) ...........................................................................12

11 U.S.C. § 330(a)(5) ...........................................................................13

11 U.S.C. § 331 ...................................................................................13

11 U.S.C. §§ 501-502 .............................................................................5

11 U.S.C. § 1141(b) .............................................................................12

28 U.S.C. § 157(b) ...............................................................................2

28 U.S.C. § 157(b)(2) ...........................................................................7

28 U.S.C. § 157(b)(2)(L) .......................................................................6

28 U.S.C. § 158(c) ...............................................................................7

28 U.S.C. § 158(a)(1) ...........................................................................14

28 U.S.C. § 158(c)(2) ..................................................................................................14

28 U.S.C. § 586(a)(3)(A) .............................................................................................14

**Other Authorities**

Fed. R. Bankr. P. 8002 ................................................................................................14

Fed. R. Bankr. P. 8018.1 ...............................................................................................8

Fed. R. Bankr. P. 9024 ................................................................................................15

Fed. R. Bankr. P. 9033 ..................................................................................................8

Fed. R. Bankr. P. 9033(d) .............................................................................................8

Fed. R. Civ. P. 60(b) ...................................................................................................14

## INTRODUCTION

The United States Trustee files this brief in response to the Court's Order Requiring Supplemental Briefing dated November 18, 2021, to make the following points:

(1) The non-debtor release in the confirmed Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (*f/k/a* Ascena Retail Group, Inc.) and its Debtor Affiliates (collectively the "Debtors" or "Mahwah") (the "Plan") violates the Supreme Court's holding in *Stern v. Marshall*, 564 U.S. 462 (2011), because it releases private third-party claims that neither stem from the bankruptcy itself nor would necessarily be resolved in the claims allowance process, without the parties' consent to final adjudication of these claims by the bankruptcy court.

(2) Neither the breadth of the non-debtor releases nor the bankruptcy court's failure to examine each party deemed to release and be released, as well as each type of claim to be released, including whether such claim constitutes a core or non-core claim, precludes appellate review of the releases.

(3) The United States Trustee requests an order (a) deeming the non-debtor release and exculpation clause to be unenforceable or, alternatively, (b) deeming all releasing parties to have opted out of the non-debtor release and exculpation clause.  The Plan's "Nonseverability of Plan Provision" does not preclude this.

1

(4) The bankruptcy court on remand can no longer reduce the attorney fee awards because the order approving them is final and unappealable.  Those awards reflect reductions suggested to the firms by the United States Trustee.

(5) On behalf of the United States Trustee, Sumi Sakata will argue at the hearing on December 20, 2021.  She is fully vaccinated.  Additionally, Assistant United States Trustee Kathryn Montgomery will attend and join her at counsel's table.  She is also fully vaccinated.

Counsel for the United States Trustee will be prepared to address any questions the Court may have as to these points at oral argument.

## RESPONSE

### I.     The Third-Party Release Exceeds the Bankruptcy Court's Constitutional Authority under *Stern*.

Under Supreme Court precedent, bankruptcy judges as non-Article III judges do not have constitutional authority to enter a final judgment on certain claims absent all parties' knowing and informed consent, even if the proceeding is characterized as "core" under 28 U.S.C. § 157(b).  *Stern v. Marshall*, 564 U.S. 462 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015).  As the Court explained in *Stern*, "[w]hen a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,'. . . and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts."  564 U.S. at 484

2

(quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring)).

"Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case . . . ." *Stern*, 564 U.S. at 499. The Court set out the test in *Stern* for determining when a bankruptcy court has constitutional authority to enter final judgment on a claim: "whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id*. Because the debtor's tortious interference counterclaim in *Stern* neither stemmed from the bankruptcy nor would it necessarily be resolved in the claims allowance process, the Court held the bankruptcy court had no constitutional authority to adjudicate it. *Id*.

The bankruptcy court's approval of the non-debtor release in the Debtors' Plan is "the most prototypical exercise of judicial power: *the entry of a final, binding judgment by a court* . . . on a common law cause of action." *Id.* at 494 (emphasis added). A "release" of a particular claim operates as a judgment that extinguishes the released claim as a matter of law with the same *res judicata* effect as a judgment on the merits of that claim. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151-54 (2009); *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (holding that plan confirmation order containing releases of claims against third parties constituted final judgment on those claims). And, if a bankruptcy judge

may not enter final judgment at trial, it is inconceivable it possesses constitutional authority to approve releases that do the same thing.  Any suggestion that a bankruptcy court has the judicial power to terminate a released claim as long as it does not actually adjudicate it would permit an evasion of *Stern*.  A bankruptcy court's entry of judgment barring a claim without an adjudication equally "'withdraw[s] [the claim] from judicial cognizance," which Congress may not do for common law claims without the parties' consent.  *Stern*, 564 U.S. at 484 (*quoting Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856)).

