# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-33113-FJS |
| | ) | (Jointly Administered) |
| RETAIL GROUP, INC., ET AL., | ) | |
| | ) | Chapter 11 |
| *Debtors*. | ) | |
| | ) | |

## BANKRUPTCY JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the applications for compensation and reimbursement of expenses for the period from January 13, 2022, through March 3, 2022 (the "Compensation Period"), filed on May 26, 2022, by Cooley LLP ("Cooley"), co-counsel for the above-captioned debtors (the "Cooley Application")[1]; Pachulski Stang Ziehl & Jones LLP ("Pachulski"), counsel for the Official Committee of Unsecured Creditors (the "Pachulski Application"); and Hirschler Fleischer, P.C. ("Hirschler"), local counsel for the Official Committee of Unsecured Creditors (the "Hirschler Application") (collectively, with the Cooley Application and Pachulski Application, the "Fee Applications").

Venue is proper in this matter under 28 U.S.C. §§ 1408 and 1409(a). The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Pursuant to the Order Requiring Submission of Approval of Petition for Attorneys' Fees to District Court entered on January 13, 2022 (the "Fee Order"), the United States District Court for the Eastern District of Virginia (the "District Court") directed this Court to submit proposed findings of fact and

---

[1] The Court notes for the record that Cooley's co-counsel, Kirkland & Ellis LLP, elected not to file an application for compensation and reimbursement of expenses for the Compensation Period.

conclusions of law on all future applications for attorneys' fees. Fee Order at 1, ECF No. 2550. Accordingly, after notice and a hearing and upon review of the relevant pleadings, the Court proposes the findings of fact and conclusions of law set forth below with respect to the Fee Applications.

## I.     Procedural History

The above-captioned debtors (collectively, the "Reorganized Debtors," and before the reconfirmation of the modified Chapter 11 plan in these cases on March 3, 2022, the "Debtors"),[2] filed petitions under Chapter 11 of the Bankruptcy Code on July 23, 2020, in the Richmond Division of the United States Bankruptcy Court for the Eastern District of Virginia. Those petitions were ultimately consolidated into the above-captioned case. Order Granting Mot. for Joint Admin., ECF No. 50. On July 24, 2020, the Court entered an order establishing, among other things, the notice and service requirements and procedures for pleadings filed in the case (the "Case Management Order").[3] *See* Case Mgmt. Order Ex. 1, ECF No. 79. On September 8, 2020, the

---

[2] The Debtors described their business as follows:

> The Debtors are a leading specialty retailer for women and girls. Tracing their roots back to a single Dressbarn store built in 1962, today the Debtors operate a portfolio of recognizable brands, including Ann Taylor, LOFT, Lane Bryant, Catherines, Justice, Lou & Grey, and Cacique. As of the Petition Date (as defined herein), the Debtors operated approximately 2,800 stores in the United States, Canada, and Puerto Rico, with more than 12.5 million active customers, and nearly 40,000 employees. As of the Petition Date, the Debtors have approximately $1.60 billion in funded debt obligations, including approximately $330 million in outstanding obligations under the its $500 million senior secured asset-based lending facility and approximately $1.27 billion in senior secured term loan obligations.

Am. Discl. Stmt § II, ECF No. 600.

[3] The Case Management Order established that filings, including applications for compensation, shall be served on the "Service List." Case Mgmt. Order Ex. 1 ¶¶ 2, 6. ECF No. 79. The "Service List" is defined as the "Core Group," the "2002 List," and the "Affected Entities." *Id.* Ex. 1 ¶ 3. The "Core Group" includes (1) the United States Trustee; (2) the Debtors; (3)

Court entered an order outlining the notice and service requirements specifically related to monthly, interim, and final fee applications (the "Fee Notice Procedures Order").[4] ECF No. 550.

The Debtors filed an Amended Joint Chapter 11 Plan on February 24, 2021 (the "Plan"). The Court confirmed the Plan by order entered on February 25, 2021 (the "Confirmation Order"). Subsequently, the Confirmation Order was appealed to the District Court. Notice of Appeal, ECF No. 1859. On January 13, 2022, the District Court entered an order vacating the Confirmation Order, voiding and severing the Plan's third-party releases, voiding the Plan's exculpation provision, and remanding the case to the Bankruptcy Court (the "Remand Order"). Remand Order at 1, ECF No. 2549. The Remand Order further required the Chief Judge of the Bankruptcy Court

---

proposed co-counsel for the Debtors, Kirkland & Ellis LLP, and Cooley; (4) counsel for any committee appointed pursuant to section 1102 of the Bankruptcy Code; (5) agents under the Debtors' prepetition credit facilities and counsel thereto; (6) counsel to the administrative agent under the Debtors' prepetition term loan facility and debtor-in-possession term loan facility, Latham & Watkins LLP; (7) counsel to the administrative agent under the Debtors' prepetition asset-based lending credit facility and debtor-in-possession asset-based lending credit facility, Morgan Lewis & Bockius LLP; (8) counsel to the ad hoc group of term loan lenders, Milbank LLP; and (9) any party that has requested notice pursuant to Bankruptcy Rule 2002. *Id.* The "2002 List" is comprised of all entities that have filed a request for service of filings under Rule 2002. *Id.* The Core Group list and the 2002 List are maintained online by the Claims and Noticing Agent, Kroll Restructuring Group, formerly known as Prime Clerk LLC. *Id.* The "Affected Entities" are all entities with a particularized interest in the subject matter of the court filing. *Id.*

[4] The Fee Notice Procedures Order called for all professionals to "serve (a) the Monthly Fee Statements, the Interim Fee Applications, and the Final Fee Application on the Application Recipients, and (b) notice of hearings on the Interim Fee Applications and Final Fee Application on all other parties that have filed a notice of appearance with the clerk of this Court and requested notice of pleadings in these chapter 11 cases." Fee Notice Proc. Order ¶ 6, ECF No. 550. The "Application Recipients" are defined as (1) the Debtors; (2) co-counsel to the Debtors, Kirkland & Ellis LLP, and Cooley; (3) counsel to the administrative agent under the Debtors' prepetition asset-based lending credit facility and debtor-in-possession asset-based lending credit facility, Morgan Lewis & Bockius LLP; (4) counsel to the ad hoc group of term loan lenders, Milbank LLP; and (5) the Office of the U.S. Trustee. *Id.* ¶ 2.

for the Eastern District of Virginia to reassign the case. *Id.* at 2. The Remand Order was supported by a memorandum opinion issued on January 13, 2022 (the "Memorandum Opinion").[5]

The District Court entered the Fee Order the same day. The Fee Order directed this Court to issue a report and recommendation on all future attorneys' fee applications in the case. Fee Order at 1, ECF No. 2550. It also ordered that the hourly rate requested in such applications be capped at the rate charged by attorneys in the Richmond Division of the Eastern District of Virginia. *Id.* at 1-2.