Applying the *Stern* test to the release set forth in Article VIII.F of the Plan ("Third-Party Release") establishes that the bankruptcy court, as an Article I court, lacked constitutional authority to approve it.  The broad Third-Party Release encompasses claims against other non-debtors based on rights defined by federal and state law that arise independently of the Debtors' bankruptcy filing as well as claims that predate the bankruptcy filing.[1]  Such claims do not "stem[] from the

---

[1] The Third-Party Release releases "each other Released Party from any and all Causes of Action, whether known or unknown," related to: Mahwah; its securities; any claim treated in the Plan; any business or contract between Mahwah and any Released Party; Mahwah's restructuring efforts; its intercompany transactions; its credit agreements; its chapter 11 cases; its restructuring support agreement and related prepetition and other transactions or documents; its post-petition financing; its corporate governance documents; various bankruptcy pleadings including the chapter 11 Plan ("including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction. . . contemplated by the

bankruptcy itself." *Stern*, 564 U.S. at 499.  And claims that non-debtors hold against other non-debtors would not "necessarily be resolved" in the Code's claims allowance process because that process is for claims asserted against the Debtors' estate. *See* 11 U.S.C. §§ 501-502.  Accordingly, under *Stern* only an Article III court may finally resolve these claims.

The Releasing Parties did not affirmatively consent to final resolution of their claims against third parties by the bankruptcy court.  A litigant's consent to give up her right to adjudication by an Article III court must be "knowing and voluntary." *Wellness Int'l*, 575 U.S. at 685.  "[T]he key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator." *Id.* (quoting *Roell v. Withrow*, 538 U.S. 580, 590 (2003)); *see also Wellness Int'l*, 575 U.S. at 685 ("notification of the right to refuse adjudication by a non-Article III court is a prerequisite to any inference of consent") (internal quotation marks omitted).  No evidence exists that all Releasing Parties were notified of the right to refuse adjudication of their claims against non-

---

Plan. . .."); the pursuit of confirmation, consummation, administration and implementation of the Plan; "or any other related agreement, or upon any other act, omission, transaction, agreement, event, or other occurrence (in each case, related to any of the foregoing) taking place on or before the Effective Date."  Appx. 2461.

debtors by a non-Article III court and nevertheless they "voluntarily appeared" before the bankruptcy court "to try" those claims.[2]  *Wellness Intern.*, 575 U.S. at 685.  Thus, the bankruptcy court's approval of the Third-Party Release violated *Stern*.[3]

## II.    This Court May Review the Third-Party Release.

Assuming the bankruptcy court had jurisdiction to consider the Third-Party Release, its failure to analyze the specific parties who are releasing claims or being released, and the particular claims being released, and to make findings as to whether each released claim is core or non-core does not preclude appellate review either as a legal matter or as a practical matter.[4]  The standard of review and

---

[2] Notice was not provided to all affected parties of the right to refuse the release of claims.  *See* UST Opening Brief, ECF No. 35, pp. 41-44.  (For all documents filed on the docket of this Court or the bankruptcy court other than the Appendix, cited page numbers refer to the pagination at the top of the document generated by the ECF system.)

[3] The nonconsensual Exculpation Clause in the Debtors' confirmed Plan set forth in Article VIII.G, like the Third-Party Release, dictates a release of non-debtors' state and federal law claims against non-debtors.  It releases non-debtor exculpated parties from liability for any acts of negligence related to their conduct in the case.  Appx. 2461-62.  It also releases them from liability for "violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan."  *Id*.