The undersigned reassigned the case to himself on January 18, 2022, as authorized by the Remand Order. On January 26, 2022, the Debtors filed a motion to modify the Plan in accordance with the Memorandum Opinion and reconfirm the Plan retroactively to the date of the Confirmation Order (the "Reconfirmation Motion"). After notice and a hearing, the Court entered an order on March 3, 2022 (the "Reconfirmation Order"), which reconfirmed the Plan as modified

---

[5] One of the reasons the District Court issued the Remand Order, as stated in the Memorandum Opinion, was the perception that forum shopping or judge shopping may have been occurring for "mega cases" filed in the Eastern District of Virginia. The District Court stated, "To be clear, venue properly exists in the Richmond Division . . . . Consequently, the question is not whether venue was proper here, but why Debtors chose this venue over the many other venue options it had available to it." *Patterson v. Mahwah Bergen Retail Grp.,* 636 B.R. 641, 655 n.4 (E.D. Va. 2022) (citation omitted). On February 22, 2022, the District Court entered an order requesting that the undersigned consider any impact the recent adoption of Local Bankruptcy Rule 1075-2, which promulgated the Procedures for Assignment and Administration of "Mega Cases" in the Eastern District of Virginia, may have on the matter. *See* Order Modifying Order on Attorneys' Fees at 1-2, 3:21-cv-00167-DJN, ECF No. 83. The newly adopted "mega case" procedures referenced in the District Court's order were, in part, designed to combat any perception of forum shopping or judge shopping. These procedures included a new judge assignment policy for "mega cases" filed in the Eastern District of Virginia. *See* LBR Ex. 16 § II. Accordingly, any Chapter 11 case filed in the Eastern District of Virginia that is classified as a "mega case" will be randomly assigned to one of the Bankruptcy Judges in the Eastern District of Virginia, with the exception of the Chief Bankruptcy Judge, regardless of the Division in which the case is filed. *Id.*

by the Reconfirmation Motion (the "Modified Plan") effective as of February 25, 2021.[6] Reconfirmation Order ¶ 2, ECF No. 2611. To comply with the Fee Order, the Reconfirmation Order stated the following:

> [A]ny unpaid fees and expenses of retained attorneys incurred by the Debtors before the entry of this Order and all fees and expenses of Professionals incurred from the entry of the Remand Order to the entry of this Order (the "Applicable Fees and Expenses") may only be paid by the Debtors following an application in accordance with the Fee Order[] (with respect to attorneys' fees), the Bankruptcy Code, the Bankruptcy Rules, and this Order. All applications for the Applicable Fees and Expenses must be filed with this Court no later than 90 days after the date of entry of this Order.

*Id.* ¶ 10.

Fee applications were thus required for unpaid fees incurred on behalf of the Debtors and the Official Committee of Unsecured Creditors (the "Committee") for the Compensation Period. The Fee Applications were filed on May 26, 2022. Following its review of the Fee Applications, the Court entered an order on June 15, 2022 (the "Briefing Order"), that established a hearing date for the Fee Applications of July 7, 2022, and directed that, "[f]or Fee Applications that request hourly rates that exceed the prevailing rate in the Richmond market, the brief[s] must analyze why a departure from the rate in the local market is reasonable." Briefing Order at 3, ECF No. 2718.

On June 15, 2022, the U.S. Trustee filed a statement indicating that he had negotiated with the respective fee applicants and proposed fee reductions as to all of the Fee Applications and did

---

[6] The Reconfirmation Order reinstituted the notice procedures present in the Confirmation Order. *See* Reconfirmation Order ¶ 4, ECF. No. 2611. The Confirmation Order required that notice of all post-confirmation pleadings be served on the following entities: (1) the Reorganized Debtors and counsel thereto, (2) the U.S. Trustee, (3) the Consenting Stakeholders (as defined in the Restructuring Support Agreement attached to the Amended Disclosure Statement as a group of term loan lenders that agreed to assist the Debtors with funding throughout the restructuring process), (4) the GUC Trustee and counsel thereto, (5) any party directly affected by the relief sought in the pleading, and (6) any party that specifically requested additional notice in writing. Confirmation Order ¶ 141, ECF No. 1811.

not object to any of the Fee Applications (the "UST Statement"). UST Stmt ¶¶ 2-3, ECF No. 2721. However, the U.S. Trustee indicated he would supplement the UST Statement in light of the Briefing Order. *Id.* ¶ 4. No other party filed a response or objection to the Fee Applications.

Thereafter, the fee applicants served notices of hearing electronically on all parties who had appeared in this case. Cooley Notice, ECF No. 2726; Hirschler and Pachulski Notice, ECF No. 2731. The fee applicants and the U.S. Trustee also filed timely briefs in response to the Briefing Order. The Court convened hearings on the Fee Applications on July 7, 2022 (collectively, the "Fee Hearing"), at which the fee applicants and counsel for the U.S. Trustee appeared. Because Cooley served as co-counsel for the Debtors with another law firm, the Court required additional information to supplement the record to define more clearly Cooley's discrete contributions during the Compensation Period. Accordingly, Cooley filed a supplemental declaration in support of the Cooley Application on July 11, 2022 (the "July Speckhart Declaration"). Cooley simultaneously filed the declaration of Gilbert E. Nathan, the Plan Administrator, in support of the Cooley Application (the "Plan Administrator Declaration").

This matter is now ripe for determination.

## II.  <u>Findings of Fact</u>

Upon consideration of the record, the court makes the following proposed findings of fact.

### A. <u>The Hirschler Application</u>

Hirschler is local counsel for the Committee. Hirschler is a Virginia-based law firm with three offices in Virginia and a significant bankruptcy practice. *See* Appl. to Employ Hirschler ¶ 10, ECF No. 516. The Committee filed an application to employ Hirschler as its local counsel on September 2, 2020, which the Court granted by order entered on September 22, 2020. After the initial confirmation of the Plan, the Court approved Hirschler's second interim and final

application for compensation of fees and reimbursement of expenses. Hirschler Fee Order, ECF No. 2136. The Court entered a final order allowing $115,446.00 in fees and $1,159.50 in expenses (net of a voluntary reduction). *Id.* ¶ 3.

The Hirschler Application, which is now before the Court, was served on "all registered ECF participants who have appeared in this case" via the Court's Case Management/Electronic Case Files system and "on the Application Recipients (as defined in the [Fee Notice Procedures Order])"[7] by email or first class mail. Certificate of Service at 2, ECF No. 2713. Hirschler requested allowance of payment of $7,683.00 in fees and $0.00 in expenses for services rendered during the Compensation Period. Hirschler Appl. ¶ 10, ECF No. 2706. Two Hirschler attorneys— a partner and an associate—provided services for a total of 15.5 hours, with each billing approximately half of the total amount, at a blended rate[8] of $495.67 per hour. *Id*. at 2, Ex. B. The categories of services that Hirschler provided include handling matters related to case administration, the Fee Order, reconfirmation of the Modified Plan, and general unsecured claims reconciliation. *Id*. ¶¶ 14-18. Hirschler's activities included attending hearings; preparing, reviewing, and filing pleadings; and communicating with lead counsel for the Committee. *Id*. at Ex. B.

The U.S. Trustee negotiated a reduction of Hirschler's fees in the amount of $500.00. UST Stmt ¶ 2. Accordingly, Hirschler's total requested fees after the reduction are $7,183.00 (the "Hirschler Fees"). *Id.*

---

[7] *See* note 4.

[8] The blended rate is the total dollar amount billed by all timekeepers (attorneys and non-attorneys) divided by their total hours billed.

B. The Pachulski Application

Pachulski is lead counsel for the Committee. Pachulski is a national law firm with five offices, approximately eighty lawyers, and an expertise in the bankruptcy and restructuring field. Pachulski Resp. to Briefing Order ¶ 3, ECF No. 2742. The Committee filed an application to employ Pachulski as its lead counsel on September 2, 2020, which the Court granted by order entered on September 22, 2020. Following the initial confirmation of the Plan, the Court approved Pachulski's second interim and final application for compensation of fees and reimbursement of expenses. Pachulski Fee Order, ECF No. 2135. The Court entered a final order allowing $1,052,450.50 in fees and $6,036.10 in expenses (net of a voluntary reduction). *Id.* ¶ 2.

The Pachulski Application currently before the Court was noticed and subsequently served on "all registered ECF participants who have appeared in this case" via the Court's Case Management/Electronic Case Files system and "on the Application Recipients (as defined in the [Fee Notice Procedures Order])"[9] by email or first class mail. Certificate of Service at 2, ECF No. 2713. Pachulski requested allowance of payment of $93,180.00[10] in fees and $4.10 in expenses for services rendered during the Compensation Period. Pachulski Appl. at 2, ECF No. 2705. Pachulski rendered services during the Compensation Period totaling 94.60 hours. *Id*. The blended rate for the seven Pachulski professionals working on the case during this period was $985.00 per hour. *Id*. Pachulski's timekeepers included six attorneys (five partners and one counsel) and three non-attorneys. *Id.* at Ex. B. The Pachulski attorney who billed the most hours during the Compensation Period, a partner, billed 36.4 hours at a rate of $1,445.00 per hour. *See id.*

---

[9] *See* note 4.