[4] The bankruptcy court determined that the confirmation proceeding was a core proceeding under 28 U.S.C. § 157(b)(2)(L).  Appx. 2839.  The United States Trustee does not suggest the bankruptcy court lacks statutory authority to enter a final judgment.

procedures this Court may employ, however, will depend on whether the bankruptcy court had constitutional authority to enter a final judgment approving the Plan's Third-Party Release.[5]

If this Court agrees that the Plan released "*Stern*" claims, then it must vacate the confirmation order and enter a final judgment after *de novo* review of the bankruptcy court's decision.  The Supreme Court has instructed that when a district court acting in its appellate capacity determines under the reasoning of *Stern* that the Constitution did not permit the bankruptcy court to enter final judgment on a bankruptcy-related claim that is a "core proceeding" under 28 U.S.C. § 157(b)(2), then the district court may treat the claim as "non-core" and the bankruptcy court's related findings of fact and conclusions of law as "proposed findings and conclusions" subject to *de novo* review by the district court under 28 U.S.C. § 157(c).  *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 36 (2014); *Redeye II, LLC v. MorrisAnderson & Assocs. Ltd.* (*In re Swift Air, LLC*), 624 B.R. 694, 703-04 (D. Ariz. 2020), *appeal filed*, No. 21-15012 (9th Cir. Jan 4, 2021) (treating bankruptcy court's order regarding preference claims as proposed findings of fact and conclusions of law subject to *de novo* review).

---

[5] The same is true of the Exculpation Clause.

Bankruptcy Rule 8018.1 was added after *Arkison* was decided.  It provides:

> If, on appeal, a district court determines that the bankruptcy court did
> not have the power under Article III of the Constitution to enter the
> judgment, order, or decree appealed from, the district court may treat
> it as proposed findings of fact and conclusions of law.

Fed. R. Bankr. P. 8018.1.[6]  Proposed findings of fact and conclusions of law issued

by the bankruptcy court are governed by Bankruptcy Rule 9033.  They are

reviewed *de novo* "upon the record or, after additional evidence," and the district

judge may "accept, reject, or modify the proposed findings of fact or conclusions

of law, receive further evidence, or recommit the matter to the bankruptcy judge

with instructions."  Fed. R. Bankr. P. 9033(d).  Thus, if this Court concludes that

the bankruptcy court has failed to make findings needed to resolve this appeal, this

Court may make the findings *de novo* based on the existing record, which the

United States Trustee believes is sufficient to require reversal, or it may receive

additional evidence.  Alternatively, this Court may recommit the matter to the

bankruptcy court with instructions to make additional proposed findings.

---

[6] Rule 8018.1 gives the district court procedural flexibility.  The district court "may
choose to allow the parties to file written objections to specific proposed findings
and conclusions and to respond to another party's objections, *see* Rule 9033; treat
the parties' briefs as objections and responses; or prescribe other procedures for the
review of the proposed findings of fact and conclusions of law."  Fed. R. Bankr. P.
8018.1 advisory committee's note.

If instead this Court does not find that the Third-Party Release violates *Stern*, then this Court should apply the traditional appellate standard of review and review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error.[7]  *See Goldman v. Capital City Mortg. Corp. (In re Nieves)*, 648 F.3d 232, 237 (4th Cir. 2011).  Under this scenario, this Court should reverse for the reasons cited in the United States Trustee's briefs.  ECF Nos. 35, 45.  If this Court finds the bankruptcy court's findings to be insufficient, it must vacate the confirmation order, but it may remand to allow the bankruptcy court to set forth specific factual findings supported by the record.  *See Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 713 (4th Cir. 2011).  The United States Trustee does not believe the record could support factual findings that would satisfy *Behrmann*.

**III.    The Plan's Non-Severability Provisions Do Not Preclude the Relief the United States Trustee Seeks.**

If the Court finds the Third-Party Release and/or the Exculpation Clause to be unenforceable and finds that the appeal is not equitably moot,[8] the Court should remand to the bankruptcy court with instructions to enter an order (1) deeming the

---

[7] This Court should still—in the alternative—analyze the bankruptcy court's order as proposed findings of fact and conclusions of law to avoid the delays of a remand in the event there is an appeal of this Court's final decision and the Fourth Circuit ultimately concludes that the bankruptcy court lacked authority to enter a final order.

[8] The United States Trustee addressed equitable mootness at pages 20-32 of his reply brief.  ECF No. 45.

Third-Party Release and Exculpation Clause to be unenforceable or, alternatively, (2) deeming all releasing parties to have opted out of the Third-Party Release and Exculpation Clause. *See*, *e.g.*, *In re National Heritage Foundation Inc*., Case No. 09-10525-BFK, Dkt. No. 1061, Order Adjusting Permissibility of Release, Exculpation & Injunction Provisions (Bankr. E.D. Va. Aug. 27, 2012) (deeming release provisions impermissible and unenforceable), *aff'd*, *Nat'l Heritage Foundation, Inc. v. Highbourne Foundation*, 760 F.3d 344, 346 (4th Cir. 2014); *see also Bank of New York Trust Co. v. Official Unsecured Creditors' Comm.* (*In re Pacific Lumber Co.*), 584 F.3d 229, 253 (5th Cir. 2009) (remanding to bankruptcy court with instructions to strike impermissible portions of non-debtor release).