[10] This amount is net of a voluntary discount of $24,818.50.

8

The legal services Pachulski provided during the Compensation Period related to the appeal and remand, case administration, general unsecured claims reconciliation, reconfirmation of the Modified Plan, and compliance with the Fee Order. *Id*. ¶¶ 16-24. The bulk of Pachulski's services (58.4 out of 94.6 hours) involved analyzing the complex issues raised by the Remand Order and Memorandum Opinion and expeditiously reconfirming the Modified Plan. *Id*. ¶¶ 17, 24. In particular, Pachulski spent significant time reviewing and analyzing the Remand Order and Memorandum Opinion; discussing, drafting, revising, and reviewing the Reconfirmation Motion (alongside counsel for the Debtors); and preparing for hearings on the Reconfirmation Motion. *Id.* at Ex. B. This was all done in an effort to minimize potential harm facing the "thousands of affected unsecured creditors holding many hundreds of millions of dollars in claims." *See* Pachulski Resp. to Briefing Order ¶ 10, ECF No. 2742. Only a small percentage of Pachulski's services (8 out of 94.6 hours) was dedicated to case administration and claims administration. Pachulski Appl. ¶¶ 18-19.

Rather than file a responsive pleading with respect to the Pachulski Application, the U.S. Trustee negotiated a reduction of $10,000.00, thereby reducing the requested fees and expenses to $83,184.10. UST Stmt ¶ 2, ECF No. 2721. As the analysis herein requires that fees and expenses be considered separately, the Court will apply the reduction to Pachulski's fees, resulting in fees requested of $83,180.00 (the "Pachuski Fees") and expenses requested of $4.10 (the "Pachulski Expenses").

C. The Cooley Application

Cooley is co-counsel for the Reorganized Debtors. Cooley is an international law firm with seventeen offices and significant expertise in the bankruptcy and restructuring field. *See* Cooley Resp. to Briefing Order Ex. A ¶ 7, ECF No. 2741. Cooley also maintains non-bankruptcy practice

groups in the areas of litigation, intellectual property, mergers and acquisitions, corporate services and transactions, finance, real estate, tax, and employment law. *Id.* The Debtors filed an application to employ Cooley as co-counsel on August 13, 2020 (the "Cooley Application to Employ"). The Cooley Application to Employ specified that the Debtors also expected to retain Kirkland & Ellis LLP ("Kirkland") as co-counsel but asserted that Cooley's employment would not be duplicative of the services provided by Kirkland. Cooley Appl. to Employ ¶¶ 10, 12, ECF No. 258. The Debtors explained that Cooley's retention as co-counsel was necessary to

> provide additional legal resources to advise the Debtors on various matters and will allow the Debtors to operate more effectively given Cooley's specialized knowledge of bankruptcy law and procedure in Virginia. In particular, Cooley's lawyers have experience practicing before this Court and have the ability to respond quickly to any contingency, emergency hearings, or other matters before this Court.

*Id.* ¶ 10.

On August 31, 2020, the U.S. Trustee filed a limited objection to the Cooley Application to Employ. The U.S. Trustee expressed concern that Cooley's services would be duplicative of Kirkland's services, stating,

> Despite attempts to better understand Cooley's role, aside from that of local counsel—meaning a member of the Bar of the Bankruptcy Court for the Eastern District of Virginia who joins in a foreign attorney's pleading by endorsement pursuant to Local Rule 2090-1(F)—the United States Trustee has not received any clear delineation of the services that Cooley is to provide as co-counsel that fall outside its local counsel role. Without any clear indication of services, the United States Trustee cannot determine whether Cooley will serve solely in a local counsel capacity or will augment its representation by also serving as efficiency or conflict counsel. As currently contemplated in the Cooley Application, Cooley's services will unnecessarily overlap with the services being provided by Kirkland. While these proceedings are indeed large and complex, without more, the Debtors have not met their burden to show that the proposed retention of Kirkland and Cooley – as co-counsel – is warranted. That is, the Debtors are seeking to retain two attorneys when there is no clear indication as to their roles.

Limited Obj. at 5-6, ECF 484.

On September 1, 2020, Cullen D. Speckhart, a Cooley attorney, filed a Supplemental Declaration clarifying that

> Cooley acts as Kirkland's co-counsel in the capacity as both local counsel pursuant to the Local Rules and as conflicts counsel to the extent a conflict arises that would prevent Kirkland from representing the Debtors in a manner adverse to a party in interest in these chapter 11 cases and provides certain additional services to the Debtors in connection with these chapter 11 cases.

Suppl. Decl. of Cullen D. Speckhart ¶ 4, ECF No. 507. This explanation was satisfactory to the U.S. Trustee, as Cooley filed a certification on September 2, 2020, indicating that the U.S. Trustee's objection was resolved. Certification of Counsel at 2, ECF No. 529. As a result, the Court entered an order on September 9, 2020, granting the Cooley Application to Employ.

On May 12, 2021, the Court entered an order approving Cooley's second interim and final application for compensation of fees and reimbursement of expenses. Cooley Fee Order, ECF No. 2011. The Court entered a final order allowing $978,894.12 in fees and $119,692.28 in expenses (net of a voluntary reduction). *Id.* at Sch. A.

The Cooley Application, which is now before the Court, was "served via email on the Core/2002 Service List."[11] Aff. of Service at 1, ECF No. 2716. Cooley requested allowance of $268,183.00 in fees and $1,167.81 in expenses for 271.4 hours of legal services rendered during the Compensation Period. Cooley Appl. at 1-2, ECF No. 2700. The blended rate for the eleven Cooley timekeepers on the case during the Compensation Period was $988.15 per hour. *Id*. at 4. Cooley's blended hourly rate is comprised of the rates of eight attorneys (three partners, three counsel, and two associates) and three paralegals. *Id.* The Cooley attorney who billed the most hours, an associate, billed 139.1 hours at a rate of $1,115.00 per hour. *Id*.

---

[11] *See* note 3.

11

Rather than file a response or objection to the Cooley Application, the U.S. Trustee negotiated a reduction of $17,010.50, thereby reducing the requested fees and expenses to $252,340.31 for the Compensation Period. UST Stmt ¶ 2, ECF No. 2721. As the analysis herein requires that fees and expenses be considered separately, the Court will apply the reduction to Cooley's fees, resulting in fees requested of $251,172.50 (the "Cooley Fees") and expenses requested of $1,167.81 (the "Cooley Expenses").

During the Compensation Period, Cooley provided legal services related to litigation, business operations, case administration, claims reconciliation, resolution of tax and intellectual property issues, and reconfirmation of the Modified Plan.[12] Cooley Appl. ¶¶ 19-36, ECF No. 2700; July Speckhart Decl. at 4-10, ECF No. 2756. Cooley spent considerable time on corporate and compliance issues (22.5 hours). July Speckhart Decl. at 6, ECF No. 2756. This involved working with advisors regarding Canadian tax filings; asset transfers from foreign accounts; and the dissolution of international entities; as well as assisting with state deregistration concerns. *Id.* at 6-7. Cooley also resolved national and international tax issues during the Compensation Period (20.1 hours). *Id.* at 8-9. This required Cooley work with outside tax advisors to prepare petitions for Louisiana tax appeals and respond to audit requests by Louisiana taxing authorities, analyze tax concerns raised by Kuwait authorities, evaluate tax refund and set-off rights under New Jersey law

---

[12] In a declaration, the Plan Administrator described the roles of Cooley and its co-counsel as follows:

> Cooley was engaged to provide legal services concerning a number of complex legal issues, including subject matter categories related to litigation, tax, intellectual property, claims resolution and business operations, while Kirkland & Ellis LLP primarily focused on the representation of Mahwah Bergen Retail Group, Inc. in the appeals before the District Court."