The Plan's non-severability provision has no effect on this Court's ability to grant this relief. As the United States Trustee explains in his reply brief at pages 26-27, the non-severability provision expressly contemplated that all provisions of the Plan were severable prior to confirmation. *See* App'x at 2667 ("If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable . . . and such term or provision shall then be applicable as altered or interpreted."). At most, the provision creates a legal fiction through its declaration that the same

10

provisions that were readily severable until confirmation are suddenly transformed to become nonseverable merely because the confirmation order is entered on the docket.  *Id*.  This provision cannot be used to "constrain Article III review," *R² Invs., LDC v. Charter Commc'ns, Inc.* (*In re Charter Comm'ns, Inc.*), 691 F.3d 476, 485 (2d Cir. 2012), either by rendering the appeal equitably moot or by limiting the relief this Court may grant on review.  And it would be particularly anomalous to conclude that the nonseverability provision somehow limits the remedy this Court is able to order when it leaves open the possibility that the Debtors or reorganized Debtors can modify or delete provisions at will.  *See* App'x at 2667 (explaining that after confirmation, terms and provisions of the Plan may be deleted or modified with the Debtors' and reorganized Debtors' consent).

Were the Court to disagree, the appropriate remedy would be to reverse and vacate the Plan confirmation order, so the court below can approve a plan that does not contain the offending provision.

## IV.     Reversal of the Confirmation Order Does Not Reopen the Final Fee Award to Review for Excessiveness on Remand.

The bankruptcy court may no longer reduce the attorneys' fees approved in this case for excessiveness and claw back because those fees were awarded under final and unappealable orders.  ECF No. 2134 (Bankr. Dkt.).

As more fully explained in the United States Trustee's brief in response to this Court's order of November 5, 2021, the Bankruptcy Code authorizes the

11

bankruptcy court to award to court-approved attorneys representing chapter 11 debtors in possession reasonable compensation from the bankruptcy estate for actual, necessary services. *See* ECF No. 51, pp. 9-10. *See* 11 U.S.C. § 330(a); 11 U.S.C. § 327(a). The court must "consider the nature, the extent, and the value of such services" provided before awarding fees. 11 U.S.C. § 330(a)(3). This is true even if no party objects to the requested fees. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir. 1994). Thus, the fee proceeding necessarily involves an inquiry into the reasonableness of the services provided and the fees awarded.

The bankruptcy court approved fees and expenses for services provided by the Debtors' attorneys—Kirkland and Ellis LLP and Cooley LLP—from the date on which the Debtors filed for bankruptcy, July 23, 2020 (the "Petition Date"), until February 25, 2021, the date the bankruptcy court confirmed the Debtors' Plan (the "Confirmation Date").[9] *See* UST's Response to Order of Nov. 5, 2021, ECF No. 51, pp. 12-13.

---

[9] The Debtors and/or reorganized Debtors are authorized under Art. II.D.4 of the Plan to pay attorneys' fees and expenses incurred after the Confirmation Date in the ordinary course of business *without approval of the bankruptcy court*. *See* UST Response to Order of Nov. 5, 2021, ECF No. 51, p. 11; 11 U.S.C. § 1141(b) (except as otherwise provided in the plan or the confirmation order, confirmation of a plan vests property of the bankruptcy estate in the debtor). The attorney's fees and legal expenses of the other appellants, the court-appointed lead plaintiffs in the securities fraud class action, are not subject to bankruptcy court approval because they are not entitled to be paid by the estate. *See* UST Response to Order of Nov. 5, 2021, ECF No. 51, p. 15.

On April 9, 2021, Kirkland and Ellis LLP filed a final application under 11
U.S.C. § 330 for allowance of compensation and reimbursement of expenses
covering the entire seven-month period between the Petition Date and the
Confirmation Date.  ECF No. 2010 (Bankr. Dkt.), ¶¶ 8, 21, p. 42.  Cooley LLP
concurrently filed a final fee application for the same period.  ECF No. 2011
(Bankr. Dkt.), ¶¶ 3, p. 30.  The bankruptcy court entered an omnibus order on May
12, 2021 ("Final Fee Order") granting both of these final fee applications.  *See*
ECF No. 2134 (Bankr. Dkt.), p. 13.