Decl. of Gilbert E. Nathan ¶ 5, ECF No. 2757.

327

and the Bankruptcy Code, and analyze issues regarding income, sales and use, and personal property taxes. *Id.* A significant portion of Cooley's work during the Compensation Period (56.6 hours) involved claims reconciliation. *Id.* at 7. The claims reconciliation process in this case involved the resolution of numerous claims that raised myriad legal issues, including issues of insurance, tax, and property law. *Id.* at 7-8. Finally, Cooley spent 70.9 hours of time on general case administration. Cooley Appl. at 6-7.

### III.   <u>Applicable Law</u>

American bankruptcy law originates in Article I, Section 8 of the U.S. Constitution, which empowers Congress to "establish . . . uniform laws on the subject of bankruptcies." U.S. Const. art. I, § 8, cl. 4. Congress passed the first bankruptcy laws in the United States in 1800, drawing heavily on English bankruptcy law. *See* Charles Jordan Tabb, *The Historical Evolution of the Bankruptcy Discharge*, 65 Am. Bankr. L.J. 325, 345 (1991). Congress passed two additional acts in 1841 and 1867. The Bankruptcy Act of 1898 (the "Act"), however, is regarded as the foundation for modern bankruptcy law in the United States. David S. Kennedy & Erno Lindner, *The Bankruptcy Amendatory Act of 1938 / The Legacy of the Honorable Walter Chandler*, 41 U. Mem. L. Rev. 769, 776 (2011).

The Act afforded courts substantial discretion in evaluating fee applications. *See Milbank, Tweed & Hope v. McCue*, 111 F.2d 100, 101 (4th Cir. 1940); *see also* George W. Kuney, *Hijacking Chapter 11*, 21 Emory Bankr. Dev. J. 19, 40 (2004). "[O]ne overriding principle," however, cabined this discretion: the "spirit of economy," which made (1) "conservation of the estate" and (2) "return to creditors" paramount to the fee analysis. 3 Collier on Bankruptcy ¶ 330.LH[3] (16th ed. 2022). The "spirit of economy" meant the "strictest economy." *See id.*

This principle justified limiting attorney compensation to amounts less than market rate. Kuney, *supra*, at 40; *see also* Steve H. Nickles & Edward S. Adams, *Tracing Proceeds to Attorneys' Pockets (and the Dilemma of Paying for Bankruptcy)*, 78 Minn. L. Rev. 1079, 1089 (1994). Courts rationalized this limitation by likening attorneys employed in bankruptcy cases to public servants, whose entitlement to compensation must be balanced with the public interest. Nickles & Adams, *supra*, at 1089. Some courts adopted a rule that bankruptcy attorneys' compensation "should never be as large as the compensation of those engaged in private employment." *See In re Nat'l Dep't Stores*, 11 F. Supp. 633, 638 (D. Del. 1935), *aff'd*, 93 F.2d 127 (3d Cir. 1937); *see also In re McGrath Mfg. Co.*, 95 F. Supp. 825, 829 (D. Neb. 1951). This approach was a clear disincentive for attorneys to pursue the field and led to the perception that only attorneys of lesser caliber would represent debtors in bankruptcy. *See* Robert J. Landry, III & James R. Higdon, *Ethical Considerations in Appointment and Compensation of an Attorney for a Chapter 11 Debtor-in-Possession*, 66 Miss. L.J. 355, 379-80 (1996).

In a case near the end of the Act's tenure, the Fourth Circuit observed that although the "yardstick" for compensation of legal services in a bankruptcy case was "not necessarily" the same as that used for similar legal services outside the bankruptcy context, there is "a public interest in attracting competent counsel in bankruptcy proceedings." *In re Farrington Mfg. Co.*, 540 F.2d 653, 657 (4th Cir. 1976). That public interest, the Court of Appeals explained, was to be balanced against the equally important interest of "doing equity to the estate and its creditors." *See id.*

Two years later, in 1978, Congress sought to "give the bankruptcy court the independence it needs to operate in today's complex bankruptcy world." H.R. Rep. No. 95-595, at 4 (1978). This objective underscored the passage of the Bankruptcy Reform Act of 1978, by which Congress enacted the Bankruptcy Code (the "Code"). The Code's revisions to the attorney compensation

scheme represented a sharp departure from the principles that drove awards of compensation under the Act:

> With the advent of the Bankruptcy Code came the abolition of the economy principle, a time-honored yet curious notion that attorneys practicing bankruptcy should be paid less than those practicing in other forums . . . . [Under the Code], attorneys are not limited by an arbitrary figure; the beacon is reasonableness. What constitutes a reasonable fee will vary from case to case depending upon the complexity of the issues presented.

*In re McLean*, 6 B.R. 327, 328 (Bankr. E.D. Va. 1980) (citations omitted).

Indeed, during the legislative process, the Senate bill, which adhered to the same principles that governed attorney compensation under the Act, was rejected in favor of the bill from the House of Representatives, which imposed a standard of reasonable compensation commensurate with the cost of comparable services and "emphasize[d] the importance[] of attracting the highest caliber of professional persons to bankruptcy practice." *See In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 578 (Bankr. D. Utah 1985). With this paradigm shift, courts began to view reasonable compensation through a new lens that required them to consider the fees charged by attorneys in non-bankruptcy matters. Under then newly enacted 11 U.S.C. § 330(a), courts awarded "reasonable compensation for actual, necessary services rendered by such . . . attorney . . . based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under [the Code]" and "reimbursement for actual, necessary expenses." Bankruptcy Reform Act of 1978, Pub. L. No. 95–598, § 330, 92 Stat 2549, 2564 (1978).

The new standard for review of attorney compensation made the court akin to "a surrogate for the estate, reviewing the fee application much as a sophisticated non-bankruptcy client would review a legal bill" such that the "review of fee applications becomes primarily an exercise in fact-finding, with relatively little room for the application of inflexible legal rules." *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 848 (3d Cir. 1994). The court's independent, non-delegable duty to

review compensation served, and continues to serve, the important purpose of "safeguard[ing] the integrity of the bankruptcy system" and "maintain[ing] the public's confidence that bankruptcy cases are economically administered for the benefit of creditors rather than estate professionals." *In re Jay*, No. BR 16-22038, 2018 WL 2176082, at *3 (Bankr. D. Utah May 9, 2018), *aff'd sub nom. In re Reynolds*, No. 2:18CV398 DAK, 2019 WL 4645385 (D. Utah Sept. 24, 2019), *aff'd*, 835 F. App'x 395 (10th Cir. 2021). For these reasons, the court must discharge this duty even in the absence of any objection. *In re Silvus*, 329 B.R. 193, 204 (Bankr. E.D. Va. 2005).[13]

The original version of § 330 provided no specific guidance regarding the factors to consider when determining the amount of reasonable compensation. Courts therefore employed the lodestar method—the product of the reasonable hours spent and the reasonable hourly rate—guided by the factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (the "*Johnson* factors") to assess reasonableness. *See In re Great Sweats, Inc.*, 113 B.R. 240, 242 (Bankr. E.D. Va. 1990); *In re United Rockwool, Inc.*, 32 B.R. 558, 559 (Bankr. E.D. Va. 1983). The *Johnson* factors include

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226 n.28.

---

[13] Even in chapter 13 cases where the court has adopted a presumptively reasonable attorney's fee, the court is not absolved of its duty to determine the reasonableness of compensation. *See In re Beale*, 553 B.R. 69, 75 (Bankr. E.D. Va. 2016)

The Code underwent a significant revision in 1994, which included an amendment to § 330(a) "to add a non-exhaustive list of factors, including some of the *Johnson* factors, to aid courts in assessing the reasonableness of fees." Stanislav Veyber, *Bankruptcy: Where Attorneys Can Lose Big Even If They Win Big*, 11 Brook. J. Corp. Fin. & Com. L. 257, 262 (2016). The five factors added to § 330 in 1994 remain part of the statute with the addition of a sixth factor in 2005. *Compare* Bankruptcy Reform Act of 1994, Pub. L. No. 103–394, § 330, 108 Stat 4106, 4119 (1994), *with* Bankruptcy Abuse Prevention & Consumer Protection Act of 2005, Pub. L. No. 109–8, § 330, 119 Stat 23, 107 (2005).