The Final Fee Order is a final order.  A bankruptcy court's compensation
order may be considered final "where the order conclusively determine[s] the
entire section 330 compensation to be paid to the attorneys."  *Gold v. Guberman
(In re Computer Learning Ctrs., Inc.)*, 407 F.3d 656, 660 (4th Cir. 2005) (quoting
*Boddy v. U.S. Bankr. Court (In re Boddy)*, 950 F.2d 334, 336 (6th Cir. 1991))
(internal quotation marks omitted).[10]

The bankruptcy court entered the Final Fee Order after notice to interested
parties and an opportunity to object.  *See* ECF No. 2134 (Bankr. Dkt.), p. 2.  The
United States Trustee reviewed the final fee applications pursuant to his statutory

---

[10] The Code also permits bankruptcy professionals to periodically seek and receive
interim fees.  11 U.S.C. § 331.  The bankruptcy court can reevaluate interim fees
until a final fee order.  *Computer Learning Ctrs.*, 407 F.3d at 661.  *See* 11 U.S.C.
§ 330(a)(5) (authorizing court to order return of excess interim fees to the estate).

authority under 28 U.S.C. § 586(a)(3)(A) and negotiated fee reductions with the Debtors' counsel.[11]  No objection was filed to the final fee applications.  *See* ECF No. 2108 (Bankr. Dkt.).

As a final order, the Final Fee Order was appealable immediately upon its entry.  *See* 28 U.S.C. § 158(a)(1).  No party appealed the Final Fee Order.  And because the time to appeal has now expired, *see* 28 U.S.C. § 158(c)(2); Fed. R. Bankr. P. 8002, it is now final and unappealable.  The bankruptcy court's findings in the Final Fee Order are final.  Just as these findings may not be collaterally attacked in other proceedings, *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003) (holding final fee award under section 330 was *res judicata* as to adequacy of attorneys' services in subsequent legal malpractice action), they are not subject to reopening by the bankruptcy court on a remand following appeal of a different order.

Other mechanisms exist for requiring the return of fees for reasons other than excessiveness, such as in the event of misconduct.  *See In re El Paso Refinery, L.P.*, 257 B.R. 809, 841 n.64 (Bankr. W.D. Tex. 2000) (stating that "a final fee award would not prevent a court from later ordering disgorgement of fees on a subsequent showing of wrongdoing (such as, by way of example, a failure to

---

[11] The final fees awarded by the bankruptcy court reflect negotiated reductions in the amounts of $150,000 for Kirkland & Ellis and $50,895.88 for Cooley.  *See* UST Response to Order of Nov. 5, 2021, ECF No. 51, p. 13 & nn.6 & 7.

disclose a conflict of interest)"); Fed. R. Bankr. P. 9024 (making Rule 60(b) of the Federal Rules of Civil Procedure, which permits a court to grant relief from a final judgment, applicable in bankruptcy cases). No facts have come to light that suggest any wrongdoing here.

Respectfully submitted,

December 2, 2021

JOHN P. FITZGERALD, III,
ACTING UNITED STATES
TRUSTEE FOR REGION FOUR

By: /s/ Kathryn R. Montgomery
Kathryn R. Montgomery
Assistant United States Trustee
United States Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Tel.: (804) 771-2310
Fax: (804) 771-2330

RAMONA D. ELLIOTT                    JOHN P. FITZGERALD, III
Deputy Director/General Counsel      Acting United States Trustee for Region 4
P. MATTHEW SUTKO                     KATHRYN R. MONTGOMERY
Associate General Counsel            Assistant United States Trustee
SUMI SAKATA                          HUGH M. BERNSTEIN
Trial Attorney                       Trial Attorney

Department of Justice                Department of Justice
Executive Office for                 Office of the United States Trustee
  United States Trustees             701 East Broad Street, Suite 4304
441 G Street, NW, Suite 6150         Richmond, Virginia 23219
Washington, DC 20530                 Tel: (804) 771-2310
Tel: (202) 307-1399
Fax: (202) 307-2397
sumi.sakata@usdoj.gov                kathryn.montgomery@usdoj.gov
                                     hugh.m.bernstein@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this 2nd day of December 2021, a copy of the foregoing brief was filed electronically in the United States District Court for the Eastern District of Virginia and that according to the Court's CM/ECF system, all parties entitled to service will receive service electronically.

/s/ Kathryn R. Montgomery
Kathryn R. Montgomery