Accordingly, since 2005, § 330(a)(3) has provided that to determine reasonable compensation, the court must consider the nature, extent, and value of the services, taking into account

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

17

11 U.S.C. § 330(a)(3). Because the factors listed in § 330(a)(3) are non-exhaustive, courts within the Fourth Circuit consider the *Johnson* factors in addition to those set forth in the statute.[14] *In re Grubb*, No. 07–30253–KRH, 2010 WL 396181, at *4-5 (Bankr. E.D. Va. Jan. 25, 2010). The burden of proving what constitutes reasonable compensation is on the party seeking compensation. *Matter of Nor-Les Sales, Inc.*, 32 B.R. 900, 902 (Bankr. E.D. Mich. 1983), *modified sub nom. Stark & Reagan, P.C. v. Nor-Les Sales*, 53 B.R. 442 (E.D. Mich. 1984).

In applying the factors set forth in § 330(a)(3) and the *Johnson* factors to an out-of-market fee, courts must consider factors that may warrant the selection of a non-local professional including—

> [t]he "specialization" of the applicant, the "urgencies of the debtor's financial condition," the "regional nature of the debtor's holdings and creditors," the fact that a primary creditor may be a "national lender," the out of state locale of some large unsecured creditors, and the involvement of non-local counsel for several creditors.

*In re Wash. Furniture Mfg. Co.*, 283 B.R. 201, 203 (Bankr. N.D. Miss. 2002) (quoting *In re Waldoff's, Inc.*, 132 B.R. 329, 335 (Bankr. S.D. Miss. 1991)). The Court must also consider the applicant's unique skillset, the nature of the work performed, and the availability of capable professionals in the local market. *In re LearningSmith, Inc.*, 247 B.R. 581, 583 (Bankr. D. Mass. 2000); *In re Am. Freight Sys., Inc.*, No. 88-41050-11, 1997 WL 309123, at *8 (D. Kan. May 6,

---

[14] The United States Trustee Program (the "USTP") has developed its own guidelines for review of compensation. In 2013, USTP guidelines specific to attorneys' fees in large Chapter 11 cases became effective. App. B, Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Case, 78 Fed. Reg. 36,248 (June 17, 2013) (to be codified at 28 C.F.R. pt. 58, app. B). The USTP guidelines applicable to attorneys' fees in larger Chapter 11 cases are not a substitute for court review of compensation under § 330. In other words, they "are intended to elicit information that will aid the United States Trustee, the parties, and the court in determining whether the fees and expenses sought in a fee application are reasonable and necessary," but "do not supersede local rules, court orders, or other controlling authority." *Id.* at 36,249.

1997) (collecting cases); *In re Temple Ret. Cmty., Inc.*, 97 B.R. 333, 342-43 (Bankr. W.D. Tex. 1989); *In re Pac. Exp., Inc.*, 56 B.R. 859, 864 (Bankr. E.D. Cal. 1985).

How a fee applicant's community is defined is an important issue in determining whether the hourly rate charged is reasonable in light of the compensation charged by the applicant's similarly skilled peers. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Temple*, 97 B.R. at 342; *Matter of Liberal Mkt., Inc.*, 24 B.R. 653, 659 (Bankr. S.D. Ohio 1982) ("In determining average attorney fees, the 'local bar' in an area of law necessitating both specialization and large volume work may bear only remote relation to the immediate geographic locality."). As the Fourth Circuit has observed,

> The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits. In circumstances where it is reasonable to retain attorneys from other communities, however, the rates in those communities may also be considered.

*Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (citations omitted).

A few cases have imposed what appears to be a bright-line rule limiting fees to those charged within those courts' localities. *See, e.g.*, *In re Meridian Grp., Inc.*, 213 B.R. 455, 456 (Bankr. D. Vt. 1997); *In re Narragansett Clothing Co.*, 160 B.R. 477, 481 (Bankr. D.R.I. 1993). Even if such a rule comported with the Code, Fourth Circuit precedent, and persuasive case law, this rule would not appear to apply to attorneys seeking compensation for complex work that achieved favorable results in a complex case.

The *Meridian* bankruptcy was not a "national" bankruptcy case. *See* 213 B.R. at 457 ("To summarize, Meridian is a Vermont case, it's in a Vermont Court, [and] the complexities involved are fully within the competence of members of the Vermont bar . . . ."). And even the bright-line rule in *Meridian* carved out "extraordinary circumstances"—presumably those presented in both local and national cases. *See id.* at 456-57. In *Narragansett Clothing*, the animating principle of

the court's analysis was that the trustee and his counsel were requesting large fees for a job not well done. *See* 160 B.R. at 480 ("In this case . . . the spotlight is on achievement and result because it was in that context that the Applicants based their earlier requests, and it was likewise on the assumption of a . . . 'job well done' that the Court made its prior awards.").

Courts vary in how they analyze requests for out-of-market attorneys' fees, but a consistent theme emerges: national bankruptcy cases are different. *See In re Rocky Mountain Helicopters, Inc.*, 186 B.R. 270, 273 (Bankr. D. Utah 1995) (justifying out-of-market rates in cases that "can fairly be considered . . . of national scope"); *In re Cambern*, 134 B.R. 565, 570 (Bankr. E.D. Tex. 1991) ("[T]his Court can safely conclude that this is not a case of national scope."); *In re Prop. Co. of Am. Joint Venture*, 110 B.R. 244, 252 (Bankr. N.D. Tex. 1990); *In re S.T.N. Enters.*, 70 B.R. 823, 843 (Bankr. D. Vt. 1987) ("And of course, in a complex case of national scope, rates for nationally prominent, out-of-state counsel may apply."); *In re Seneca Oil Co.*, 65 B.R. 902, 911 (Bankr. W.D. Okla. 1986) ("When a case is not national the market is limited to the geographic area involved."); *Jensen-Farley*, 47 B.R. at 579 (stating that fees may be set by reference to "national market" in "unusually large cases with significant creditor interest").

Accordingly, although in many cases of local import the community is defined as where the case is pending, limiting counsel to local-market rates in cases that are national or regional in scope would cap attorneys' fees without consideration of whether the rate is reasonable in the particular case. *See Temple*, 97 B.R. at 342; *see also In re Gurley Hous. Assocs.*, No. 20-10712, 2021 WL 1422874, at *3-4 (Bankr. N.D.N.Y. Jan. 12, 2021); *In re First Magnus Fin. Corp.*, No. 4:07-BK-01578 JMM, 2008 WL 2233503, at *2 (Bankr. D. Ariz. May 22, 2008). Because there is no single, *per se* rule that defines the relevant community or sets the reasonable hourly rate across

all bankruptcy cases,[15] the court must assess whether a requested rate is justified based upon the facts and circumstances of the case.

A national bankruptcy case may demand that a law firm possess expertise across multiple practice areas to effectively manage the complexities of the case, which is often not readily available at local rates in the local market. *See Magnus*, 2008 WL 2233503, at *2; *In re Robertson Cos.*, 123 B.R. 616, 619 (Bankr. D.N.D. 1990). If a local law firm is "truly available" to render services of "like quality," the reasonableness of turning to a national firm with higher fees is suspect. *See Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988); *Seneca*, 65 B.R. at 911. The interstate (and often international) and interdisciplinary nature of large Chapter 11 bankruptcy cases, together with the exigencies and sheer magnitude of work involved, typically means that local counsel is not "truly available" to take on such cases.

This is not to say that lawyers at national firms automatically get out-of-market fees for all work in a national bankruptcy case. While "talent and expertise" are indeed important considerations that may justify a higher rate, they must be viewed against the nature of the service actually performed and results obtained. *See In re Glob. Int'l Airways Corp.*, 38 B.R. 440, 443 (Bankr. W.D. Mo. 1984) ("[T]he hourly rate of lead counsel is more than double the customary rate in this district. The Court respects the talent and expertise of the practitioners but does not find that the work performed is twice as efficient or as effective as that of local counsel."). Accordingly, courts will also consider whether "the work done by counsel is atypically complex, efficient, or precocious for the relevant local market." *Am. Freight Sys.*, 1997 WL 309123, at *8.

---

[15] The Fourth Circuit has cautioned against the establishment of *per se* rules in bankruptcy cases "beyond those legislatively mandated" because the bankruptcy court must exercise its discretion in consideration of "the facts of a particular case and the overall objectives of the bankruptcy system." *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992).

To seek compensation and reimbursement of expenses under § 330(a)(1), an attorney must file "an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). The application must make various disclosures about compensation already received and any fee sharing arrangements. *Id.*

An application for compensation may require a hearing. *See* 11 U.S.C. § 330(a)(1). The Bankruptcy Court for the District of Arizona explained the notice and hearing requirements as they relate to § 330(a)(1) as follows:

> Section 330 provides that after notice and a hearing, a court may award an attorney employed by a debtor "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A), (B). "Notice and a hearing" is a term of art in the Code defined as notice and hearing "appropriate in the particular circumstances." 11 U.S.C. 102(1)(A). Bankruptcy courts have broad discretion as to the type of hearing to convene, and on occasion, "the hearing requirement may be satisfied without oral presentation of evidence and without oral argument*." Law Offices of David A. Boone v. Derham–Burk* (*In re Eliapo*), 468 F.3d 592, 603 (9th Cir. 2006). All that is required is that the applicant be given a reasonable opportunity to present legal argument and/or evidence to clarify or supplement his Application." *Id.* (internal quotation omitted).

*In re Sunset Pro. Park, LLC*, No. 4:09-BK-32194-EWH, 2012 WL 2884827, at *2 (Bankr. D. Ariz. July 13, 2012); *see also In re I Don't Tr.,* 143 F.3d 1, 3 (1st Cir. 1998) ("The words 'after notice and hearing' denote notice and an opportunity for a hearing *as appropriate in the particular circumstances*, but a hearing—much less an evidentiary hearing—is not required in every instance."). Accordingly, courts must determine whether, based on the unique circumstances of each case, a hearing on a fee application is necessary. If a hearing is convened, notice is to be afforded in accordance with Federal Rule of Bankruptcy Procedure 2002(a)(6).

## IV.     Conclusions of Law

A.  Notice

All three Fee Applications contained a detailed statement of services provided and time expended during the Compensation Period as required under Federal Rule of Bankruptcy Procedure 2016(a). The Court finds that notice of the Hirschler Application, the Pachulski Application, and the Cooley Application was afforded in accordance with the Case Management Order, Fee Notice Procedures Order, and Confirmation Order, which are the final orders that govern notice in this case. The notice recipients were parties with a direct, palpable interest in the utilization of the financial resources of the estate and among the most experienced and sophisticated actors in the bankruptcy system. The fee applicants also provided notice of the Fee Hearing.

B.  The Hirschler Application

Turning to the substance of Hirschler's request for compensation under 11 U.S.C. § 330,[16] the Court's record and the Hirschler Application reflect that, during the Compensation Period, Hirschler provided actual and necessary legal services to the Committee. These services included communicating with lead counsel for the Committee, attending multiple hearings, and reviewing and filing pleadings. They were rendered in direct support of lead counsel for the Committee's efforts to address the implications of the Remand Order. Furthermore, Hirschler's services were within the scope of the firm's duties as local counsel for the Committee and were necessary and beneficial to the estate as they were performed in furtherance of the Committee's efforts to protect the interests of unsecured creditors.

---

[16] The Hirschler Application did not request reimbursement of any expenses.

The Court must also determine whether the Hirschler Fees of $7,183.00 constitute reasonable compensation for the actual and necessary legal services Hirschler provided during the Compensation Period. For the reasons set forth below, the Court concludes that the Hirschler Fees are reasonable under 11 U.S.C. § 330 and should be approved.

The Court first notes that Hirschler's $495.67 blended hourly rate is consistent with the prevailing rates for comparable services in the Richmond market. Thus, there is no indication that Hirschler engaged in premium billing on the basis that this is a national case.[17] Hirschler expended only 15.5 hours in legal services during the Compensation Period, split evenly between the partner and associate timekeepers, which the Court believes was exceedingly reasonable given Hirschler's duty to support lead counsel for the Committee in addressing the complex and novel issues presented by the Remand Order. Ultimately, due in part to Hirschler's assistance to the Committee, the Debtors were able to obtain reconfirmation of the Modified Plan with the Committee's support within forty-five days of the Remand Order, minimizing potential disruption to creditors and the estate. Accordingly, having considered the Hirschler Application in light of the relevant factors, the Court recommends approval of the Hirschler Application to the extent of the Hirschler Fees.

C.  <u>The Pachulski Application</u>

The Court must next determine whether Pachulski's request for compensation and reimbursement of expenses satisfies the requirements of 11 U.S.C. § 330. First, the Court's record and the Pachulski Application reflect that Pachulski provided actual and necessary legal services to the Committee during the Compensation Period, which were primarily aimed at addressing the

---

[17] Under the Procedures for Complex Chapter 11 Cases in the Eastern District of Virginia, promulgated by Local Bankruptcy Rule 1075-1, professionals "should not expect the Court to authorize hourly rates that have been increased based on the size of the Chapter 11 Case (i.e., no premium billing)." LBR Ex. 15 § VI.F.4.b.

24

implications of the Remand Order. This included engaging in dialogue with Debtors' counsel, editing and drafting the Reconfirmation Motion and Reconfirmation Order, communicating directly with the Committee, and appearing at multiple court hearings, which culminated in reconfirmation of the Modified Plan. The services performed were within the scope of the firm's duties as lead counsel for the Committee and were necessary and beneficial to the estate as they were provided in furtherance of the Committee's efforts to protect the interests of unsecured creditors. The Pachulski Expenses, which were negligible, were directly related to these necessary legal services.

The focus of the Court's inquiry now shifts to whether the Pachulski Fees of $83,180.00 constitute reasonable compensation for the actual and necessary legal services Pachulski provided during the Compensation Period. For the reasons set forth below, the Court concludes that the Pachulski Fees are reasonable under 11 U.S.C. § 330.

The Compensation Period represented an extraordinary juncture in this case because it began with the vacatur of the confirmation of the Plan pursuant to the Remand Order. Accordingly, the 94.60 hours of time that Pachulski expended during this period was reasonable given the tasks necessitated by the Remand Order and the need for the Committee to coordinate with other parties to find a consensual path forward following the District Court's ruling. Ultimately, Pachulski's involvement was critical in moving the case towards swift, consensual reconfirmation while preserving the interests of the Committee's constituents who relied on the previously confirmed Plan in good faith. Achievement of this favorable outcome for the Committee required that Pachulski possess and apply a high level of experience, legal knowledge, and skill in the face of unique issues and significant time pressure.

Pachulski's customary rates exceed the prevailing rates in the Richmond market. The Pachulski Application calls for a blended hourly rate of $985.00 per hour, which is comparable to the rates charged by firms, like Pachulski, with a national practice who regularly appear in national Chapter 11 cases. As previously discussed, the rates charged by attorneys in the local community are not determinative of the reasonableness of compensation because, particularly in national cases, it may be reasonable to retain out-of-market attorneys. Rather, the Court must examine whether Pachulski's out-of-market rates are reasonable under the particular facts and circumstances of this case.

Here, the size and complexity of this case likely explains the Committee's decision to hire Pachulski at the outset, given the firm's national presence and bankruptcy specialization. During the Compensation Period, and as reflected in the Court's record and the Pachulski Application, Pachulski attorneys leveraged their expertise to resolve the complex issues presented by the Remand Order to the benefit of thousands of unsecured creditors. And, given the novelty of the issues at hand, it was imperative that attorneys handling the matter during the Compensation Period have extensive expertise in handling large Chapter 11 reorganizations. In the Court's view, a firm of Pachulski's caliber was necessary to achieve a favorable outcome for the Committee following the Remand Order, and Pachulski's rates reasonably reflect the skilled application of their expertise to the exigencies and complexities of the task at hand.

Accordingly, having considered the Pachulski Application in light of all of the relevant factors discussed above, the Court recommends approval of the Pachulski Application to the extent of the Pachulski Fees and the Pachulski Expenses.

D. <u>The Cooley Application</u>

Lastly, the Court must consider the Cooley Application pursuant to 11 U.S.C. § 330, looking first at whether the Cooley Fees and Cooley Expenses were actual and necessary. The Court's record and the Cooley Application reflect that, during the Compensation Period, Cooley worked toward expeditious reconfirmation of the Modified Plan alongside the other parties in interest, reconciled and settled numerous categories of claims, assisted with various litigation matters, and resolved national and international corporate and tax issues. All of these activities were necessary to the efficient administration of the case and beneficial to the estate. The Court further finds that the Cooley Expenses, in the amount of $1,167.81, were directly related to the actual and necessary services provided by Cooley.

Having determined that Cooley performed compensable legal services for the Debtors, the Court must now consider whether the Cooley Fees of $251,172.50 constitute reasonable compensation under 11 U.S.C. § 330. During the Compensation Period, Cooley expended significant time on case administration. The Court attributes this expenditure of time largely to the entry of the Remand Order, which necessitated additional case administration activities beyond those typically required for the day-to-day management of a large Chapter 11 bankruptcy case. The Remand Order also required that Cooley dedicate substantial time to Plan reconfirmation issues so that the Modified Plan could be reconfirmed in a manner consistent with the Remand Order while still protecting those who had relied on the previously confirmed Plan. Finally, Cooley was tasked with managing a high-volume claims reconciliation process, which demanded considerable attorney time due to its magnitude and the varied legal issues involved. Given the foregoing, as well as the other legal services provided during the Compensation Period, the 271.40 hours of time that Cooley expended was reasonable.

Similar to the rates charged by Pachulski, the rates contemplated in the Cooley Application (blended rate of $988.15 an hour) exceed the prevailing rates in the Richmond market and are typical of similar firms that handle national Chapter 11 cases. Therefore, the Court must examine whether Cooley's out-of-market rates are reasonable under the facts and circumstances presented by this case.

Cooley's engagement as co-counsel for the Debtors in this case is consistent with the firm's national presence and reputation for expertise in bankruptcy and other various fields of law. Indeed, the scope and complexity of the legal issues facing the Debtors during the Compensation Period required the services of a large firm with experienced and capable lawyers across a variety of practice areas, and Cooley's rates reflect the firm's experience, capabilities, and position in the national market.

This was not a case where counsel performed ministerial functions. Rather, Cooley's expertise in bankruptcy, tax, litigation, and corporate law was integral to the effective resolution of the array of complex legal issues presented in this case. And when Cooley was handling the less complex, but still necessary, tasks related to case administration, the work was typically performed by an associate or a paralegal, who charged lower rates. Cooley ultimately achieved important and favorable results for the Debtors, including reconciling a multitude of claims and working cooperatively with the other parties in interest to reconfirm the Modified Plan. These results evince the value the firm brought to the case. For these reasons, the Court concludes that Cooley's customary rates are justified, and the Cooley Fees are reasonable under 11 U.S.C. § 330 and should be approved.

Accordingly, having considered the Cooley Application in light of all of the relevant factors discussed above, the Court recommends approval of the Cooley Application to the extent of the Cooley Fees and the Cooley Expenses.

**V.**   <u>**Conclusion**</u>

The purpose of Chapter 11 is to maximize the value of estate property so that creditors recover as much as possible. Because the same general legal principles that govern the reorganization of an international conglomerate also govern the reorganization of a small auto repair shop, bankruptcy courts are afforded considerable flexibility in overseeing the implementation of the overarching statutory objective. The paths to maximizing value are as varied as the Chapter 11 debtors themselves, and each case must be evaluated on its specific facts. Here, there is no question that the value of the estate's assets has been maximized. The record reflects that the Reorganized Debtors and their team of professionals achieved excellent results under challenging circumstances.

The discrete question is the propriety of the proposed distribution of a portion of the estate's assets. Stated simply, every dollar paid for professional fees is a dollar no longer available to creditors. It is therefore the Court's responsibility to ensure that the expenditure of precious and scarce estate resources is appropriate. The statute and case law emphasize the need for a flexible, facts-and-circumstances approach to difficult resource-allocation issues. What is necessary and reasonable in one case may be totally inappropriate in another. Under the facts and circumstances here, the fees and expenses listed above are justified.

Accordingly, for the reasons stated in these proposed findings of fact and conclusions of law, the Court RECOMMENDS that the Hirschler Application be approved to the extent of the Hirschler Fees, the Pachulski Application be approved to the extent of the Pachulski Fees and the

29

Pachulski Expenses, and the Cooley Application be approved to the extent of the Cooley Fees and the Cooley Expenses.

Pursuant to Rule 9033 of the Federal Rules of Bankruptcy Procedure, the Clerk is ORDERED to electronically transmit and mail a copy of this Report and Recommendation to Cullen D. Speckhart and Olya Antle, co-counsel for the Reorganized Debtors; Robert J. Feinstein, Bradford J. Sandler, and Shirley S. Cho, counsel for the Official Committee of Unsecured Creditors; Robert S. Westermann and Brittany B. Falabella, local counsel for the Official Committee of Unsecured Creditors; and the Office of the United States Trustee; and mail a copy to all creditors and parties in interest listed on the attached service list, currently on file with Kroll Restructuring Group.

Any party objecting to this Report and Recommendation shall serve and file any such objections within fourteen (14) days after the date of the mailing of this Report and Recommendation with the Clerk of this Court. Any such objection shall identify the proposed recommendations objected to and state the grounds for such objection.

**Entered this 30th day of August, 2022, at Norfolk, in the Eastern District of Virginia.**

FRANK J. SANTORO
Chief United States Bankruptcy Judge

Entered on Docket: Aug 30 2022

**In re: Retail Group, Inc., et al.**
Core/2002 Service List
Case No. 20-33113 (F55)

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | POSTAL CODE | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CONSENTING STAKEHOLDER, BAIN CAPITAL CREDIT, LP | BAIN CAPITAL CREDIT, LP | ATTN: ANDREW S. VIENS, MANAGING DIRECTOR & GLOBAL HEAD OF OPERATIONS | 200 CLARENDON STREET | | BOSTON | MA | 02116 | | | | BAINCAPITALCREDITDOCS@BAINCAPITAL.COM |
| ATTORNEYS FOR CREDITOR IRVINE SPECTRUM CENTER LLC, A DELAWARE LIMITED LIABILITY COMPANY | BEWLEY, LASSLEBEN & MILLER, LLP | ATTN: ERNIE ZACHARY PARK | 13215 E. PENN ST., SUITE 510 | | WHITTIER | CA | 90602 | | 562-698-9771 | 562-309-8063 | ERNIE.PARK@BEWLEYLAW.COM |
| COUNSEL TO THE PLAN ADMINISTRATOR | COOLEY LLP | ATTN: CULLEN D. SPECKHART, OLYA ANTLE | 1299 PENNSYLVANIA AVENUE, NW, SUITE 700 | | WASHINGTON | DC | 20004-2400 | | 202-842-7800 | 202-842-7899 | CSPECKHART@COOLEY.COM / OANTLE@COOLEY.COM |
| CONSENTING STAKEHOLDER, AGF FLOATING RATE INCOME FUND, BRIGHTHOUSE FUNDS TRUST I - BRIGHTHOUSE/EATON VANCE FLOATING RATE PORTFOLIO, EATON VANCE CLO 2013-1 LTD., EATON VANCE CLO 2014-1R, LTD., EATON VANCE CLO 2015-1 LTD., EATON VANCE CLO 2018-1, LTD., EATON VANCE LOAN HOLDING LIMITED, EATON VANCE FLOATING-RATE INCOME PLUS FUND, EATON VANCE FLOATING-RATE 2022 TARGET TERM TRUST, EATON VANCE SENIOR FLOATING-RATE TRUST, EATON VANCE FLOATING RATE TRUST, EATON VANCE FLOATING RATE INCOME TRUST, EATON VANCE INTERNATIONAL (CAYMAN ISLANDS) FLOATING-RATE INCOME PORTFOLIO, EATON VANCE SENIOR INCOME TRUST, EATON VANCE SHORT DURATION DIVERSIFIED INCOME FUND, EATON VANCE INSTITUTIONAL SENIOR LOAN FUND, EATON VANCE INSTITUTIONAL SENIOR LOAN PLUS FUND, EATON VANCE LIMITED DURATION INCOME FUND, EATON VANCE FLOATING RATE PORTFOLIO, SENIOR DEBT PORTFOLIO, EATON VANCE VT FLOATING-RATE INCOME FUND | EATON VANCE MANAGEMENT | ATTN: MICHAEL B. BOTTHOF, VP | 2 INTERNATIONAL PLACE, 9TH FLOOR | | BOSTON | MA | 02110 | | | | RPEEPGASS@EATONVANCE.COM |
| COUNSEL TO JOHN GALLIN & SON INC., TEXPORT CREATION, PEARL GLOBAL FAREAST LIMITED, GAURAV INTERNATIONAL, GO GO INTERNATIONAL PVT. LTD., TUSKER APPAREL LTD. CO., ASMARA INTERNATIONAL LIMITED, DIMPLE CREATIONS PVT LTD., PEE EMPRIO EXPORTS PVT LTD., MODELAMA EXPORTS PVT LTD., RICHA & CO., RICHA GLOBAL EXPORTS PVT LTD., AND MODINDIA EXIM PRIVATE LTD.; SAPIENT CORPORATION | GOODMAN ALLEN DONNELLY PLLC | ATTN: DONNA J. HALL, ESQ. | 150 BOUSH STREET, SUITE 900 | | NORFOLK | VA | 23510 | | 757-793-4422 | 757-625-7701 | DHALL@GOODMANALLEN.COM |
| LOCAL COUNSEL TO GUC TRUSTEE | HIRSCHLER FLEISCHER PC | ATTN: ROBERT S. WESTERMANN, BRITTANY B. FALABELLA | P.O. BOX 500 | | RICHMOND | VA | 23218-0500 | | 804-771-9500 | 804-644-0957 | bfalabella@hirschlerlaw.com / rwestermann@hirschlerlaw.com |
| LOCAL COUNSEL TO GUC TRUSTEE | HIRSCHLER FLEISCHER PC | ATTN: ROBERT S. WESTERMANN, BRITTANY B. FALABELLA | THE EDGEWORTH BUILDING | 2100 EAST CARY STREET | RICHMOND | VA | 23223 | | 804-771-9500 | 804-644-0957 | bfalabella@hirschlerlaw.com / rwestermann@hirschlerlaw.com |
| PLAN ADMINISTRATOR | JACKSON SQUARE ADVISORS LLC | ATTN: GILBERT NATHAN | 606 POST ROAD E | | WESTPORT | CT | 06880-454 | | | | GIL@JACKSONSQUAREADVISORS.COM |
| COUNSEL TO DEBTORS | KIRKLAND & ELLIS LLP | ATTN: EDWARD O. SASSOWER, STEVEN N. SERAJEDDINI | 601 LEXINGTON AVENUE | | NEW YORK | NY | 10022 | | 212-446-4800 | 212-446-4900 | EDWARD.SASSOWER@KIRKLAND.COM / STEVEN.SERAJEDDINI@KIRKLAND.COM |
| COUNSEL TO DEBTORS | KIRKLAND & ELLIS LLP | ATTN: JOHN R. LUZE | 300 NORTH LASALLE | | CHICAGO | IL | 60654 | | 312-862-2000 | 312-862-2200 | JOHN.LUZE@KIRKLAND.COM |
| CONSENTING STAKEHOLDER, LION POINT MASTER, LP | LION POINT CAPITAL, LP | ATTN: IRSHAD KARIM, GENERAL COUNSEL | 250 WEST 55TH STREET, 33RD FLOOR | | NEW YORK | NY | 10019 | | | | OPS@LIONPOINT.COM / LEGAL@LIONPOINT.COM |

**In re: Retail Group, Inc., et al.**
Core/2002 Service List
Case No. 20-33113 (F55)

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | POSTAL CODE | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REORGANIZED DEBTORS | MAHWAH BERGEN RETAIL GROUP, INC. | ATTN: PRESIDENT OR GENERAL COUNSEL | 933 MACARTHUR BOULEVARD | | MAHWAH | NJ | 07430 | | | | MICHAEL.VEITENHEIMER@ASCENARETAIL.COM |
| GUC TRUSTEE | META ADVISORS LLC | ATTN: JAMES S. CARR, DANA P. KANE & GRACE MARIE CODISPOTI | 3 WORLD TRADE CENTER | 175 GREENWICH STREET | NEW YORK | NY | 10007 | | | | ASCENA@PROVINCEFIRM.COM; jcarr@kelleydrye.com; dkane@kelleydrye.com; gcodispoti@kelleydrye.com |
| CONSENTING STAKEHOLDER; MBD 1 LTD | MONARCH ALTERNATIVE CAPITAL LP | ATTN: CHRIS SANTANA, MANAGING PRINCIPAL | 535 MADISON AVENUE | | NEW YORK | NY | 10022 | | | | FUNDOPS@MONARCHLP.COM |
| UNITED STATES TRUSTEE EASTERN DISTRICT OF VIRGINIA | OFFICE OF THE UNITED STATES TRUSTEE | ATTN: KATHRYN MONTGOMERY AND JOHN P. FITZGERALD III | 701 E. BROAD STREET, STE. 4304 | | RICHMOND | VA | 23219 | | 804-771-2310 | 804-771-2330 | USTPREGION04.RH.ECF@USDOJ.GOV |
| COUNSEL TO GUC TRUSTEE | PACHULSKI STANG ZIEHL & JONES LLP | ATTN: ROBERT J. FEINSTEIN, ESQ., BRADFORD J. SANDLER, ESQ., SHIRLEY S. CHO, ESQ., MICHAEL R. SEIDL, ESQ. | 780 THIRD AVENUE, 34TH FLOOR | | NEW YORK | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | rfeinstein@pszjlaw.com; bsandler@pszjlaw.com; scho@pszjlaw.com; mseidl@pszjlaw.com |
| COUNSEL TO AON CONSULTING, INC. | POST & SCHELL, P.C. | ATTN: BRIAN W. BISIGNANI | 17 NORTH 2ND STREET | 12TH FLOOR | HARRISBURG | PA | 17101-1601 | | 717-612-6041 | 717-731-1985 | BBISIGNANI@POSTSCHELL.COM |
| CLAIMS AGENT | PRIME CLERK, LLC | ATTN: DAVID MALO | 55 EAST 52ND STREET | 17TH FLOOR | NEW YORK | NY | 10055 | | 212-257-5450 | 646-328-2851 | ASCENATEAM@PRIMECLERK.COM; SERVICEQA@PRIMECLERK.COM |
| COUNSEL TO TRAVIS COUNTY | TRAVIS COUNTY ATTORNEY | ATTN: JASON STARKS, DELIA GARZA | P.O. BOX 1748 | | AUSTIN | TX | 78767 | | 512-854-9092 | 512-854-9316 | JASON.STARKS@TRAVISCOUNTYTX.GOV |

Page 2 of 2